**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID MACK, on behalf of | ) | 1:10-cv-4244 |
| Himself and others similarly situated, | ) | |
| Plaintiffs, | ) | Judge Hibbler |
| v. | ) | Magistrate Judge Keys |
| | ) | |
| MRS ASSOCIATES, INC., | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff David Mack respectfully requests that this Court compel defendant MRS

Associates, Inc. ("MRS") to provide a class list and materials and information concerning its

affirmative defenses.  In support of this motion, plaintiff states:

This is a Telephone Consumer Protection Act, 47 U.S.C. § 227(b), case, alleging that the

defendant debt collection agency improperly called plaintiff and others on their cellular

telephones using an automatic telephone dialing system, and using a prerecorded or artificial

voice.  The TCPA proscribes calling anyone on their cellular telephones using such equipment

unless the caller has the "prior express consent" of the called party to make such calls.

*Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270, at *6 (N.D.Ill. May 5, 2010).

Plaintiff has nothing to do with the account MRS was apparently attempting to collect

for nonparty Capital One Bank; each of the thirty-five autodialed calls to David Mack were

apparently part of MRS' attempts to collect a debt from plaintiff's mother, Julie Schultz/Mack.

This case thus alleges a class of persons who, like plaintiff, had nothing to do with the account

for which defendant was calling when it made autodialed and prerecorded calls.

Although the class is limited to those persons for which defendant cannot show prior

express consent, defendant has raised this defense in its affirmative defenses.  Understanding

that defendant must have some Fed.R.Civ.P. 11 justification for bringing this affirmative defense, plaintiff requested that defendant "show its hand" as to what support it has for such, for each class member. Defendant objected, arguing that it should not have to produce anything until a class has been certified. However, plaintiff expects defendant to argue that plaintiff's lack of evidence regarding these issues bars certification.

MRS cannot have it both ways: it should be compelled to either waive the affirmative defense, or provide all evidence in support of the defense by date-certain. Plaintiff therefore moves to compel.

## I.    Rule 37 Meet and Confer

Plaintiff first issued the discovery at issue on August 19, 2010. Exhibit A. Defendant initially responded on October 27, 2010. Exhibit B. Thereafter, plaintiff's counsel Alexander Burke and defense counsel James Vlahakis engaged in protracted meet and confer discussions regarding production of responses to the class number, class member's identities, and any evidence of prior express consent for the class members and plaintiffs. Defendant repeatedly committed to providing a class number, most recently on January 10, 2011, but has not done so. Defendant also repeatedly indicated that it would provide a firm indication of its position as to prior express consent, but has not done so.

Plaintiff's revised motion for class certification is due on January 28, 2011, and counsel cannot wait any longer, and requests that the Court require MRS to provide all responsive information and materials by date-certain.

## II.    Discovery Generally

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his

possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  The Rules have broadened the scope of discovery to "any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed.R.Civ.P. 26(b)(1).

"[T]he discovery-deposition provisions of the Federal Rules, were intended to insure 'proper litigation' by making the trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963) (internal citations and quotations omitted). Furthermore, complete interrogatory responses may help the parties avoid unnecessary depositions and further cost to the parties.  *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 307-308 (S.D.N.Y. 1982).

"[T]he mere statement by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery "must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir. 1982).

Compelling production of materials sought promotes justice and quick resolution a matter. *Yancey v. Hooten*, 180 F.R.D. 203 (D.Conn. 1998) (compelling discovery in FDCPA case). *Lucas v. GC Services*, 226 F.R.D. 328 (N.D.Ind. 2004) (FDCPA 1692g action) (sister case lost merits on appeal) compelling all discovery requests as sanction.  "The defendants do not get to determine unilaterally the scope and timing of discovery." *Lucas v. GC Servs. L.P.,* 226 F.R.D. 328, 331 (N.D. Ind. 2004).

An attorney is required to monitor discovery compliance and ensure that the client has both preserved potentially discoverable electronic materials, and that the client has performed a reasonable search. See Fed.R.Civ.P. 26(b)(2);  *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004); *Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932 (S.D.Cal. Jan 07, 2008), vacated in irrelevant part, 2008 WL 638108 (S.D.Cal. Mar 05, 2008). The result of this is likely waiver.  *Ner-Tamid Congregation of North Town v.*

*Krivoruchko*, 2009 WL 152587, 08 C 1261 (N.D.Ill. Jan. 22, 2009); *Mosley v. City of Chicago*, 252 F.R.D.

445 (N.D.Ill. 2008).  The result of the failure to perform an adequate search is wavier.

Compelling the requests herein will promote swift resolution of this case.  Fed.R.Civ.P. 1.

**III.     MRS Should be Compelled to Produce the Class List and
Evidence Relating to its Affirmative Defenses.**

Plaintiff thus requested a list of persons that defendant called using the proscribed

equipment, and information relating to its affirmative defenses as to those persons:

5.     Identify, state the number and state the time and date of all calls and date and
time of notification for: All persons located in Illinois who defendant or some person on
its behalf called on their cell phone using a Predictive Dialer and/or Prerecorded
Message, where MRS' records do not show that the person provided the number to the
defendant or the original creditor (for example, where the number was obtained
through skip tracing, or "trapped" captured by telephone equipment) where any call
was made at any time between and including July 8, 2006, and July 8, 2010.

6.     Identify the source(s) from which you obtained each of the telephone numbers
you called that are responsive to the previous interrogatory, along with the date the
numbers were obtained.

7.     If you contend that any person within the following parameters provided prior
express consent to receive telephone calls from you using an automatic telephone
dialing system, prerecorded voice message, artificial voice message, Predictive Dialer or
Prerecorded message, please specifically identify all documents, data information or
things that supports this contention.

All persons located in Illinois who defendant or some person on its behalf called
on their cell phone using a Predictive Dialer and/or Prerecorded Message, where
MRS' records do not show that the person provided the number to the
defendant or the original creditor (for example, where the number was obtained
through skip tracing, or "trapped" captured by telephone equipment) where any
call was made at any time between and including July 8, 2006, and July 8, 2010.

Plaintiff also asked for the documentation regarding the class members and consent.  Doc. Req.

4, 5, 6 & 15.  MRS responded with objections and explanations that it obtains telephone

numbers from a variety of sources, and that if it received a telephone number from the

creditor, it does not know from what source the creditor obtained the information.  Exhibit B.

MRS also committed to providing a class number, but has not done so yet.

It is well-established that a plaintiff may take discovery on class certification issues, including the class list, before a class has been certified.   2003 Advisory committee note to Fed.R.Civ.P. 23(c)(1)(A); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir. 1981); a*ccord, Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571-72 (2d Cir. 1982); *Dillon v. Bay City Construction Co., Inc.*, 512 F.2d at 804 (4th Cir. 1979); *Pittman v. E.I. duPont de Nemours & Co., Inc.*, 552 F.2d 149, 150 (5th Cir. 1977), *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 214 (N.D.Ill. 2002) (FDCPA Case); *Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 341( N.D.Ill. 2001) (FDCPA case); *Nash v. City of Oakwood*, 90 F.R.D. 633, 636-637 (S.D. Ohio 1981); *National Org. for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980); also see *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, n.13 (1978).

Furthermore, plaintiff's request for the information regarding MRS' "prior express consent" affirmative defense is appropriate.   MRS raised this defense in its answer.   Answer at p. 10; affirmative defense 4:  "The Complaint fails to state a claim upon which relief can be granted to the extent that the underlying debtor gave consent to receive telephone calls on her cellular telephone."

A party cannot permissibly assert a defense and then refuse to provide the opposing party with evidentiary support for such.  The Federal Rules recognize this:  unless otherwise limited by court order, the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or **defense** -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  [Fed.R.Civ.P. 26(b)(1); Emphasis added.]

Furthermore, all courts to have considered this issue within the autodialer/TCPA context have rejected defendant's position, and have found that the probative value of this information exceeds any burden upon the defendant in obtaining such, including Judge Keys, who is the magistrate judge in this case. *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500 (N.D.Ill. Dec. 16, 2009)(Nolan, J.) Fed.R.Civ.P. 72 objections overruled in toto, 2010 WL 308975 (N.D.Ill. Jan 13, 2010)(Guzman, J.); *Fike v. The Bureaus, Inc.*, 1:09-cv-2558, transcript of proceedings (Nov. 11, 2009)(Keys, J.) Appendix 1; *Balbarin v. North Star Capital Acquisition, LLC*, 1:10-cv-1846 (Nov. 9, 2010)(Cox, J.) Appendix 2; see also Martin v. CCH, 10-cv-3494 (N.D.Ill.) transcript of proceedings (Dec. 7, 2010), at 25 Appendix 3.

Although MRS has told plaintiff that it agrees to provide a class number, it has not done so yet. Typically, the number of class members would be sufficient, however, in this case plaintiff needs more. MRS is expected to argue that the *possibility* that some class members may have consented to receive calls precludes certification.   In other words, MRS is trying to use its nonresponsiveness as a sword and a shield:  "I'm not giving you this information, and your failure to get it defeats certification."  Thus, in order to properly respond to these arguments, plaintiff needs the information MRS intends to use to support the defense.

In sum, plaintiff requests that the Court compel MRS to produce the materials regarding the affirmative defense that it raised in its pleadings.

**CONCLUSION**

WHEREFORE, plaintiff respectfully requests that this Court compel defendant MRS Associates, Inc. to provide full responses to interrogatories 5, 6 and 7, and document requests 4, 5, 6 and 15.

Respectfully submitted,

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288

(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID MACK, and | ) | |
| CHRISTOPHER MACK, on behalf of | ) | 1:10-cv-4244 |
| themselves and others similarly situated, | ) | |
| Plaintiffs, | ) | Judge Hibbler |
| v. | ) | Magistrate Judge Keys |
| | ) | |
| MRS ASSOCIATES, INC., | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## PLAINTIFFS' FIRST DISCOVERY REQUESTS

Plaintiffs David Mack and Christopher Mack (collectively, "Plaintiff" "Plaintiffs" or

"Mack") hereby request that defendant MRS Associates, Inc. ("MRS" or "Defendant") respond

to the following requests for admissions, interrogatories, and document requests. Documents

should be copied and sent to plaintiff's counsel on the date the response is due.

Throughout this request:

1.     Unless otherwise specified in a particular paragraph, the time period covered by

this request is January 1, 2006 to July 8, 2010.

2.     If you are declining to produce any document or respond to any paragraph in

whole or in part because of a claim of privilege, please: (a) identify the subject matter, type

(e.g., letter, memorandum), date, and author of the privileged communication or information,

all persons that prepared or sent it, and all recipients or addressees; (b) identify each person to

whom the contents of each such communication or item of information have heretofore been

disclosed, orally or in writing; (c) state what privilege is claimed; and (d) state the basis upon

which the privilege is claimed.

1

3.      If any document requested was, but no longer is, in your possession or subject to your control, please state: (a) the date of its disposition; (b) the manner of its disposition (e.g., lost, destroyed, transferred to a third party); and (c) an explanation of the circumstances surrounding the disposition of the document.

4.      All requests are also directed to all parent, related, affiliate and subsidiary companies of defendant, to the greatest extent permissible under the discovery rules.

5.      The requested materials should be produced in native format with all metadata intact, together with a bates-stamped copy produced in pdf format to help keep track of materials that have, or have not, been produced. To the extent that defendant finds this to be unduly burdensome for any particular document or set of documents, plaintiff asks that defendant explain in what format it maintains such materials in its written response, and timely meet and confer with plaintiff's counsel regarding these issues before the responses are due. Data for class members should be produced in sql format; plaintiff's counsel requests that defense counsel meet and confer with plaintiff before the responses are due with regard to formatting in order to make such process as efficient as possible.

6.      "Predictive Dialer" as used herein means a telephone system that dials telephone numbers without human intervention.  "Prerecorded Message" means any message during a telephone call that was (a) partially or completely recorded before the call was made, and (b) automatically relayed during a telephone call, without regard to whether such was performed to a live person, or on a  person's voice mail.

7.      For any request, if you contend that providing a complete response to any request is impracticable or impossible, please provide the most complete response as possible,

2

explain what components or responsive information or documents is missing, and why you contend production of those materials is impossible or impracticable.

Other instructions and definitions to be used in making your response are attached hereto as Exhibit A.

If you contend that any paragraph of this request is ambiguous or unduly burdensome, please contact the undersigned immediately upon recognition of this contention, and an effort will be made to remedy the problem.

## REQUESTS FOR ADMISSION

1.     Defendant called

2.     The caller during the call from (773) 367-7272 notified defendant that defendant was calling an incorrect telephone number.

3.     Plaintiff called defendant in June 2010, and asked that (773) 367-7272 be "removed from [defendant's] records." (quotation from the May 2, 2010, voice mail transcript)

4.     Defendant called (773) 367-7272 using its Predictive Dialer after having received the June, 2010, telephone call from (773) 367-7272.

5.     Defendant called (773) 367-7272 in July 2010.

6.     The audio file attached hereto as Exhibit A contains, among other things, a true recording of a Prerecorded Message defendant left on the voice mail for (773) 367-7272 on May 2, 2010.

7.     Defendant had its Predictive Dialer dial the phone number for more than 1,000 telephone calls between and including June 15, 2006 and June 15, 2010, to Illinois, Wisconsin

3

and Indiana telephone numbers where, either before or after the calls had been made, someone requested to have that phone number removed from defendant's records.

8.      Defendant used Prerecorded Messages in more than 1,000 telephone calls between and including June 15, 2006 and June 15, 2010, to Illinois, Wisconsin and Indiana telephone numbers where at least one call was made after someone requested to have that phone number removed from defendant's records.

## INTERROGATORIES

1.      Identify all attempted and successful communications (including telephone calls) to and from 773-615-9181 and 773-615-8862.  Include the date and time of each call or attempted call, who or what dialed the number, all messages (prerecorded or live),  all equipment and systems used, the telephone company(ies) that serviced line for each call, the Predictive Dialer that was used, the Prerecorded Message used.

2.      Identify all sources from which you obtained the phone numbers 773-615-9181 and 773-615-8862, along with all other numbers called in association with the alleged debt of Julie Schultz.

3.      Identify and explain all written and unwritten policies, practices and procedures concerning use of Predictive Dialers and Prerecorded Messages, going back to when you first considered using such, and ending on July 8, 2010.

4.      Identify and state the location and the person who has possession, custody or control of any document, data or information responsive to any discovery request in this case, that is not being produced because of any objection, privilege, or because you contend that such is not within your possession, custody or control.

4

5.      Identify, state the number and state the time and date of all calls and date and time of notification for: All persons located in Illinois who defendant or some person on its behalf called on their cell phone using a Predictive Dialer and/or Prerecorded Message, where MRS' records do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing, or "trapped" captured by telephone equipment) where any call was made at any time between and including July 8, 2006, and July 8, 2010.

6.      Identify the source(s) from which you obtained each of the telephone numbers you called that are responsive to the previous interrogatory, along with the date the numbers were obtained.

7.      If you contend that any person within the following parameters provided prior express consent to receive telephone calls from you using an automatic telephone dialing system, prerecorded voice message, artificial voice message, Predictive Dialer or Prerecorded message, please specifically identify all documents, data information or things that supports this contention.

All persons located in Illinois who defendant or some person on its behalf called on their cell phone using a Predictive Dialer and/or Prerecorded Message, where MRS' records do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing, or "trapped" captured by telephone equipment) where any call was made at any time between and including July 8, 2006, and July 8, 2010.

8.      Identify and explain all written and unwritten policies, practices and procedures concerning the use of your Predictive Dialer or Prerecorded messages.

9.      Identify and explain all written and unwritten policies, practices and procedures concerning the calling of multiple telephone numbers to collect a single debt from a debtor.

10.    State the name, employer, most current home address, title and job description of each person (including present or former third parties, companies, officers and/or employees) who is responsible for your Predictive Dialer(s), Prerecorded Messages, telephony systems and operations, and state specifically what that person's duties with respect to telephony are.

11.    Identify and explain all policies, practices and procedures regarding use of automatic dialing systems, prerecorded voice messages and artificial voice messages and the complete history of each.  Please include a detailed description of policy, practices or procedure the date it was first considered, the date it was implemented, all persons involved in its consideration, implementation and, if applicable, termination.  Please respond to this interrogatory without regard to time; in other words, disregard the timeframe set forth in the instructions for these requests.

12.    Describe all document destruction and retention policies of the defendant.

13.    Identify and explain the basis for any claim that any violation alleged in the complaint was unintentional and/or resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.  Identify what procedures exist, how they are maintained, how they are adapted to avoid the matters complained of what evidence or expected testimony or knowledge supports or refutes the claim and why the alleged violations happened despite the procedures.  Please answer this interrogatory specifically for each putative class member, if you can.

14.    With respect to each expert, retained or nonretained, whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name,

6

address, telephone number, occupation, and current employment; (b) the subject matter of his

expertise; (c) his educational background, academic degrees, employment history, employment

experience, and any other matters which you contend qualify him as an expert; (d) the

substance of all facts and opinions to which he could testify if called as a witness; (e) a summary

of the grounds for each such opinion.

### REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce:

1.      All documents, records, data, recordings and other materials relating to plaintiff,

or which are indexed, filed or retrievable under plaintiffs' names or any number, symbol,

designation or code (such as an account number or Social Security number) assigned to

plaintiffs, Julie Schultz or  the phone numbers 773-615-9181 or 773-615-8862.

2.      All documents transmitted to any third party as to any account associated with

Julie Schultz, 773-615-9181 or 773-615-8862.  Please include the "form" for any letter or

document which you sent but for which you do not have a precise copy.

3.      All documents evincing, or relating to, any policies, practices or procedures

concerning calling or attempting to call telephone numbers using a Predictive Dialer or

Prerecorded Message.

4.      All records that show calls to cell phones made using your Predictive Dialer

and/or Prerecorded Message for the following persons:  All persons located in Illinois who

defendant or some person on its behalf called on their cell phone using a Predictive Dialer

and/or Prerecorded Message, where MRS' records do not show that the person provided the

number to the defendant or the original creditor (for example, where the number was obtained

7

through skip tracing, or "trapped" captured by telephone equipment) where any call was made at any time between and including July 8, 2006, and July 8, 2010.

A reminder: for all requests herein: If you contend that providing a complete response t is impracticable or impossible, please provide the most complete response as possible (which may be over inclusive), explain what components or responsive information or documents is missing or over inclusive, and why you contend production of those materials is impossible or impracticable.

5.      For each person identified in response to interrogatories 5, or responsive to that interrogatory, please provide any and all documents, data or things that show the individual's express consent to receive telephone calls on a cellular telephone, and to receive calls on their cellular phone through use of a Predictive Dialer or Prerecorded Voice, an automatic telephone dialing system, and\or using an artificial or pre-recorded voice.

6.      For each putative class member as the classes are defined in the Complaint, produce all documents that demonstrate that defendant had prior express consent to call such person through use of Predictive Dialer or Prerecorded Voice, an automatic telephone dialing system, and\or using an artificial or pre-recorded voice.

7.      All records of outgoing calls made to Illinois area codes that were made with either a Predictive Dialer or Prerecorded Message between July 8, 2006 and July 8, 2010.

8.      All contracts, communications or other documents concerning obtaining telephone numbers from skip trace companies, creditors, credit bureaus or any other source from which you have obtained telephone numbers for persons you called using a Predictive Dialer or Prerecorded Message between July 8, 2006 and July 8, 2010.

8

9.      The complete personnel record for any employee or executive responsive to any interrogatory in this case.

10.      All documents, contracts, recordings, emails or agreements concerning use of your Predictive Dialer or Prerecorded Message.

11.      Please do a manual and computer search (irrespective of date) for all documents (including but not limited to: emails memos, communications or things) relating to TCPA compliance, and/or calling incorrect numbers using a Predictive Dialer or Prerecorded Message, without regard to timeframe.

12.      All contracts, agreements, manuals, and communications with third parties concerning telephony, Predictive Dialers, Prerecorded Messages, dialing telephone calls, prerecorded voice messages and artificial voice messages.

13.      All manuals, memoranda, instructions and other documents which discuss, describe or set forth standards, criteria, guidelines, policies or practices relating to the Telephone Consumer Protection Act as they relate to making calls using a Predictive Dialer and/or Prerecorded Message.

14.      A copy of the complaint for any lawsuit against you for violation of the TCPA.

15.      A copy of any written complaint and your response (formal or informal) you or your attorneys have ever received that complains about telephone calls to incorrect numbers, including but not limited to calls using your Predictive Dialer and Prerecorded Messages, without regard to date.

16.      All documents from ACA International or other trade publications or conferences that concern making automated telephone calls to debtors, including but not limited to fastfax,

9

internet items to which you or your attorney had access, flyers, publications, emails, audio files and presentations.

17.    All documents from any source that concern the legality or propriety of making telephone calls to debtors using your Predictive Dialer, Prerecorded Message, an autodialer or a prerecorded or artificial voice.

18.    All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Telephone Consumer Protection Act.

19.    All organizational charts of defendant showing personnel.

20.    All organizational charts of defendant showing ownership and/or corporate structure.

21.    All documents concerning or relating to any effort, ever, by you to determine a process, policy or practice whereby you could determine whether a telephone number is or was a cellular telephone number.

22.    All documents concerning or relating to any effort, ever, by you to determine a process, policy or practice whereby you could use your Predictive Dialer or Prerecorded Message, and still comply with the TCPA.

23.    All insurance policies that could possibly afford any coverage with respect to the matters complained of in this case together with all correspondence accepting or declining coverage or reserving rights with respect thereto.

24.    All statistics, studies and/or reports concerning the use of your Predictive Dialer or Prerecorded Message between July 8, 2006 and July 8, 2010.

25.     All documents relating to the maintenance by defendant of policies, practices or procedures adapted to avoid calling persons who did not consent, or revoked consent, to be called on their cellular telephones.

15.     Your entire file, including any documents or data that show consent or lack thereof to receive calls made with your Predictive Dialer, Prerecorded Message, automatic telephone dialing system or using artificial or prerecorded voice calls on their cellular telephone, for any person that falls within the following parameters:

> All persons located in Illinois who defendant or some person on its behalf called on their cell phone using a Predictive Dialer and/or Prerecorded Message, where MRS' records do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing, or "trapped" captured by telephone equipment) where any call was made at any time between and including July 8, 2006, and July 8, 2010.
> 16.

A reminder:  for all requests herein:  If you contend that providing a complete response to this request is impracticable or impossible, please provide the most complete response as possible (even if over inclusive), explain what components or responsive information or documents is missing or over inclusive, and why you contend production of the remainder of materials is impossible or impracticable.

26.     All documents that support or refute any claim or defense you have raised, may raise in the future or intend to raise in this case.


                                                          /s/Alexander H. Burke

BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 732
Chicago, IL 60601
(312) 729-5288

(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

**Exhibit A**

**INSTRUCTIONS AND DEFINITIONS**

**Definitions**

A. The term "document" includes, by way of illustration only and not by way of limitation, the following, whether printed or reproduced by any process, or written and/or produced by hand: ledgers; notes; correspondence; communications of any nature; telegrams; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; reports; publications; photographs; microfilm, microfiche, and similar media; minutes or records of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; court papers; brochures; pamphlets; press releases; drafts of, or revisions of drafts of, or transcriptions of, any document; tape recordings; dictation belts; invoices; bills; accounting records; telephone toll records; and disks, tapes, and other magnetic or electronic information storage media. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation initials, stamped indicia, any comment or any notation of any character and not a part of the original text, is to be considered a separate document.

B. References to "you" or any named entity or individual include agents, employees, and attorneys of that person, whether or not acting within the scope of their authority; all other persons acting on behalf of the person referred to; and in the case of an entity, its merged or acquired predecessors.

C. "Person" includes any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, or commission, or other entity.

D. "Identify" or "identification," when used with respect to a person, means to state the name, last known address, telephone number, and if a corporation or other entity, the principal place of business of the person.

E. "Identify" or "identification," when used with respect to a document, means to state the general nature' of the document (i.e., letter, memorandum, etc.); the name of the author or originator; each addressee; all individuals designated on the document to receive a copy or otherwise known to have received a copy; the date, title, and general subject matter of the document; the present custodian of each copy thereof and the last known address of each such custodian; and the date of the making of the document.

F. "Communication" includes every manner or means of disclosure, transfer, or exchange of information, and every disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

G. "Identify" or "identification," when used with respect to a communication, means to state the date of the communication; the type of communication (i.e., telephone conversation, meeting, etc.); the place where the communication took place; the identification of the person who made the communication; the identification of each person who received the communication and of each person present when it was made; and the subject matter discussed.

H. "Relates" includes constitutes, describes, discusses, ref1ects, refers to, and logically pertains to.

I. "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. §227 et seq, implementing regulations 47 C.F.R. 64.1200, and all valid FCC opinions interpreting such.

**Instructions**

1. All documents within your possession, custody, or control or that of your agents, employees, and attorneys shall be produced. Without limitation of the term "control" as used in the preceding sentence, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person having actual possession thereof.

2. To the extent any paragraph is objected to, please set forth all reasons for your objection.

3. If you prefer, you may provide legible copies of document that reflect all markings, notations, and highlighting on the originals.

4. Documents to be produced shall be either (1) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the request for production.

5. The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

6. To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them.

7. "And" and "or" shall be interpreted to mean "and/or," so that said terms are given their broadest possible meaning.

8. If you are producing a document, you need not provide the information specified in paragraph E with respect to that document.

**CERTIFICATE OF SERVICE**

I, Alexander H. Burke, certify that on August 19, 2010, I served this document via email delivery to:

David M. Schultz dschultz@hinshawlaw.com
James Constantine Vlahakis    jvlahakis@hinshawlaw.com
Daniel R. Degen    ddegen@hinshawlaw.com

/s/Alexander H. Burke

15

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DAVID MACK, and )
CHRISTOPHER MACK, on behalf of ) 1:10-cv-4244
themselves and others similarly situated, )
         Plaintiffs, ) Judge Hibbler
v. ) Magistrate Judge Keys
  )
MRS ASSOCIATES, INC., )
         Defendant. )

## DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES

NOW COMES the Defendant, MRS ASSOCIATES, INC. ("Defendant"), by and through its undersigned counsel, and for its Answers and Objection to Plaintiff's Interrogatories, states as follows:

### General Objections

1. Objection, Plaintiff has not adequately defined the phrase "predictive dialer." Subject to and without waiving this objection, Defendant lacks knowledge or information sufficient to answer whether a "predictive dialer" was used as this term is contemplated by Plaintiff. Defendant, however, states that it operates a telephone dialing system which had the capability of leaving a prerecorded voice message under certain circumstances and that its dialing software can dial telephone numbers from a list or "dialing campaign" that consists of telephone numbers that members of the dialer team in conjunction with Operations Department within Defendant's company has selected from its database based on criteria set by these individuals.

2. Plaintiff's Interrogatories exceed the permissible amount because Plaintiff has included numerous discrete subparts.

130025998v2 00038

## Answers and Objections

1.      Identify all attempted and successful communications (including telephone calls) to and from 773-615-9181 and 773-615-8862.  Include the date and time of each call or attempted call, who or what dialed the number, all messages (prerecorded or live),  all equipment and systems used, the telephone company(ies) that serviced line for each call, the Predictive Dialer that was used, the Prerecorded Message used.

**Answer:**      Defendant incorporates General Objection No. 1.  Further objecting, this interrogatory contains eight (8) discrete and distinctly different subparts.  Subject and without waiving these objections, and pursuant to FRCP 33(d), see attached records which identify the date and time of each call or attempted call related to the subject account.

2.      Identify all sources from which you obtained the phone numbers 773-615-9181 and 773-615-8862, along with all other numbers called in association with the alleged debt of Julie Schultz.

**Answer:**      Objection, this Interrogatory contains two discreet subparts (sources and numbers called).  Subject to and without waiving these objections, Defendant received the subject numbers from Capital One.  Pursuant to FRCP 33(d), see attached screen shots and spreadsheet of calls made by Defendant to the above numbers.

2

130025998v2 00038

3.    Identify and explain all written and unwritten policies, practices and procedures concerning use of Predictive Dialers and Prerecorded Messages, going back to when you first considered using such, and ending on July 8, 2010.

**Answer:**    Defendant incorporates General Objection No. 1. Further, this Interrogatory is overly broad and overly burdensome and better suited for a FRCP 30(b)(6) deposition or a more detailed interrogatory which asks about a specific aspect of Defendant's telephony system, the particular implementation of a disclosed policy or practice, or the explanation of a particular document. Additionally, this Interrogatory seeks irrelevant information that is not related to the purported class. The use or misuse of so-called "prerecorded messages" relative to FOTI, or any other substantive issue related to messages in general, are not an issue of this case. For these reasons, providing "all written and unwritten policies, practices and procedures concerning use of . . . Prerecorded Messages" will not lead to the discovery of admissible evidence. Subject to and without waiving these objections, pursuant to FRCP 33(d) see attached documents entitled "FDCPA - 1st PARTY/MRS POLICY & PROCEDURE", "Dialer Process Documentation", "Artiva Workstation System Training for Collectors" and "FDCPA Review Packet."

4.    Identify and state the location and the person who has possession, custody or control of any document, data or information responsive to any discovery request in this case, that is not being produced because of any objection, privilege, or because you contend that such is not within your possession, custody or control.

**Answer:**    Objection, this request is vague, confusing and overly burdensome. Defendant should not be required to analyze each and every discovery request to identify every person who

3

may have possession of any document that is not being produced subject to an objection or any contention that any such documents are not within Defendant's possession, custody or control. Subject to and without waiving these objections, it is possible that the underlying creditor Capital One may have documents that Plaintiff's counsel believes are responsive to this case that Defendant does not have within its possession, custody or control. For example, Defendant does not possess internal collection notes that may have been created by employees of Capital One nor does Defendant posses any documentation Capital One may have regarding the manner in which it obtained the subject numbers identified in Interrogatory No. 2. Additionally, because Plaintiff seeks certification of a class beyond those persons called in relation to the subject creditor, it would be overly burdensome for Defendant to hypothesize about documents that other creditors may possess that Plaintiff's counsel believes are responsive to this case (that Defendant does not have within its possession, custody or control).

   5.   Identify, state the number and state the time and date of all calls and date and time of notification for: All persons located in Illinois who defendant or some person on its behalf called on their cell phone using a Predictive Dialer and/or Prerecorded Message, where MRS' records do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing, or "trapped" captured by telephone equipment) where any call was made at any time between and including July 8, 2006, and July 8, 2010.

**Answer:** Defendant also incorporates General Objection No. 1 and states that this Interrogatory is premature prior to an order certifying the class. Second, this Interrogatory is also overly burdensome and not limited to the creditor associated with Ms. Mack's account. Third,

4

130025998v2 00038

Defendant objects to this request given the fact intensive nature of this request. As phrased Plaintiff's request will encompass a review of tens of millions of accounts. Fourth, Defendant currently lacks knowledge or information sufficient to readily identify or differentiate, in every instance, whether a cell phone number that it called during the class period was given to it by the debtor, obtained directly from a client-creditor (with or without the express or implied consent of the debtor), through skip tracing, so-called telephone capture, or otherwise provided to a collector by the debtor or a third party. For example, Defendant obtained the subject numbers at various times during the collection of the subject accounts, including, but not limited to: during in-bound calls to Defendant's call centers where debtors may provide their telephone number(s) or otherwise update their contact information; written communications from debtors, including, the submission of "web-forms" to update contact information; credit bureau updates; and skip-tracing. Further, after an account is placed with Defendant, and a debtor calls the creditor, certain creditors (including Capital One) may transfer the caller to Defendant which may result in the debtor providing his or her number to Defendant. . Fourth, Defendants' outgoing phone log records do not independently identify whether the subject phone numbers are cell phones or land lands, nor do the records identify the source or manner in which the phone numbers were obtained. For example, the outgoing phone logs do not readily demonstrate whether the number was obtained through skip tracing, obtained by so-called telephone "capture" equipment or otherwise provided to a collector by the debtor or a third party. For these reasons, Defendant currently lacks knowledge or information sufficient to answer this Interrogatory. Having said that, Defendant has pulled and preserved records for all outgoing calls to cell phones during the purported class period within the United States with the exception that it cannot readily obtain phone records prior to January 1, 2007.

5

6. Identify the source(s) from which you obtained each of the telephone numbers you called that are responsive to the previous interrogatory, along with the date the numbers were obtained.

**Answer:** Objection, the requested material is premature prior to an order certifying the class. Defendant also incorporates General Objection No. 1. This Interrogatory is also overly burdensome and not limited to the creditor associated with Ms. Mack's account. Defendant incorporates its third and fourth objections to Interrogatory No. 5. Subject to and without waiving these objections, as a general matter, Defendant obtained the subject numbers directly from its clients at the time the accounts were placed with Defendant. Additionally, Defendant obtained the subject numbers at various times during the collection of the subject accounts, including, but not limited to: during in-bound calls to Defendant's call centers where debtors may provide their telephone number(s) or otherwise update their contact information; written communications from debtors, including, the submission of "web-forms" to update contact information; credit bureau updates; and skip-tracing. Further, when an account is placed with Defendant, and a debtor calls the creditor, certain creditors (including Capital One) may transfer the caller to . dant which may result in the debtor providing his or her number to Defendant.

6

7.     If you contend that any person within the following parameters provided prior

express consent to receive telephone calls from you using an automatic telephone dialing system,

prerecorded voice message, artificial voice message, Predictive Dialer or Prerecorded message,

please specifically identify all documents, data information or things that supports this

contention.

> All persons located in Illinois who defendant or some person on its behalf called on their
> cell phone using a Predictive Dialer and/or Prerecorded Message, where MRS' records do
> not show that the person provided the number to the defendant or the original creditor
> (for example, where the number was obtained through skip tracing, or "trapped" captured
> by telephone equipment) where any call was made at any time between and including
> July 8, 2006, and July 8, 2010.

**Answer:**     Objection, this is a premature contention interrogatory.  This Interrogatory is also

overly burdensome.  Further, the requested material is premature prior to an order certifying the

class.  Defendant also incorporates General Objection No. 1.  Furthermore, Defendant objects to

this request given the fact intensive nature of this request.  As phrased Plaintiff's request may

encompass a review of tens of millions of accounts and hundreds of clients.  Additionally,

Defendant incorporates its third and fourth objections to Interrogatory No. 5.  Subject to and

without waiving these objections, Defendant identifies datasets received from its client which

contain numbers that each creditor has represented relate to the formation of the subject debt or

where the client received the number from the debtor for the purposes of collecting the debt

and/or the debtor indicated to Defendant that it was permissible to be called at the subject

number or otherwise consented to being called at that number.  For example, Defendant may

have obtained consent to call debtors cell phones at various times during the collection of the

subject accounts, including, but not limited to:  during in-bound calls to Defendant's call centers

where debtors provided their cell number(s) or otherwise updated their contact information; and

7

from written communications from debtors, including, the submission of "web-forms" to update contact information, including cell phone numbers. Defendant's computer and telephony systems does not and has not independently tracked consent to call cell phones in a manner that is readily retrievable. Accordingly, an account-by-account review of individual collection notes is necessary to ascertain whether consent was provided. Defendant, cannot gather or produce this data without incurring great expense and time. To date, Defendant has incurred in excess of 200 hours of time in collecting the numbers that it called over the relevant time period. Further, maintaining this data for this time period will likely result in Defendant purchasing additional equipment and consulting services within the next week or two. Until it is demonstrated that Plaintiffs have standing and/or a class is certified, it would be unreasonable for Defendant to incur the time and expense of identifying the requested data. Having said that, Defendant will maintain records of all outbound calls and calls logs as it attempts to identify a potential class. Defendant's records are kept on-site and are not stored by a third-party.

8. Identify and explain all written and unwritten policies, practices and procedures concerning the use of your Predictive Dialer or Prerecorded messages.

**Answer:** Objection, Defendant incorporates General Objection No. 1. Further, this Interrogatory is overly broad and overly burdensome and better suited for a FRCP 30(b)(6) deposition or a more detailed interrogatory which asks about a specific aspect of Defendant's telephony system, the particular implementation of a disclosed policy or practice, or the explanation of a particular document. Additionally, this Interrogatory seeks irrelevant information that is not related to the purported class. The use or misuse of so-called "prerecorded messages" relative to FOTI, or any other substantive issue related to messages in

8

general, are not an issue of this case. For these reasons, providing "all written and unwritten policies, practices and procedures concerning use of . . . Prerecorded Messages" will not lead to the discovery of admissible evidence. Subject to and without waiving these objections, pursuant to FRCP 33(d), see documents which are also being identified and produced in response to Interrogatory No. 3.

9.     Identify and explain all written and unwritten policies, practices and procedures concerning the calling of multiple telephone numbers to collect a single debt from a debtor.

**Answer:**     Objection, the phrase "concerning the calling of multiple telephone numbers to collect a single debt from a debtor," is vague and undefined. Further, this Interrogatory is not limited in time or scope. Subject to and without waiving these objections, it is Defendant's policy to comply with the FDCPA and the TCPA. Further, it is Defendant's policy to avoid causing a telephone number or set of numbers to be called in violation of the FDCPA and/or the TCPA. Pursuant to FRCP 33(d), see documents which are also being identified and produced in response to Interrogatory No. 3, and in particular, see pages 3-44 of document entitled "FDCPA - 1st PARTY/MRS POLICY & PROCEDURE", page 5 of document entitled "FDCPA Review Packet", document entitled "Dialer Process Documentation."

9

10. State the name, employer, most current home address, title and job description of each person (including present or former third parties, companies, officers and/or employees) who is responsible for your Predictive Dialer(s), Prerecorded Messages, telephony systems and operations, and state specifically what that person's duties with respect to telephony are.

**Answer:** Defendant incorporates General Objection No. 1. Further, this Interrogatory contains seven (7) discrete and distinctly different subparts. Additionally, this Interrogatory is overly broad, overly burdensome and seeks irrelevant information that is not related to the purported class, such as the broad and undefined terms "telephony systems and operations" and "responsible for" Subject to and without waiving these objections, as detailed below, the identified individuals have managerial, supervisory, or operational duties relative to the planning and operation of Defendant's dialing and telephony system. As general matter irectors of operations are responsible for determining the parameters of calling campaigns, and in particular, the sorting, timing and frequency of calls, the types of messages, if any, that were used. The Dialer Team is responsible for daily operations of the dialer. 1 has a responsibility of high level operations of the dialer related to technical process or issues. For more detailed job descriptions, pursuant to FRCP 33(d), see attached job descriptions. The identified individuals identified with "A" can be contacted through the undersigned attorney. Upon request, contact information will be provided for former remaining employees.

| Position Job Title | Name | Status of Employment |
|---|---|---|
| Dialer Team | Abanil, Gil J | Active ("A") |
| Director of Operations | Adams III, William H | No Longer Employed ("T") |
| Chief Operating Officer | Barnshaw, William III | A |
| Director of Operations | Bernard, Claude | T |
| Director of Operations | Blau, Sanford F | T |
| Director of Operations | Bunton Sr, Wilson A | T |
| Assistant Director of Operations | Chambers, Tamra L | T |

10

| | | |
|---|---|---|
| Director of Operations | Collette, Danielle | A |
| Director of Operations | Dossett, Ryan | A |
| Chief Executive Officer | Freedman, Jeffrey M | A |
| Chief Executive Officer | Freedman, Saul A | A |
| Assistant Director of Operations | Gothard, Roland | T |
| Assistant Director of Operations | Greenberg, Joseph | A |
| Vice President of Operations | Grovola, Peter | A |
| Director of Operations | Hendricks, Kevin | T |
| Dialer Team | Hoepfner, Heather | A |
| Director of Operations | Hundley, James G. | T |
| Regional Vice President | Hundley, James G. | T |
| Chief Operating Officer | Hunn, Eric | T |
| Director of Operations | Lewis, Darren | A |
| Regional Vice President | Lorenzo, Anthony | A |
| Director of Training and Development | Marrero-Greene, Evy | A |
| Director of Operations | Mattera, Peter J. | A |
| Regional Vice President | Mattera, Peter J. | T |
| Director of Dialer Team | McCormick, Chad | A |
| Director of IT | Mei, Jinglei | A |
| Director of Operations | Mendoza, Marissa J | T |
| Director of Operations | Mobley Sr., Maurice D. | T |
| Director of Operations | Mohr, Jason | A |
| Assistant Director of Operations | Moore, Derrick D | T |
| Director of Operations | Nicholson, Christie | A |
| Director of Operations | Parks, Steven | T |
| Dialer Team | Peter, Ryan | A |
| Director of Software Development | _ ili, Eric | A |
| Assistant Director of Operations | Richman, Scott | T |
| Director of Operations | Ryan, John | A |
| Dialer Team | Ryan, Sean | T |
| Director IT | Scheurer, Joseph | A |
| Vice President of Operations | Sittineri, Robert | A |
| Director of Operations | Stang, Jason | T |
| Vice President of Operations | Topolewski, Robert R | T |
| Regional Vice President | Villanella, Michael J | T |
| Regional Vice President | Yanover, Stephen | T |

11

11.     Identify and explain all policies, practices and procedures regarding use of automatic dialing systems, prerecorded voice messages and artificial voice messages and the complete history of each. Please include a detailed description of policy, practices or procedure the date it was first considered, the date it was implemented, all persons involved in its consideration, implementation and, if applicable, termination. Please respond to this interrogatory without regard to time; in other words, disregard the timeframe set forth in the instructions for these requests.

**Answer:** Objection, this Interrogatory contains six (6) discrete and distinctly different subparts. Further, this Interrogatory is overly broad and overly burdensome and better suited for a FRCP 30(b)(6) deposition or a more detailed interrogatory which asks about a specific aspect of Defendant's telephony system, the particular implementation of a disclosed policy or practice, or the explanation of a particular document. Additionally, it seeks irrelevant information that is not related to the purported class. ~~The purported class relates to persons who allegedly called Defendant to state that they were not the debtor in question.~~ Accordingly, "policies, practices and procedures regarding use of . . . prerecorded voice messages and artificial voice messages and the complete history of each" is not related to the purported class. For these reasons, this Interrogatory will not lead to the discovery of admissible evidence. Subject to and without waiving these objections, pursuant to FRCP 33(d) see attached documents which are also being produced in response to Interrogatory No. 3.


12.     Describe all document destruction and retention policies of the defendant.

**Answer:**     Pursuant to FRCP 33(d), see attached documents.


12

13. Identify and explain the basis for any claim that any violation alleged in the complaint was unintentional and/or resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Identify what procedures exist, how they are maintained, how they are adapted to avoid the matters complained of what evidence or expected testimony or knowledge supports or refutes the claim and why the alleged violations happened despite the procedures. Please answer this interrogatory specifically for each putative class member, if you can.

**Answer:** Objection, this Interrogatory is overly burdensome given its request to "answer this interrogatory specifically for each putative class member . . . ." Further, this Interrogatory contains six (6) discrete and distinctly different subparts. Furthermore, Defendant objects to this request given the fact intensive nature of this request. As phrased Plaintiff's request may encompass a review of millions of accounts and hundreds of clients. Defendant has received millions of telephone numbers from its clients. Defendant, however, cannot gather or produce this data without incurring great expense and time. To date, Defendant has incurred approximately 200hours of time in collecting the numbers that it called over the relevant time period. Until it is demonstrated that Plaintiffs have standing and/or a class is certified, it would be unreasonable for Defendant to incur the time and expense of identifying the requested data. Accordingly, subject to and without waiving these objections, Defendant incorporates its above interrogatory answers and identified documents and further states that it was and is its policy and practice to comply with the FDCPA with regard to call volume and incorporates its answer to Interrogatory No. 9. Further, Defendant, with regard to the TCPA, Defendant believes that it had consent to call debtors based on the representations of its clients that the numbers provided by

13

each creditor relate to the formation of the subject debt or where the client received the number from the debtor for the purposes of collecting the debt and/or the debtor indicated it was permissible to be called at the subject number or otherwise consented to being called at that number. Defendant has attempted to comply with the TCPA based upon its review of litigation, regulations, and industry practice, and Defendant is now scrubbing for cell phones to remove them from future calling campaigns.

14.     With respect to each expert, retained or nonretained, whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

**Answer:**     Objection, this Interrogatory contains five (5) discrete and distinctly different subparts. Further objecting, this Interrogatory is premature. Subject to and without waiving these objections, Defendant will produce a Rule 26 expert report by the time set by the court.

Defendant, MRS Associates, Inc.

*/s/ James C. Vlahakis*
James C. Vlahakis
ARDC No. 6230459
Hinshaw & Culbertson LLP
222 North LaSalle, Suite 300
Chicago, IL 60601
tel: 312-704-3000
fax: 312-704-3001
jvlahakis@hinshawlaw.com

14

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2010, I emailed a copy of the above document to counsel of record for Plaintiff:

Alexander Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

s/James C. Vlahakis
James C. Vlahakis
ARDC No. 6230459
Hinshaw & Culbertson LLP
222 North LaSalle, Suite 300
Chicago, IL 60601
tel: 312-704-3000
fax: 312-704-3001
jvlahakis@hinshawlaw.com

15

130025998v2 00038

# Appendix 1

```
 1
 2              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 3                      EASTERN DIVISION

 4   TODD FIKE, on behalf of       )
     himself and others similarly  ) Docket No. 09 C 2558
 5   situated,                     )
                                   ) Chicago, Illinois
 6              Plaintiffs,        ) November 13, 2009
                                   ) 9:30 a.m.
 7        v                        )
                                   )
 8   THE BUREAUS, INC.,            )
                                   )
 9              Defendant          )

10
                     TRANSCRIPT OF PROCEEDINGS
11             BEFORE THE HONORABLE ARLANDER KEYS

12   PRESENT:
13
     For the Plaintiff:        ALEXANDER H. BURKE
14                             Burke Law Offices, LLC
                               155 North Michigan Avenue
15                             Suite 9020
                               Chicago, Illinois  60601
16

17   For the Defendant:        PETER E. PEDERSON, JR.
                               Hinshaw & Culbertson LLP
18                             222 North LaSalle Street
                               Suite 300
19                             Chicago, Illinois  60601-1081

20   (TRANSCRIBED FROM ELECTRONIC RECORDING.
       PLEASE SUPPLY CORRECT SPEAKER  IDENTIFICATION)
21

22   Court Reporter:           Lois A. LaCorte
                               219 South Dearborn  Room 1918
23                             Chicago, Illinois 60604
                               (312) 435-5558
24

25
```

[1]

1      THE CLERK:  09 C 2558, Fike v The Bureaus.

2      THE COURT:  Good morning, counsel.

3      MR. BURKE:  Good morning, Judge, Alexander Burke for

4 the plaintiff.

5      THE COURT:  Good morning, Mr. Burke.

6      MR. PEDERSON:  Good morning your Honor, Pete Pederson

7 for defendant.

8      THE COURT:  Good morning, Mr. Pederson.  We have The

9 Bureaus' motion to compel and also plaintiff has a motion to

10 compel, right, Mr. Burke?

11      MR. BURKE:  That's right, Judge.

12      THE COURT:  Let's talk about plaintiff's -- first of

13 all, the defendant's motion to compel, isn't that moot now.

14      MR. BURKE:  I think so, Judge.  We provided the

15 signature under oath that they asked for.  Mr. Fike went to his

16 cell phone carrier and obtained all the records that he could

17 going through 2007 and those have been produced The Bureaus.  If

18 The Bureaus wants more records, they can subpoena them and we

19 certainly won't oppose that, but my understanding and my client's

20 understanding is that we have provided everything that he is able

21 to obtain.

22      And then as to the interrogatory response that they

23 want, I think Mr. Fike has given everything, all the information

24 he knows in response to the interrogatory.

25      MR. PEDERSON:  Well, your Honor, there were three

1  aspects of the motion to compel.  We sought Mr. Fike's signature

2  under oath.  That was provided, it's moot.  We also sought the

3  phone bills.  So far we have the phone bills for May 2007 to May

4  2008 and then September 2008 through January 2009, which was the

5  period -- the last period when the phone calls by TBI were made.

6  There is a gap from May 2008 to September 2008.  We haven't

7  received those phone bills.

8          THE COURT:  It's those three, May, June -- four months

9  there.

10         MR. PEDERSON:  Right.  So that aspect of the motion to

11 compel isn't moot.  And then we have also requested contacts

12 between Mr. Fike and the original creditor.  We have a very bare

13 bones response in the original interrogatory answer, which says

14 "I remember scheduling the dentist appointment and making certain

15 payments."  We would like the actual cancelled checks and any

16 written communication between the creditor and Mr. Fike because

17 the checks and the written communications would go to whether Mr.

18 Fike provided the phone number, his cell phone number to the

19 creditor, which would constitute consent under the TCPA.

20         THE COURT:  Do you agree with that, Mr. Burke?

21         MR. BURKE:  Well, I take issue with the comments about

22 what constitutes consent.  I don't know about the cancelled

23 checks.

24         THE COURT:  Do you agree if he contacted, if your

25 client contacted the creditor by cell phone, that that is consent

[3]

1  for him to be contacted by the creditor by phone?

2          MR. BURKE:  I certainly do not agree with that, Judge.

3  In fact, in our response to the motion to compel, we cited a

4  footnote in the FCC order which is controlling on the merits of

5  this case that says that that, expressly says that that is not

6  consent under the TCPA.

7          THE COURT:  Okay.  Still we're talking about discovery

8  here, not about the ultimate, whether it's going to get it into

9  evidence.

10         MR. BURKE:  I agree, Judge.  I didn't know about this

11  gap in the records.  I know that Mr. Fike went and tried to find

12  his phone records and he got everything he could get.  I'll go

13  back to him and see if he can get this gap.  We will try to get

14  that gap.  As far as cancelled checks, I haven't spoken with him

15  about the cancelled checks.  We can see if he can find the

16  cancelled checks.  Otherwise, we will subpoena the cancelled

17  checks.

18         THE COURT:  Okay.  Now, with regard to the motion to

19  compel filed by the plaintiff, you raise the consent defense, but

20  you claim that you don't have to produce evidence on the defense

21  unless the class is certified.  You're absolutely wrong on that

22  one.  You're not going anywhere with that one.  You claim that in

23  your opinion it's never going to be certified, the class is never

24  going to be certified and that you're producing the evidence

25  that's being sought here prior to any, in view of the fact that

1  it's not going to be certified, it's too burdensome, and you

2  shouldn't have to do it.  That is not the law in this area.

3      You have to -- it's going to be up to Judge Dow at some

4  point to decide whether the class is going to be certified and

5  one of the issues is going to be whether there was consent,

6  right, of the class -- of the putative class?

7      MR. PEDERSON:  I don't disagree with most of what your

8  Honor said.  I think the thrust of the motion was that discovery

9  on the merits of a class claim is improper if the plaintiff fails

10 to make a threshold showing that the class is suitable for class

11 certification, and plaintiff has not cited a single case which

12 has certified for class treatment the theory under the TCPA that

13 Mr. Fike brings.

14     When a debt collector is making auto dialed and

15 prerecorded message calls to consumers, those calls will comply

16 with the TCPA unless the consumer never provided his cell phone

17 number to the creditor.  But the court cannot without conducting

18 mini trials into the dealings between each potential class member

19 and the creditor figure out whether the class member actually

20 provided his number to the creditor and thereby consented, and

21 this individual question precludes certification under Rule

22 23(b)(3) and it also precludes identification of the class.

23     So the argument was that he has not shown a case that's

24 prima facie capable of being certified under Rule 23, therefore,

25 merits based discovery on the class claim is inappropriate.

1    THE COURT:   But you're claiming that this, what he is
2  seeking is going to the merits of the claim.
3    MR. PEDERSON:  It goes to whether they consented and so
4  it's not, it doesn't go to the question of numerosity or the
5  typicality, it goes to the question of whether these individuals
6  are subject to a defense that can only be proven through a mini
7  trial, which would preclude class certification.  And in many
8  cases the evidence concerning consent is in the hands of third
9  parties and therefore, we are not required under the discovery
10 rules to produce that information as it's not in our possession
11 or control.
12    THE COURT:   Well, who has it?
13    MR. PEDERSON:  It would be in the hands of --
14    THE COURT:   The client, right?
15    MR. PEDERSON:  It would be in the hands of the creditors
16 and the class members.
17    THE COURT:   Well, do you know who the class members
18 are?
19    MR. PEDERSON:  No, your Honor, we don't because we can't
20 generate a list of individuals who received calls on their cell
21 phones without having consented to the calls.
22    THE COURT:   Well, how does the plaintiff find out who
23 the class members are if you don't produce discovery to them
24 regarding --
25    MR. PEDERSON:  We can produce a list of numbers with the

1  relevant area codes that we contacted during the time frame, but

2  we can't provide a list of numbers that we contacted where the

3  individual did not consent to be contacted because we don't have

4  information about the dealings between each class member and the

5  creditor.

6        So we could produce an overinclusive list of individuals

7  who were contacted, period, but many of those individuals will

8  not be class members because they consented to receive calls or

9  because the call was actually placed to a land line rather than a

10  cell phone.

11        THE COURT:  Can't you find out which ones of them

12  consented and did not consent?  I know it's burdensome, but can't

13  you do it?

14        MR. PEDERSON:  Not without an extremely burdensome and

15  time-consuming investigation into the dealings between every

16  class member and the creditor, and under the discovery rules, we

17  aren't required to go out and obtain information in the hands of

18  third parties, we're only required to turn over information in

19  our control.  If we turn over the information in our control, the

20  list will be overinclusive.

21        THE COURT:  Well, somebody has got to -- I know you

22  feel like you're between a rock and a hard place here, but on the

23  one hand, the plaintiff is entitled to know which of the

24  individuals on your list consented.  They shouldn't have to --

25  say there are a thousand people on your list.  They shouldn't

1 have to interview all thousand of those people to determine
2 whether they are properly part of this class because they
3 consented when you could get that information easier from your
4 records.

5          MR. PEDERSON:  Your Honor, our records won't disclose in
6 all cases whether the consumer consented to be contacted because
7 that information will be in the hands of the creditor, and the
8 Chaveriat opinion that we cited in our brief states that the
9 litigant is not required to produce information that is in the
10 possession or control of a third party.  The litigant has a duty
11 to produce information in its own possession or control.

12          In that case the plaintiffs had hired an engineering
13 contractor or some scientific contractor to do I believe soil
14 chemistry assessments.  They were requested in discovery to
15 produce certain information in that contractor's possession.
16 They failed to produce it and the district court entered a
17 sanction against them for failing to produce it.  The Seventh
18 Circuit reversed on the ground that the information in the
19 contractor's possession was not in the possession of the
20 plaintiffs and therefore, they could not be -- they could not be
21 sanctioned for failing to produce information in the third
22 party's possession.

23          And this is a similar case where is evidence related to
24 consent is in the possession of a third party and therefore, we
25 are not -- we have no duty and we have no ability to produce that

 1  information.

 2       THE COURT:   So under the ruling on the Chaveriat,

 3  wasn't it?

 4       MR. PEDERSON:   Chaveriat.

 5       THE COURT:   You as a debt collector have no duty to

 6  insure that the creditor that you represent here --

 7       MR. PEDERSON:   That's correct.

 8       THE COURT:   What does the plaintiff do here, make the

 9  creditor also a defendant in this case?

10       MR. PEDERSON:   Well, your Honor, it goes to the

11  impracticality of handling this case on a class basis because the

12  information concerning whether potential class members have valid

13  claims is distributed across many parties.  It could be in the

14  hands of the creditor, it could be in the hands of the consumer.

15  In some cases the consumer might expressly consent to TBI and

16  there will be a notation in the database, but none of these

17  evidence -- none of the categories of evidence of consent can be

18  resolved in a straightforward manner for the entire class.  It

19  would have to be -- the question of consent would have to be

20  resolved for each class member individually.

21       THE COURT:   Okay, then you're arguing against

22  certification.

23       MR. PEDERSON:   Correct.

24       THE COURT:   But what does -- what would Mr. Burke say

25  to try to refute that --

1          MR. PEDERSON:  Well, your Honor --

2          THE COURT:   When you make that argument if he doesn't

3     have some evidence from you?

4          MR. PEDERSON:  Your Honor, what we could do is produce a

5     sample of our database on a random sample of class members and

6     that would include the information in our database about those

7     individual class members.  But it would be improper I think for

8     the court to order us to produce the complete universe of

9     information in our possession and all 7,000 potential class

10    members when such production would be overinclusive because maybe

11    some of the individuals are not members of a class either because

12    they did not receive calls on their cell phones or because they

13    consented.

14         THE COURT:   Well, what does the plaintiff -- not just

15    Mr. Burke, but what does a plaintiff do in that situation, just

16    simply back away and say "Since they won't give it to us, we will

17    just voluntarily dismiss this" or how does he prove it?

18         MR. PEDERSON:  Your Honor --

19         THE COURT:   He can't prove it.

20         MR. PEDERSON:  Well, plaintiff can make the argument

21    that the court should disregard the question of consent and

22    presume --

23         THE COURT:   I don't think that's going to fly.

24         MR. BURKE:  I think the defendant is making that

25    argument, that you should disregard the question of consent.

[10]

1      MR. PEDERSON:  And the other argument the plaintiff can

2  make is that the, a production of a random sample of potential

3  class members would show that the question of consent does not

4  prevent the class from being certified.

5      THE COURT:   And you would oppose that argument, of

6  course.

7      MR. PEDERSON:  We would oppose that argument.  But we

8  think, your Honor, if you order us to produce the complete

9  universe of information on all potential class members or on a

10  random sample of class members, we will argue vigorously to Judge

11  Dow that consistent with the other cases that have examined this

12  type of theory, the question of consent precludes class

13  certification.

14      THE COURT:   Yes, it precludes class certification, but

15  it doesn't preclude discovery.  It doesn't preclude discovery.

16  This case has not been bifurcated, first of all, so you talk

17  about merits versus class certification issues.  That's not --

18  you're not going to get anywhere with that.

19      The issue is that the plaintiff is going to have to show

20  how many or approximately how many of the individuals whom you

21  have attempted to collect from actually consented to your taking

22  your cell phone call.  He has got to prove that.  How does he

23  prove that if you don't give him the information, the evidence on

24  it that you have because he has nothing?

25      MR. PEDERSON:  My response to that, your Honor, is that

1  the plaintiff cannot prove on a class wide basis for all class

2  members whether consent was given without mini trials on the

3  question of consent.  And that precludes class certification.

4       It doesn't matter, your Honor, what information we give

5  Mr. Fike in response to this court's order on the pending motion.

6  Mr. Fike will be unable as a matter of law to resolve this

7  question on a class wide basis such that a class can be certified

8  under Rule 23.

9       THE COURT:  Mr. Burke, you agree, right?

10      MR. BURKE:  Well, if they withdraw their consent

11  defense, if it doesn't matter what information they give me,

12  that's fine.  You know, if they say "We have nothing and we're

13  not providing anything," I think the class will be certified

14  because they have no consent defense.

15      We're -- I don't think they have any evidence and I

16  don't think they can get any.  I mean, Mr. Fike did not consent.

17  They got his, they got his cell phone number from a third-party

18  skip trace company and we have asked subsequently in discovery

19  for all the people they got phone numbers from the skip trace

20  company and there is some law on that too.

21      But the bottom line as to the consent issue is that they

22  brought an affirmative defense of prior express consent.  They

23  have the burden of proof on this defense and we have asked, we

24  have asked for the evidence.

25      THE COURT:  And I think that's really the bottom line

[12]

 1  here, counsel.  You have raised an affirmative defense of consent

 2  as to some of these people.  You're not saying that everybody

 3  consented, are you?

 4       MR. PEDERSON:  We don't know, your Honor.

 5       THE COURT:   You don't know if they did or not?

 6       MR. BURKE:  That raises Rule 11 implications, Judge.

 7       THE COURT:   How can you consistent with Rule 11 make

 8  that defense if you don't know?

 9       MR. PEDERSON:  Well, your Honor, it's a fact of modern

10  life that people use their cell phones.

11       THE COURT:   And you're probably right.

12       MR. PEDERSON:  As the default means of communication.

13  For example, in my own case, your Honor, I haven't had a land

14  line since I think 2000.  So every creditor I deal with I provide

15  my cell phone number to, and under the FCC ruling I'm deemed to

16  consent to receive auto dialed and prerecorded message calls on

17  my cell phone.  So it's reasonable to assume that a very

18  substantial percentage of the debtors who were contacted by TBI

19  did in fact consent by providing their number either to TBI or

20  the creditor.

21       And if your Honor orders us to produce information on

22  the class members or the potential class members, of course, we

23  will comply with your Honor's order.  Our argument is at the end

24  when the smoke settles, Mr. Fike will be unable to provide Judge

25  Dow with the means of resolving the question of consent on a

1  class wide basis such that the class will be certified.

2      THE COURT:   And that happens a lot, that we order stuff

3  to be produced and in the final analysis they can't use it so

4  they lose.

5      MR. PEDERSON:  I would just ask, your Honor, that

6  instead of ordering TBI to produce the complete universe of

7  information on all potential class members, many of whom will not

8  be members of the class because they consented or they were

9  contacted on a land line rather than a cell phone, that your

10 Honor order TBI to produce information on a random sample of the

11 potential, the 7,200 potential class members that TBI has

12 identified based on a database search.

13     THE COURT:   But in this kind of case I don't think

14 sampling -- I have done sampling in cases, but this is probably

15 not one that I would want to, want to have engaged in sampling.

16 So I know it is somewhat burdensome for you, but I think it can

17 be done, and more importantly, without you producing something to

18 them, you know, with regard to your affirmative defense of

19 consent, you know, they're going to have a tough time trying to

20 prosecute this case.

21     I don't care who wins the case, it doesn't matter to me,

22 but at least you have got to give the plaintiff an opportunity to

23 go to the next level, that is, to argue for certification of the

24 class.  And if they don't -- if they can't -- if they can't give

25 some indication to the district court as to the number of those

1  people who did not give consent, well, then that's their case.

2  And you claim that they're never going to be able to do it

3  because these are individualized assessments that have to be

4  made, and you may or may not prevail on that.

5       But we are talking about discovery here and even though

6  it might be costly, time-consuming, I don't know how

7  time-consuming it is because I have listened to you two lawyers

8  making your arguments, but nobody has come forward from your

9  company to tell me exactly what they have to do to get all this

10 information.  I can't just accept your representations in that

11 regard.  I saw the affidavit that was filed by, what's her name?

12       MR. PEDERSON:  Marian Sangalang.

13       THE COURT:   But I think it can be done, it can be done.

14 It may be rather burdensome and I, you know, I recognize that in

15 these kinds of cases that the kind of discovery that's being

16 sought could influence a defendant to try to settle the case

17 rather than litigate it.  I know that's an argument that comes

18 down, but I think this is a legitimate area that the plaintiff

19 should be able to get information from, and to the extent that

20 you have it, you will have to give it up.  And that is with

21 regard to the -- Mr. Burke, what was it particularly that you

22 were asking for?

23       MR. BURKE:  It's on page 6 of our motion.  We're asking

24 for responses to those particular interrogatories and document

25 requests:  Interrogatory 4, 9, 10 -- there should be some overlap

1 with these -- document requests 3, 4, 5, 6, 28 and misnumbered

2 28 -- pardon me, misnumbered 12 that I renumbered 28A.

3        THE COURT:   Okay.  I have reviewed those and I don't

4 see how you can get around not having to respond to those and

5 that's going to be my order.

6        MR. PEDERSON:  Well, your Honor, we will comply with the

7 court's order.  It would be helpful for us to know exactly what

8 information we are required to produce so that we can comply with

9 the order.  Are you ordering production of the evidence of

10 consent in TBI's possession relating to all potential class

11 members?

12        THE COURT:   Right.  The class members there are limited

13 to Illinois, right?

14        MR. BURKE:  That's correct, Judge.  I think that we

15 during the talks, the Rule 37 talks we narrowed that a little bit

16 more.

17        MR. PEDERSON:  The class definition was modified, your

18 Honor.  It now covers only individuals who had 312 and 773 area

19 code numbers.

20        MR. BURKE:  That's correct, Judge, but I take issue with

21 the 7,000 number that Ms. Sangalang put in her affidavit.

22        THE COURT:   Is there more?

23        MR. BURKE:  There absolutely is more, your Honor.

24 That's apparently the number of persons that were, that TBI left

25 prerecorded messages for, but they haven't provided the number

1  for the number of people that they called that they're auto

2  dialing.

3          MR. PEDERSON:  Your Honor, the estimate of 7,200 was for

4  the number of prerecorded message calls to accounts with 773 and

5  312 area code numbers.  They did not include --

6          THE COURT:   The auto dial, you did not include that?

7          MR. PEDERSON:  We did not include auto dialed calls

8  where there would have been a collection agent available to take

9  the call if a live human being answered.

10          THE COURT:   She is not saying that you can't retrieve

11  that information.

12          MR. PEDERSON:  No, we didn't say that, your Honor.

13          MR. BURKE:  They just ignored it.

14          THE COURT:   And auto dial of course, that's a real

15  problem for you.

16          MR. PEDERSON:  Your Honor, I don't want to retread

17  ground or replow ground we have already plowed.  The difficulty

18  with a production for all individuals who received calls is that

19  many individuals had land lines that were called and our

20  information does not in all cases show whether the call was

21  placed to a land line or a cell phone.

22          So if your Honor orders us to produce evidence of

23  consent on all individuals who received either auto dialed or

24  prerecorded message calls during this time period, many of these

25  individuals will not be members of the class because of the

1  question of consent, which we have already gone over, but also

2  because we don't know whether the phone is a land line or a cell

3  phone, which I think would also counsel in favor of doing a

4  sample of, a production on a sample of class members rather than

5  the complete universe.

6       THE COURT:  Well, a sample we're not going to do.  Mr.

7  Burke.

8       MR. BURKE:  I agree, a sample won't give me what I'm

9  entitled to, I think, under the discovery rules.  You know, I

10  think this goes back to the possibility of Rule 11.  I mean, if

11  they have no idea which numbers they called that were cell phone

12  numbers, I look forward to telling the jury that.  But how can

13  they raise a defense in the case if they don't even know the

14  first step, they don't know who falls into the first step of

15  their defense?  I think there is a problem here.

16       THE COURT:  I don't want to tread on their Rule 11, but

17  I understand what you're saying.  I have read it.

18       MR. PEDERSON:  We have already addressed that, your

19  Honor.  We know for a certainty that many of these individuals

20  did give their cell phone numbers so there will have been

21  consent.

22       THE COURT:  I don't think that argument is going to win

23  for you that well, you know, considering modern day technology,

24  more than likely some of them did give their consent.  That's not

25  to get you anywhere.  But that's a Rule 11 issue.  I don't want

1  to deal with that at this point.

2         You're going to have to do better.  You're going to have

3  to -- you have an affirmative defense.  Either you can withdraw

4  your defense, I know you're not going to do that, I don't blame

5  you, or you've got to produce evidence to support it.

6         MR. BURKE:  And, Judge, I just wanted to mention that

7  unlike the Chaveriat case that was cited by the defendant, we

8  issued interrogatories asking for not only information that is in

9  their possession, but information that they know about that

10 supports their defense.  So I just wanted to mention during this

11 hearing that The Bureaus isn't limited to just information that's

12 in their possession, but anything that they know about must be

13 disclosed.

14        THE COURT:  Well, if that's the way it's worded.

15        MR. BURKE:  Absolutely.

16        THE COURT:  But you understand now what they're looking

17 for?

18        MR. PEDERSON:  I understand that your Honor is ordering

19 us to produce --

20        THE COURT:  Right.

21        MR. PEDERSON:  -- evidence in our possession related to

22 the question of whether potential class members --

23        THE COURT:  Evidence that you have.

24        MR. BURKE:  That they know about, that supports their

25 defense.

1        THE COURT:   I don't agree that in the context of this
2   particular case that you're not required to produce evidence that
3   might be in possession of third parties, third parties here being
4   your client, that is, the creditors.  I don't read Chaveriat or
5   whatever that case is, I didn't read that as in the context of
6   this case as allowing you to simply sit on your hands or go to
7   the client and get things.  I didn't read it that way at all.

8        So I'm going to order you to comply, respond to all of
9   the outstanding discovery and that is both the interrogatories
10  and documents.  Are there interrogatories in it also?

11       MR. BURKE:  Yes.

12       THE COURT:   All right.  And with regard to the costs
13  here, I think because there could have been some confusion,
14  counsel, as to what your responsibilities are in this particular
15  case, I'm going to deny the fees and costs without prejudice.
16  Let your client know that if we have to revisit the issue again
17  I'll allow Mr. Burke to renew the motion.

18       Okay, the fees and costs sanctions are denied without
19  prejudice, give you some incentive to try to get your clients
20  to -- I know your clients -- you're an officer of the court --
21  your clients don't take to turn over stuff, but you know that
22  they have to and you have to, as their lawyer you have to
23  convince them that it's the right thing to do or they could have
24  sanctions as well.

25       MR. PEDERSON:  Your Honor, we will fully comply with

[20]

1  your Honor's order and our obligations under the Federal Rules of

2  Civil Procedure.

3        I do need some clarification about the production you're

4  ordering.  My understanding was that you were ordering the

5  production of the information in our possession.

6        THE COURT:  You keep saying "possession."  That's not

7  the word.  I mean, you have -- if this information is in the

8  possession of your client, then you have to give it to them.

9        MR. PEDERSON:  We will produce that information, your

10 Honor.  My point is that we do not have the power or the duty to

11 produce the information in the creditors' possession related to

12 the question of consent.  In Chevariat it speaks expressly to

13 this question.

14        THE COURT:  Your client, the creditor is your client in

15 this case.

16        MR. PEDERSON:  And Chevariat deals with this fact

17 pattern.  It says that the existence of a contractual

18 relationship between a litigant and a third party does not

19 obligate the litigant to produce information in litigation that

20 is in the possession of the third party.

21        THE COURT:  Your client is not a typical third party,

22 though.

23        MR. PEDERSON:  In the Chevariat case, though --

24        THE COURT:  You work for that client.

25        MR. PEDERSON:  My client typically has some type of

[21]

1  ongoing relationship where they will collect receivables for the

2  creditors, but there is no attorney-client relationship.  It's

3  not like they are fiduciaries necessarily.  The Chevariat case

4  dealt with an expert for the plaintiffs and the plaintiffs failed

5  to produce information in the expert's possession.  Judge Posner

6  writing for the Seventh Circuit said that the plaintiff had no

7  duty to produce information in the expert's possession simply

8  because the expert might have given the plaintiff that

9  information if the plaintiff had requested.  It's because the

10 possibility that a party might be able to obtain information from

11 a third party does not mean that the plaintiff or the litigant

12 actually has the control over that information, it means the

13 opposite because it's just that there is a mere possibility that

14 the party to the litigation can obtain the information from the

15 third party.  This is the holding of the Chevariat case.

16      So under this case law, we -- our client has no ability

17 and no duty to produce evidence in the hands of third parties,

18 the creditors in this case.

19      THE COURT:  So in theory you as the debt collector can

20 bury your head in the sand and say "We don't have to give

21 anything." Go after these guys.  They are the guys who did the

22 phone calls to the plaintiff.

23      MR. PEDERSON:  The plaintiff is able to serve subpoenas

24 for information he wants.  We will produce -- our obligation, our

25 obligation is to produce the information in our possession,

1  custody, or control, and we will produce that, but we have no

2  duty under the rules and under Chevariat to produce the evidence

3  and information that's in the lands of the creditors.

4      THE COURT:  Do you believe that if you went back to

5  your creditors and asked them for information that they would

6  refuse to give it to you?

7      MR. PEDERSON:  We have no idea.

8      THE COURT:  If you do that, if you do that and they

9  refuse to give it to you, that's another issue.

10     MR. PEDERSON:  We have no idea whether they will give us

11 the information.  And the --

12     THE COURT:  I think they would.

13     MR. PEDERSON:  Well, it's unknown.  It's a possibility.

14 Judge Posner said that the possibility that the third party will

15 hand over the information to the party does not mean that the

16 party has control over that information, it means the opposite

17 because it's uncertain.

18     MR. BURKE:  I suspect that what counsel is worried about

19 brings us to another portion of the motion to compel.  We asked

20 for the contract between The Bureaus and their creditors, and I

21 suspect, as I have seen in other cases, the contracts contain a

22 no warranty about information clause.  The creditors don't

23 want -- they won't to be bothered by The Bureaus.  This is a

24 major problem for The Bureaus in proving their defense.  I don't

25 think they can prove it.

1          But the bottom line is that this is their defense.

2          THE COURT:  Well, certainly the creditor is not going

3    to be very happy with you when you go back to them and say "Look,

4    we have got this court order that I have got to get this

5    information from you."  They're not going to be happy with you.

6    But so be it.  I mean, these are legal proceedings and I don't

7    think that the holding in that Seventh Circuit Chevariat case is

8    applicable in the case and I'm going to order that you comply

9    now.

10          On the other hand, if you try to get this information

11   from your clients and they tell you they're not going to give it

12   to you, that brings another issue, but at least you've got to

13   make an attempt to do that.  It might not make your client happy,

14   but you have got to make an attempt -- your clients have to make

15   an attempt, which they don't want to do, which is understandable.

16          MR. PEDERSON:  I just respectfully disagree with your

17   Honor that under the Chevariat case we have to --

18          THE COURT:  Okay, you disagree, but that's the order,

19   okay?  All right.

20          MR. BURKE:  Judge, there are two other sections.

21          THE COURT:  Let's give them 30 days.  30 days to comply

22   with the order.  The sanctions motion is denied without

23   prejudice.

24          MR. PEDERSON:  Your Honor, I don't believe there was a

25   sanctions motion, was there?

[24]

1          THE COURT:   Didn't you ask for fees in this?

2          MR. BURKE:  I think we asked for whatever the court

3   feels is appropriate and fee shifting is the --

4          THE COURT:   So you didn't ask specifically for fees.

5          MR. PEDERSON:  There is no prayer for fees.

6          THE COURT:   Well, then we will forget about it.  Strike

7   that.  If he didn't ask for it -- usually you guys ask for fees

8   and costs and all that.

9          MR. BURKE:  I just want the information, your Honor.

10          THE COURT:   Okay.

11          MR. BURKE:  Part 2, information and materials concerning

12   the Automatic Dialer and the messages.

13          THE COURT:   Well, I just said I granted your motion.

14          MR. BURKE:  Very good.

15          MR. PEDERSON:  Your Honor, part 2 of the motion sought a

16   number of categories of information and our position is that we

17   have fully responded to most of these requests.  As to the

18   automatic telephone dialer, we produced approximately 500 pages

19   of technical manuals about the capacities of the dialer.  We have

20   produced the contract for acquisition of the dialer and for

21   technical support relative to the dialer.  I'm not sure what

22   further information plaintiff would be entitled to under the

23   Federal Rules related to the dialing system.  I'm sure there are

24   customer support e-mails or letters related to the dialer, but

25   plaintiff has not met his burden of showing that the customer --

1  that the customer support e-mails would have any bearing on the

2  issues in this case.  I mean, TBI is a company that places a

3  large number of telephone calls, so there are going to be a large

4  number of communications that have some potential connection to

5  the dialer, but they won't have any bearing on the actual issues

6  in this case.  And the only issues in this case relative to the

7  dialer are whether it is an automatic telephone dialing system

8  under the statute.

9       THE COURT:   They want to know how it works.

10       MR. PEDERSON:  We have given them the manuals.

11       THE COURT:   What else do you want to know, Mr. Burke?

12  You have got them now so let's not have any confusion.

13       MR. BURKE:  Your Honor, we asked for contracts.

14       MR. PEDERSON:  We provided the contracts.

15       MR. BURKE:  Page 12 is the list of --

16       THE COURT:   Explain it to him because I have got

17  another matter here.  Explain to him what you're seeking here so

18  there is no confusion.

19       MR. BURKE:  Document requests 7, 8, 9, 10, 11, 12 and

20  14.  Your Honor, they have taken the position that they only have

21  to give us the 500 pages that they want to give us.  I don't know

22  whether counsel has even searched e-mails, for e-mails having to

23  do with the TCPA. Furthermore, we have a burden to prove that the

24  violation was willful and so we are entitled to look and see what

25  sort of interactions they have with anybody about the TCPA to

1  show that their actions were willful.

2      MR. PEDERSON:  Your Honor, we produced all the

3  information related to TCPA compliance and related to whether the

4  dialing system can store or produce numbers with a random or

5  sequential number generator.

6      MR. BURKE:  That is, that is --

7      THE COURT:  With regard to this portion of the order,

8  to the extent that you have not already done so, you will comply

9  completely with it.

10     Now, Mr. Burke says you haven't, and that's going to be

11  an issue you will have to point out to me how they haven't and he

12  will have to respond to that.  I would rather get rid of it now

13  so you don't come back again with the same argument.

14     MR. BURKE:  Absolutely.  What they have done is they

15  have provided, they have placed an artificial limitation upon the

16  discovery that they want to provide to us.  So they took language

17  from the statute, which strangely enough is not controlling as to

18  certain issues in this case.  And they say "Well, we're only

19  going to give you stuff that is relevant pursuant to the standard

20  that's in the statute."

21     The material that we are asking for is material that's

22  relevant under the FCC order from January 4, 2008, which like I

23  said, amazingly enough trumps the statute as far as issues of

24  liability, and what we are looking for is evidence or materials

25  that have to do with whether the autodialer calls people or is

1  able to dial without human intervention.  And once again, Judge,
2  we have to prove that this was willful.
3      MR. PEDERSON:  Your Honor, we have admitted that the
4  autodialer can dial numbers without a human being dialing them
5  and we have also, like I said, produced the 500 pages of
6  technical manuals showing what capacities the dialer has.  I
7  don't know what more information we could produce to show whether
8  the dialer is subject to the statute.
9      MR. BURKE:  Judge, he is telling you that they have
10 produced a bunch of stuff, but he is not saying that they
11 produced everything responsive.
12     THE COURT:  Well, let's get a declaration from someone
13 who knows, a high official there as to what they have and what
14 they will produce and that's all of it.
15     MR. BURKE:  I suspect that that declaration is going to
16 have some limitation in it similar to what we see in the response
17 to the motion to compel, and if so, I suppose I'll bring it back
18 to your Honor's attention and I'll ask for fees at that time.
19     THE COURT:  All right.  If this case comes back again
20 on these issues, and you ask for fees, you probably will get
21 them.  These TCPA cases, information you guys seek is basically
22 the same information on all of them and I have seen these many,
23 many, many times and this is no different than the others.
24     MR. PEDERSON:  Your Honor, I respectfully disagree --
25     THE COURT:  Have you had other cases before me that I

1  went the other way or what?

2       MR. PEDERSON:  I disagree that this is like other TCPA

3  cases because the plaintiff cannot point to a single case which

4  has certified this theory for class treatment under the TCPA.

5       THE COURT:  I'm talking about other cases that come

6  before me.  I have seen probably at least 50 of them.

7       MR. BURKE:  Judge, there are five, five other small

8  issues.  One is we have asked for information, documents and --

9       THE COURT:  I just granted your motion completely.

10      MR. BURKE:  This has to do with the FDCPA claim, your

11 Honor.  We have a claim for violation of the FDCPA.  We asked for

12 the information again relating to their bona fide error defense.

13 Their response to our motion to compel was that they have a

14 pending motion to dismiss and they don't have to provide that

15 information.

16      THE COURT:  Well, obviously, that can't fly.  Just

17 because you have got a motion to dismiss, you still provide the

18 information.  What's next?

19      MR. BURKE:  They provided Caller ID data, the

20 information about -- well, they provided some information about

21 what Caller ID that will show up on the recipient's cell phone

22 when they receive a call.  But we have asked for Caller ID data

23 going back a full year along the class definition and for all the

24 class members.  They have provided two months of information.

25 And also, they designated the Caller ID numbers as confidential.

1     MR. PEDERSON:  Your Honor, we withdrew the

2  confidentiality designation with regard to the Caller ID data

3  over a month ago.  I sent an e-mail to plaintiff's counsel with

4  the subject Withdrawal of Confidentiality Designation.

5     The bona fide error defense that Mr. Burke first

6  mentioned, the claim alleges that TBI concealed the purpose of

7  its calls by using phone numbers other than the phone number on

8  its letterhead when it would call debtors and really --

9     THE COURT:   The idea.

10     MR. BURKE:  -- this confidential information may or may

11  not rebut that assertion.

12     MR. PEDERSON:  TBI only calls debtors from numbers that

13  belong to TBI.  So the numbers use our TBI phone numbers and when

14  the number appears on someone's screen, it doesn't mislead the

15  called party to believe that one other than TBI is being called.

16  But there really is no information or procedures related to

17  whether we are, you know, trying to make sure that our numbers

18  appear on Caller ID correctly because our numbers do appear on

19  Caller ID correctly.

20     MR. BURKE:  If I understood what counsel just said --

21     THE COURT:   You have got more than one number.

22     MR. PEDERSON:  We have more than one number.  There is

23  many.

24     MR. BURKE:  Including three cell phones that they pass

25  around from collector to collector.

1          MR. PEDERSON:  I believe, your Honor, that there are two

2   numbers associated with the dialer, there are two cell phones and

3   there is a land line.

4          THE COURT:  Okay.

5          MR. BURKE:  Well, if it's not confidential anymore, that

6   moots part of the issue, but if there were any other numbers

7   during the class period that were used, we request that those be

8   produced and also responsive to the interrogatory would be the

9   dates that those numbers were used.

10         THE COURT:  That should be easy to find out.

11         MR. PEDERSON:  Your Honor, I don't think it would be a

12  problem to produce the phone numbers that were used.

13         MR. BURKE:  Judge, we also asked for statistics having

14  to do with auto dialed and prerecorded messages.

15         THE COURT:  Do they keep the statistics?  If they keep

16  them, you have to produce it.

17         MR. PEDERSON:  Well, it's -- statistics is an undefined

18  term in this discovery request.  We know what calls are placed

19  through our dialing system.  Does he want the complete contents

20  of our database?

21         MR. BURKE:  We asked for statistics, studies and

22  reports.  I suspect that the autodialer spits out a report every

23  week or every month about how many calls were completed, how much

24  money was collected, that sort of information.

25         THE COURT:  Do you have that information?  Do you keep

1  that information?

2       MR. PEDERSON:  Your Honor we have information about all

3  calls that are placed.  We're not required --

4       THE COURT:   But do you accumulate statistics on the

5  number of calls that were made for a particular period?

6       MR. PEDERSON:  Your Honor, I don't know the answer to

7  that question.

8       THE COURT:  Well, if you have it, this is discovery,

9  this is discovery.

10       MR. BURKE:  I don't know how he doesn't know if we asked

11  for it.

12       MR. PEDERSON:  What bearing, though, do undefined

13  statistics on the questions raised by this case have, whether

14  consumers are being contacted on cell phones without their

15  consent, whether the phone calls are being placed?

16       THE COURT:  Well, one thing that you know, counsel,

17  when the plaintiff gets your client for deposition, these issues

18  do come up and they should be able to refer back to statistics

19  that they keep internally.  That's one thing that they can do it

20  for.  That's pretty simple.

21       MR. PEDERSON:  We have disclosed the number of

22  prerecorded message calls that were placed to the potential class

23  members during the class time period.  I'm not sure why

24  additional statistics are --

25       THE COURT:   If, for instance, your managers are deposed

[32]

1  and they testify that they made only, let's say, a small sample

2  of calls, number of calls per months and that they only collected

3  X amount of dollars, if the statistical data that they have shows

4  something different, they should be able to question about it.

5  That's all I'm saying.  It doesn't mean you're going to get that

6  into evidence, but certainly for depositional purposes they

7  should have all this stuff.  Before they take these depositions

8  they should have all this stuff in front of them.

9          MR. PEDERSON:  And can you give us some guidance, your

10 Honor, about what production of --

11         THE COURT:  You guys are lawyers.

12         MR. BURKE:  We just want to get document request No.

13 27.

14         THE COURT:  Okay.

15         MR. BURKE:  Judge, recordings, the auto, prerecorded

16 message that the defendant left for 7,000 people, it's been

17 produced.  It was produced I think last week.  It was designated

18 confidential.  We filed a motion last night saying that this is

19 obviously, has been placed, it has been recorded on third

20 parties' voicemails over 7,000 times.

21         THE COURT:  Is it designated as confidential on a

22 protective order?

23         MR. BURKE:  Yes.

24         THE COURT:  So somebody can see it.

25         MR. BURKE:  They actually recorded it on third parties'

[33]

1 voicemails 7,000 times at least.

2       MR. PEDERSON:  Your Honor, I offered to withdraw the

3 confidentiality designation.

4       THE COURT:  Okay.

5       MR. PEDERSON:  As long as plaintiff's counsel would

6 agree not to use the recording for purposes unrelated to this

7 lawsuit.  We don't want -- we simply asked that he would agree

8 not to, for example, upload it to an Internet blog or use it in

9 any connection other than in connection with this lawsuit.

10      THE COURT:  Or if he files another lawsuit later, you

11 want him to go back and reinvent the wheel, right?

12      MR. PEDERSON:  The purpose isn't to prevent him from

13 using the prerecorded message in another lawsuit, although I

14 can't imagine what relevance it would have in another lawsuit.

15 It's only to prevent it from being distributed for purposes

16 unrelated to this lawsuit.

17      MR. BURKE:  It's the violation itself, and it was left

18 on over 7,000 people's voice mail intentionally.  They recorded

19 it on third parties' recording devices, and now they're claiming

20 it's confidential.

21      THE COURT:  It's simply not confidential.  Okay, we are

22 going to strike the confidential designation for that.

23      Okay, what else?

24      MR. BURKE:  I think that's finally it, Judge.  We have

25 an assertion that other complaints and lawsuits have all been

1 disclosed and we are taking them at face value, although we don't

2 have an affidavit stating such.

3          THE COURT:   This is the only one, right?

4          MR. PEDERSON:  This is the only TCPA lawsuit, your

5 Honor.

6          THE COURT:   Okay.

7          MR. BURKE:   Insurance policy and reservation of rights

8 letter.  We have the insurance policy, we don't have the

9 reservation of rights letter.

10          THE COURT:   All right, you will get all that.

11          MR. BURKE:   Thank you, Judge.

12          THE COURT:   Set it for status.  Give them 30 days to

13 turn all this stuff over.

14          THE CLERK:  By December 14th.

15          THE COURT:   I'll grant your motion in its entirety as

16 set forth during oral argument.  The discovery to be turned over

17 by December what, 17th?

18          THE CLERK:  December 14th.

19          THE COURT:   December 14th, and don't say anything about

20 fees and costs because he didn't ask for them.  My mistake there.

21          MR. BURKE:   Maybe it was my mistake.

22          THE COURT:   No.  Okay, all right, we will see you then.

23          MR. BURKE:   Thank you, your Honor.

24          THE COURT:   Is that the date we set for another status?

25          THE CLERK:  We will set it for December 14th at 9 a.m.

1          MR. BURKE:    Thank you.

2          THE COURT:    All right.

3          *                    *                    *

4     I certify that the above is a true and correct

5     transcript of proceedings had in the above matter.

6                    /s/ Lois A. LaCorte

7

8     _____    _____
                 Lois A. LaCorte                        Date
9            Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Appendix 2

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | Susan E. Cox |
|---|---|---|---|
| **CASE NUMBER** | 10 C 1846 | **DATE** | 11/9/2010 |
| **CASE TITLE** | Joanne F. Balbarin  vs. North Star Capital Acquisition, LLC, et al | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion to compel [101] is granted.  Defendant is ordered to provide information responsive to the discovery requests on or before 11/24/10.

■[ For further details see text below.]

Docketing to mail notices.
*Copy to judge/magistrate judge.

---

## STATEMENT

In this putative class action plaintiff alleges a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, claiming that defendant's alleged use of an automatic dialing system with an artificial or pre-recorded voice that placed multiple calls to her cell phone without her express prior consent.  Defendant has alleged in an affirmative defense that plaintiff (and unnamed class members) have consented to these calls.  Plaintiff seeks to compel responses to Interrogatory No. 9 and Request to Produce No. 7.  Both of these discovery requests seek information which supports defendant's asserted "prior express consent" defense.

In an agreement, which the Court finds highly constructive in this kind of a case, the parties agreed to limit defendant's response to a fifty person random sample of the putative class.  However, defendant continues to object to this discovery.  These objections are overruled.

Defendant's primary objection is that plaintiff has not yet obtained class certification and that it should not be forced to respond to burdensome class-wide discovery unless and until she does.  This objection lacks merit for a number of reasons.  First, the district judge in this case did not bifurcate discovery here.  All discovery is ordered closed on February 9, 2011.  Further, this discovery is hardly class-wide, but limited to fifty possible class members.  We are entirely persuaded by the opinion of our colleague, Judge Nolan, that a defendant in such an action must produce documents and information regarding its prior express defense.  *Donnelly v. NCO Financial Systems, Inc.* 263 F.R.D. 500, 504 (N.D. Ill. 2009).  We note that the court in that case ordered such discovery on a class-wide basis and found that the benefit of the discovery outweighed the burden and expense.  *Id.*  In this case, plaintiff only has requested this information for a random fifty person sample.

We also find unavailing defendant's argument that it does not possess these documents itself, but will have to obtain them at great expense from third parties.  If defendant does not have documents or other information which substantiates the defense it is difficult to fathom why it interposed that defense in the first place.  If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.

**STATEMENT**

Defendant is ordered to provide information responsive to the discovery requests on or before November 24, 2010. Plaintiff's motion to compel is, thus, granted [dkt 101].

# Appendix 3

1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
2                       EASTERN DIVISION

3   NICHOLAS MARTIN, on behalf      )
    of himself and others          ) Docket No. 10 C 3494
4   similarly situated,            )
                                   ) Chicago, Illinois
5                    Plaintiff,    ) December 7, 2010
                                   ) 9:30 a.m.
6          v                       )
                                   )
7   CCH, Incorporated,             )
                                   )
8                    Defendant     )
                                   )
9

10               TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE MARTIN C. ASHMAN
11

12  PRESENT:

13  For the Plaintiff:      ALEXANDER H. BURKE
                            Burke Law Offices, LLC
14                          155 North Michigan Avenue
                            Suite 9020
15                          Chicago, Illinois  60601

16  For the Defendant:      SUSAN E. GROH
                            77 West Wacker Drive
17                          Suite 4100
                            Chicago, Illinois  60601

18

19
    (TRANSCRIBED FROM DIGITAL RECORDING.)
20

21
    Court Reporter:         Lois A. LaCorte
22                          219 South Dearborn  Room 1918
                            Chicago, Illinois 60604
23                          (312) 435-5558

24

25

1          THE CLERK:  10 C 3494, Martin v CCH.

2          MR. BURKE:  Good morning, Judge, Alexander Burke for the

3    plaintiff.

4          MS. GROH:  Good morning, your Honor, Susan Groh on

5    behalf of the defendant CCH.

6          THE COURT:  Good morning.  All right, we have

7    plaintiff's motion to compel.

8          MR. BURKE:  That's right, Judge.  We issued discovery

9    about a month ago and I have gotten almost nothing.  We tried

10   to work through this with counsel, several long telephone

11   conversations, long e-mails, still have nothing, so we moved

12   to compel.  There are five categories of requests that --

13         THE COURT:  Let's take them one by one.

14         MR. BURKE:  I would like to start with Section C, which

15   has to do with the dialer and the prerecorded messages and the

16   procedures that the defendant has to make the auto dialed and

17   prerecorded calls.

18         Probably the most fundamental request -- this is on page

19   10 of 15 of our motion -- probably the most fundamental

20   request is interrogatory 5, which asks the defendant to

21   explain their policies, practices, and procedures regarding

22   the use of predictive dialers and prerecorded messages going

23   back to when they began using such.  The defendant provided no

24   substantive response to this interrogatory.

25         MS. GROH:  Judge, if I may, plaintiff served extensive

1  discovery requests on the defendant before we even filed our

2  answer in this case.  As a result, plaintiff's discovery is

3  overbroad, unduly burdensome, and irrelevant.  To a large

4  extent --

5       THE COURT:   Would you speak a little louder.

6       MS. GROH:   Sure.

7       THE COURT:   And speak into the mike.

8       MS. GROH:   Sure.

9       THE COURT:   Thank you.

10      MS. GROH:   As I was saying, Judge, plaintiffs served

11  extensive discovery requests on defendant before we even had a

12  chance to answer the complaint.  As a result, most of this

13  discovery is extremely broad and irrelevant.

14      Plaintiff requested a Rule 37 conference, which we spent

15  several hours on the phone discussing various issues.  In

16  those conversations we provided plaintiff with detailed

17  information about how our calling campaigns work and took him

18  through the steps of that.  As a result of these

19  conversations, plaintiff has served us with a second set of

20  discovery which are much more narrowed and focused than his

21  first set of discovery.

22      THE COURT:   Is it on the same subject?

23      MS. GROH:   Largely, yes, your Honor.

24      MR. BURKE:   Some of it is on the same subject, but I

25  think it's two interrogatories and three document requests or

1   something.  I mean, I think --

2       THE COURT:  Do you have another discovery request that

3   is on this subject?

4       MS. GROH:  Yes, your Honor.

5       THE COURT:  I'm asking him.

6       MR. BURKE:  I think that it touches on some of the

7   subjects that are requested in interrogatory 5, but I don't

8   think that it nullifies interrogatory 5.  I mean, I think this

9   is --

10      THE COURT:  How many times do you want them to answer it

11  though?

12      MR. BURKE:  If I get a full response to 5, I'll withdraw

13  the second set of discovery.

14      THE COURT:  Well, but what she is saying is if you come

15  up with the second set, the answer to the second set will

16  suffice for this.

17      What does your second set of interrogatories, what does

18  it ask about this subject?

19      MR. BURKE:  I don't have it with me, Judge.

20      THE COURT:  Well, do you have it with you?

21      MS. GROH:  I do have it with me, your Honor.

22      THE COURT:  All right.  Let's hear what it says.

23      MS. GROH:  As an example, as plaintiff is indicating,

24  his request relating to the dialer, he asks for every single

25  document that relates in any way to our telephone equipment.

1    In our conversations --

2        THE COURT:    This one says for you to identify and

3    explain the written and unwritten policies, practices, et

4    cetera.

5        MS. GROH:    Sure, and in our conversations pursuant to

6    Rule 37 plaintiff clarified that he was looking for the dialer

7    manuals.  In his second set of requests he specifically

8    requests the dialer manuals, which we are happy to produce

9    when they are due on December 20th, which is two weeks from

10   today.

11       THE COURT:    Do you agree that that's what you wanted

12   here?

13       MR. BURKE:    I mean, Judge, I issued that second set of

14   discovery to appease the defendant.  I mean, we had a long

15   discussion about whether document request 19 that's on the

16   same page as interrogatory 5 sufficiently asks for telephone

17   manuals.  It asks for all manuals, communications and other

18   documents related to telephony, hardware, software and other

19   telephone equipment.  I mean, these requests are reasonable.

20   I'm asking him -- because these are the most basic requests.

21       THE COURT:    This is the point that's being made.  The

22   point that's being made is you have got a more restrictive

23   apparently interrogatory or document request on the same

24   subject and that, as a result of your conference, that was

25   something you agreed to that that's what you wanted.  So why

1   do you want this?

2       MR. BURKE:  No, Judge, I didn't agree that the second set

3   of discovery was going to supersede the first set of

4   discovery.  I mean, when I issued those requests I was still

5   seeking responses to these requests for which I have no

6   responses.

7       I'm willing at this point to withdraw the second set of

8   discovery and seek full responses to this discovery.

9       MS. GROH:   Judge, I would suggest that we wait two weeks

10  and let us respond to the second set of discovery and if

11  plaintiff still has some issue with our responses, then he can

12  renotice this motion, but at this time I believe it's

13  premature to address these issues when our discovery isn't due

14  for two weeks.

15      MR. BURKE:  This discovery has been due for three months.

16  And I have been working for three months --

17      THE COURT:   He has just withdrawn his second set, so

18  your argument with regard to the second -- the second set no

19  longer exists.  It is withdrawn as of record.

20      All right.  Now, why can't you answer Interrogatory

21  No. 5?

22      MS. GROH:   Interrogatory No. 5 is overly broad and

23  unduly burdensome, and that's the basis of our --

24      THE COURT:   Explain the written policies in document

25  request No. 5, come up with all the documents, why can't you

1    do that?

2    MS. GROH: As we objected, your Honor, this request is

3    asking for every single document. It's not tailored at all in

4    any way to the circumstances of this case. As we have

5    identified to the plaintiff, we don't have any class

6    information so his claim is based on one phone call that was

7    made to the plaintiff. Based on that, this is completely

8    overbroad.

9    THE COURT: Well, this is a putative class action, isn't

10    it? It's a class action or an attempt at a class action. So

11    you're saying this is not relevant? What is your answer?

12    MS. GROH: Our answer is that it's overbroad. He is

13    asking for every single policy --

14    THE COURT: I don't think it's overbroad at all. The

15    motion to compel interrogatory No. 5 and document request No.

16    5 is granted. Okay, next.

17    MR. BURKE: Let's see, document request 3, a copy of the

18    recordings that the defendant used with its dialer to make

19    these unsolicited telephone calls.

20    MS. GROH: I'm sorry, what number was that?

21    MR. BURKE: Document request 3. Just by matter of

22    background, your Honor, the TCPA portion of this case has to

23    do with prerecorded telephone solicitations to purchase or to

24    sell tax software.

25    THE COURT: Yes, I read the complaint.

1      MR. BURKE:  Okay.

2      MS. GROH:  Our response to document request No. 3 in our

3  Rule 37 conference with plaintiff is that we have no recording

4  of this phone call.

5      THE COURT:  Well, did you answer to that effect?

6      MS. GROH:  We indicated to plaintiff that we would

7  supplement our answer to that effect.

8      MR. BURKE:  Judge, I suspect that we have a little bit --

9  and maybe I'm wrong, but a little bit of sharpshooting going

10  on here.  What counsel just said is they have no recording of

11  the telephone call to plaintiff, but what we're asking for

12  here is a copy of the recordings that they used with their

13  dialer during the class period.

14      MS. GROH:  To the plaintiff's phone number.

15      MR. BURKE:  Or any other person in the class.

16      THE COURT:  It says and for the call to any person

17  responsive to interrogatory No. 3.

18      MR. BURKE:  Which is the class list for the

19  interrogatory.

20      THE COURT:  So that's a recording more than just to the

21  plaintiff's telephone number.

22      MS. GROH:  We indicated to plaintiff that we would agree

23  to supplement this.

24      THE COURT:  So you agree that you will provide this?

25      MS. GROH:  My understanding is that we have no data on

1   this, so we would supplement our response to state that.

2       THE COURT:   Then what do you mean you're going to

3   supplement?

4       MS. GROH:   We would supplement our response to the

5   interrogatory -- to the request to produce to state that there

6   is no copy of any recordings responsive to this request.

7       THE COURT:   Well, if there is no -- it's hard to believe

8   that there is no copy.  So I think what you need to do is also

9   provide, have somebody from the company provide what search

10  they made, what happened to any recordings, when it happened.

11  You have got to get into the detail of the search and the

12  detail of whatever happened to these recordings or this

13  recording.

14      MR. BURKE:   I suspect that where they're coming from is

15  they're going to say "Well, we don't know which recording we

16  used with which class member."  And I think that the document

17  request -- or maybe they just destroyed the recording, I'm not

18  sure.

19      THE COURT:   I don't know, and there is no point in your

20  speculating or the court speculating.  I want a detailed

21  response as to what happened to any recordings, when it

22  happened, under whose authority it happened, what the search

23  consisted of, and any other detail with regard to why these

24  recordings -- why you don't have these recordings at this

25  time.

1     MS. GROH:   Sure, Judge.

2     THE COURT:   Next.

3     MR. BURKE:   Judge, skipping over 13 because I think that

4 it's included in document request 15.

5     THE COURT:   Okay.

6     MR. BURKE:   All documents, contracts, e-mails, or

7 agreements concerning use of your predictive dialer for

8 recorded messages.

9     THE COURT:   E-mails or agreements.  I don't even

10 understand what you mean there.  What agreements are you

11 referring to?

12     MR. BURKE:   Well --

13     THE COURT:   You buy an autodialer and it dials.

14     MR. BURKE:   Well, when we filed the case I wasn't sure if

15 they did the dialing in-house or out of house, so we have

16 learned at least through counsel's representation to Judge

17 Dow, not through these discovery responses, that the defendant

18 has an in-house dialer.  So you know, if there are

19 communications with -- pardon me, contracts, maybe there is a

20 contract for purchase of the dialer or maintenance of the

21 dialer.  Perhaps if there is a third-party that's --

22     THE COURT:   What's the relevance of that?

23     MR. BURKE:   Well, say, for example, they have a

24 third-party vendor maintain the dialer and that third-party

25 vendor has access to or has downloaded data regarding which

1   calls it made to whom at what time, the very data that the

2   defendant says does not exist, that would be -- the identity

3   of that third-party would be revealed in the response to

4   document request 15.

5        Similarly, I suspect, although counsel says it's not

6   true, that when sales associates wanted to do a dialer

7   campaign, they e-mailed somebody saying "Hey, I want to do

8   this dialer campaign, you know, please, have the dialer call

9   this set of people from the database," that information would

10  be probably in an e-mail or a memo.

11       Defendant tells me that the sales agents walked over to

12  this guy Brian Holbrook at the office in Atlanta and verbally

13  asked for a dialer campaign to be done and the dialer campaign

14  was done without any, any documentation at all.

15       MS. GROH:   To that, Judge, as we told plaintiff in our

16  Rule 37 conference, mostly what was done was, you know, in

17  sales everything has to be prompt and fast.  It was mostly

18  face-to-face contact.  There may have been some e-mails that

19  were sent.  However, the information that was contained in the

20  e-mails was contained in scripts that were run against the

21  database, which we have, we have copies of the script and

22  we're happy to provide that to plaintiff's counsel.  They're

23  more inclusive and more responsive than the e-mails

24  themselves, so we feel that those would be irrelevant.

25       THE COURT:   I think document request 15 is not too broad

1    and I think it ought to be answered.  It certainly is relevant

2    as to what was told to who with regard to doing these dialings

3    and, of course, what the script was.  So all documents -- I'm

4    not so sure that the purchase of a dialing system, I don't

5    think you need to provide any contract with regard to that,

6    but any other use of the dialing system, documents, contracts,

7    e-mails or agreements, that certainly is relevant and not very

8    broad at all.  So the motion to compel document request 15 is

9    granted.  What's next?

10           MR. BURKE:  Skipping down to 19, please.

11           THE COURT:   Okay.

12           MR. BURKE:  Manuals, communications, other documents

13   relating to the telephony hardware, software and other

14   telephone equipment.  What I understand --

15           THE COURT:   Is that a -- telephony, is that on purpose?

16           MR. BURKE:  Yes, I think that's a word.

17           THE COURT:   Is it really a word?

18           MR. BURKE:  Telephony.

19           THE COURT:   Telephony.

20           MR. BURKE:  Yes.

21           THE COURT:   I'll go look it up.

22           MR. BURKE:  What we are looking for here, Judge, is --

23   well, based on Rule 37 talks we understand that there is some

24   database from which the telephone numbers that the dialer

25   called is taken.  We understand that there is a dialer and

1   that there is some process by which the -- that the sales

2   agents asked Brian Holbrook to make these calls.  Of course,we

3   don't have the full responses to interrogatory 5 so I don't

4   have anything sworn that says that this is what happens, but

5   this is what has been explained to me.

6        In order to hire an expert, which I think I'm going to

7   have to do in this case to help me sort through this, through

8   this E discovery, I need to know what type of telephones they

9   have, what kind of dialer they have, what kind of database

10  this is that operates with the dialer to make these calls, and

11  how these things interact.  So that's the primary basis for

12  the document request.

13       MS. GROH:   If I may respond to that, your Honor, just,

14  as plaintiffs describe in detail, that's the type of discovery

15  request that we could respond to, but in this discovery

16  request where he is asking for all manuals, communications and

17  other documents related to all of our telephone software and

18  hardware, he is not limiting it to the dialer in issue.  It's

19  all --

20       THE COURT:   The motion to compel is granted with regard

21  to the automatic dialing system rather than all telephones.

22       MR. BURKE:  So the telephone --

23       THE COURT:   It excludes regular telephone calls.

24       MR. BURKE:  Okay, we will work with that.  I think that

25  there may be overlap, so there --

1          THE COURT:    Well, yes, certainly there may be overlap,

2     but you're not entitled to all of their information regarding

3     their regular telephone system.

4          MR. BURKE:   I don't care about that stuff.

5          THE COURT:    Just the auto dialling.  So the motion to

6     compel is granted to that limited extent only.  Next.

7          MR. BURKE:    Going back to section 8 please, page 6.

8          THE COURT:    Yes.

9          MR. BURKE:    These materials have to do with the class

10    list and documents and data concerning the class members.

11         THE COURT:    Are you talking about interrogatory 3 or

12    what?

13         MR. BURKE:    Interrogatory 3 -- beginning with

14    interrogatory 3, your Honor.

15         THE COURT:    All right.  I'll read it.

16         (Pause)

17         THE COURT:    Counsel, why don't you respond.

18         MS. GROH:    As we have indicated to plaintiff's

19    counsel --

20         THE COURT:    Pardon?

21         MS. GROH:    As we have indicated to plaintiff's counsel

22    in our Rule 37 conversations, we do not have any responsive

23    class data.

24         THE COURT:    You don't have the intended recipient, you

25    don't have communications attempted and completed, from the

1  recipients of these auto dialers?

2      MS. GROH:   No, your Honor, there is no business reason

3  for us to keep that data.  So they didn't keep it.  So we have

4  no records of phone calls made within this class period.

5      THE COURT:   How about the people who responded?  Didn't

6  somebody respond and buy your client's material?

7      MS. GROH:   I can't say.

8      THE COURT:   They were auto dialed and they responded.

9  You can't tell me you don't know them.

10     MS. GROH:   The records that we have don't, don't

11 indicate that one way or the other.  We don't have any records

12 to show the calls that were made.

13     MR. BURKE:   Furthermore, I suspect that they have a Do

14 Not Call list subject to the federal Do Not Call regulations.

15 Most states have similar Do Not Call regulations.

16     THE COURT:   But you're asking here for the intended

17 recipient and the communications to and from the person and

18 where they got the personal information, including the e-mail

19 and telephone number for these people.

20     MR. BURKE:   Yes.

21     THE COURT:   You don't have any documents with regard to

22 that?

23     MS. GROH:   I'm telling you that we can't, we can't

24 identify what phone calls were made from the dialer and we

25 have indicated this to plaintiff's counsel and we are willing

1    to supplement --

2        THE COURT:   So you could be dialing these people over

3    and over and over again, right, since you don't know who you

4    dialed in the first place or the second place.

5        MS. GROH:   That very well could be because that's not

6    information that we retain.

7        THE COURT:   That's very difficult to believe.  I want a

8    detailed exposition of how this works and why you do not have

9    the intended recipient of auto dialing.  You didn't dial

10   everybody in these states, did you?  It was limited in some

11   fashion.  Where did you get that limitation from?  You didn't

12   dial everybody, did you?

13       MS. GROH:   No, we had a database that had prospective

14   customers, existing customers.

15       THE COURT:   So you do have a list of prospective

16   customers.  That's the source.

17       MS. GROH:   But we do not have information of who on that

18   list were called.

19       MR. BURKE:   But they do have these database queries.

20       MS. GROH:   Yes, we have the database queries and we have

21   a database but even if you cross reference them it won't

22   indicate whether a phone call was made to that person.

23       THE COURT:   So once again, I say so that means you could

24   dial the same person twice or three times or ten times.

25       MS. GROH:   That very well could be.

1      THE COURT:   All right.  I want the database and I want

2   you to, and to produce the database and a detailed exposition

3   of how this works.

4      MR. BURKE:   I suspect that there are backup tapes or

5   something about the database that might help us recreate what

6   it looked like when these calls were queried.

7      MS. GROH:   We have run this down from two different

8   angles, your Honor.  We have looked at what was preserved and

9   then we have looked at what can be recreated, and as I have

10  said before, what was preserved is nothing, there is no

11  business reason for them to keep this data.

12     THE COURT:   Well, you mean there was some of this

13  information and it wasn't preserved?

14     MS. GROH:   There were calls that were made to --

15     THE COURT:   There were calls that were made and the

16  second after the call was made you didn't know to whom it was

17  made?

18     MS. GROH:   The way the dialer worked is it was

19  refreshed.  If it was refreshed, then the numbers that were

20  loaded in the dialer were deleted, all the records were

21  deleted, or if it was not refreshed, after 30 days it just

22  overwrote over itself.

23     So there is -- there is no compelling business reason for

24  us to preserve any of the data from the dialer.  What we have

25  done is, you know, try to figure out what was preserved, what

1  could be on the tapes, which is nothing, and then we have

2  tried to recreate what numbers were called based on what we

3  have.  There are a number of deficiencies with that process,

4  though, and like I said before, you can run the scripts

5  against the current database that we have.  However, we don't

6  have a historic database to indicate what calls -- what was in

7  the database at the time that these calls were made within the

8  class period.

9      And although we have the scripts, if you cross reference

10  the scripts against our current database, that still doesn't

11  show whether or not a call was made, it just shows that a list

12  was made based on that information.

13      THE COURT:  Well, take us through the list, the list

14  from which everything was made and the entire process --

15      MS. GROH:  We would be happy to do that --

16      THE COURT:  -- because it's difficult to believe that a

17  company would not keep track of who they called.  It's very

18  difficult to believe.

19      MS. GROH:  I understand that, but as -- the way this

20  business worked is they kept track of their customers, their

21  existing customers was very important to them, but prospective

22  customers were not as significant for them to keep track of.

23  So that wasn't something --

24      THE COURT:  But you would think that a company would

25  then eliminate them so that they wouldn't bother -- they

1  wouldn't call them again, they wouldn't -- they wouldn't have

2  any expense with regard to promoting those prospects.

3      MS. GROH:   And that's something that did happen within

4  the database.  The database itself was constantly changing.

5  People were kicked out, people were added in, depending on --

6      THE COURT:   But the next day suppose you told the

7  database or you told the machine do 10,000 others.  Did the

8  machine know who it did the day before?

9      MS. GROH:   My understanding is no, your Honor, but if a

10  sales person had reached out to an individual who said "Please

11  don't call meany more," it would have kicked that person out

12  of the database.  So that individual might not be in the

13  database anymore is my understanding of how it worked.  We are

14  happy to detail this in our supplemental response to this

15  interrogatory.

16      THE COURT:   Well, all right.  Make a very detailed

17  response as to how it works and we will take it from there.

18  Next.

19      MR. BURKE:   I suspect that the discussion that we just

20  had would be the same as to document request 37 and document

21  request 12, both on Page 6.  Again, we are trying to figure

22  out who they called.

23      THE COURT:   Let me ask you, the automatic dialer, does

24  the telephone company provide these for nothing?  Do you get

25  billed by a telephone company?

1       MS. GROH:   It's a phone record, so we --

2       THE COURT:   So you get billed.  So the telephone company

3  has copies of who you called, do they not?

4       MS. GROH:   We have run down that angle as well, your

5  Honor.  The way it worked is we had an internal switch on our,

6  at our company so that outbound calls all came from the same

7  number, the same three numbers, and there is no way to tell if

8  the call was made from the dialer or if the call was made from

9  a salesperson's desk.

10      THE COURT:   Well, then let's include all the calls.

11  Let's include all the calls.

12      MS. GROH:   But the fact that --

13      THE COURT:   I would suspect that the regular telephone

14  calls made by people are way less than the automatic dialing,

15  right?  They would have to be.

16      MS. GROH:   I don't know if we can say that for certain,

17  Judge, but there is no way for us to tell which calls were

18  made from, you know, a salesperson to his wife or made from --

19      THE COURT:   Well, maybe there is no way to tell at the

20  beginning, but maybe some further investigation will be able

21  to figure that out.  All the telephone calls under these

22  circumstances, you provide this information on all the

23  telephone company -- all the telephone calls out of this

24  company.  And if that is too inclusive, then such is life.

25  But it would include everyone who was called.

1   MS. GROH:  In addition to --

2   THE COURT:  Well, that's what these interrogatories are

3 looking for is who was called, and who was called is in that

4 list.

5   MS. GROH:  Well, it should be narrowed to who was called

6 from the dialer.

7   THE COURT:  Well, that would be nice, but you're saying

8 you can't do that.  Then give us the entire list and let him

9 worry about who was called and who wasn't called.  So the

10 motion with regard to document request 12 is granted.

11   Okay, next.

12   MR. BURKE:  Page 7, Judge, affirmative defenses.  I would

13 like to skip to 11 because I think 4 is subsumed in 11, which

14 is an interrogatory that asks for the facts and law that

15 supports their affirmative defenses.

16   THE COURT:  Counsel.

17   MS. GROH:  In our Rule 37 conferences with the plaintiff

18 we told him that our main affirmative defense or defense at

19 this time is that we got these phone numbers, we got the

20 plaintiff's phone number from the IRS.

21   THE COURT:  How do you get the phone numbers from the

22 IRS?  I saw that in these papers.  I'm interested.  How do you

23 get telephone numbers from the IRS?

24   MS. GROH:  It was pursuant to a FOIA request.

25   THE COURT:  Pardon?

1      MS. GROH:    It was pursuant to a FOIA request to the IRS.

2      THE COURT:    You mean you can get telephone numbers from

3  the IRS, telephone numbers of taxpayers so you can call them

4  from the IRS?

5      MS. GROH:    Correct, your Honor.  Our business is selling

6  tax software to businesses.

7      THE COURT:    Yes.

8      MS. GROH:    We got a list of businesses that filed a

9  certain number of tax returns on behalf of individuals.  So

10  our marketing was towards businesses.

11      THE COURT:    And you get that from the IRS.  Does that

12  mean that these people consented?

13      MS. GROH:    Our argument is that these are businesses and

14  not individuals.

15      THE COURT:    And businesses have consented that their

16  income tax return information, some information from the

17  income tax return can be disseminated by the Internal Revenue

18  Service?

19      MS. GROH:    Our position is that businesses are not

20  covered by the TCPA or the Do Not Call list, that by holding

21  out a phone number as your business, you're consenting for the

22  world to call you in that capacity.

23      THE COURT:    Maybe they're not covered by the Do Not Call

24  list.  What I'm talking about is if you're running a law firm,

25  that's a business, okay?  You file an income tax return.  Are

1    you consenting that your telephone number can be provided to

2    John Fisher here by filing an income tax return?

3         MS. GROH:    I think the issue that we are arguing is a

4    little different than that, but that would be subject to the

5    FOIA document request, which is something that is exactly what

6    can be done.

7         THE COURT:    I'm trying to understand how this works so I

8    can rule fairly on these discovery requests and I still can't

9    understand, it's beyond me that the IRS would provide

10   telephone numbers of its taxpayers, whether they're corporate

11   or individual, to anybody.

12        MS. GROH:    That's exactly what happens and that's what

13   happened here.  But our defense is a little bit different.

14   It's that these are businesses that were holding themselves

15   out under these numbers and those are the numbers we called,

16   and as a result of that --

17        THE COURT:    And did they consent?

18        MS. GROH:    We believe they did consent by using these

19   numbers as their business numbers, which would not be

20   covered --

21        THE COURT:    They consented by filing the income tax

22   return which contained their telephone number?

23        MS. GROH:    Holding themselves out as a business.  We

24   believe that you can contact businesses in that capacity,

25   which would not be covered by the TCPA or the Do Not Call

1　list.

2　　　THE COURT:　Holding -- once again, your law firm is a

3　business.　You file an income tax return with the government.

4　Are you by so doing -- you hold yourself out as a business,

5　are you by so doing consenting that the IRS provide or

6　disclose your telephone number?

7　　　MS. GROH:　Well, the IRS is a separate entity.　We would

8　say --

9　　　THE COURT:　Yes, I know it's a separate entity.

10　　　MS. GROH:　-- you are consenting.

11　　　THE COURT:　I know it's a separate entity, but I'm

12　talking about the consent part of the taxpayer.　Have you by

13　so doing consented?

14　　　MS. GROH:　We would say yes, your Honor.

15　　　THE COURT:　All right.

16　　　MR. BURKE:　There are six affirmative defenses, Judge.

17　We are asking for them to explain them.

18　　　THE COURT:　All right.　Well, you talk about affirmative

19　defenses that haven't yet been made.　I don't think they need

20　to explain those.

21　　　MR. BURKE:　Well, not now.

22　　　THE COURT:　No.　So why can't you respond to that?

23　　　MS. GROH:　We indicated to plaintiff's counsel that we

24　would supplement our response to state that our defense is

25　that the plaintiff in this case --

1    THE COURT:   So you will respond to it?

2    MS. GROH:   Yes.

3    THE COURT:   So the motion to compel with regard to

4    Interrogatory No. 4 is granted in that any objections thereto

5    are being waived.  The next one.

6    MS. GROH:   If I could just clarify one point, your

7    Honor, we indicated that we would supplement to state the

8    defense I just explained, that the plaintiff consented by

9    holding out this number as its business number.  Beyond that,

10   our investigation continues and at this time we can't identify

11   every affirmative defense or every defense that we may have,

12   every argument --

13   THE COURT:   No, no, you don't have to explain any

14   affirmative defenses that you have not made.

15   MS. GROH:  Okay.  When you said, waiver, Judge, I just

16   wanted to clarify that we weren't waiving --

17   THE COURT:   Only affirmative defenses that are stated in

18   your answer, in your pleading.

19   Okay, next.  Anything else?

20   MR. BURKE:   Document request 7, documents that concern

21   any person whose cell phone was called using the dialer, could

22   be persons who were within the class as defined.

23   MS. GROH:   And again, your Honor, we don't have any

24   class information, and as far as the --

25   THE COURT:   Just a moment, just a moment.  Before you

1    respond, let me read it.

2        (Pause)

3        THE COURT:  Okay, your response is?

4        MS. GROH:   As we stated before, we have no information

5    about the class, what phone calls were made to these class

6    members.  As far as the prior express consent, it's the same

7    defense that we stated before.

8        THE COURT:   In other words, what you're saying is you

9    have no express consent from anybody, right?

10       MS. GROH:   We are saying that we don't know who was

11   called so there is no way for us to say --

12       THE COURT:   Go through your files of all your customers

13   and tell us who made an express consent, "express" meaning

14   they consented to you, they sent you a letter saying "It's

15   okay for you to call me."

16       MS. GROH:   And as I have explained before, we don't have

17   any class data.  We can't indicate what calls were made to

18   individuals and there is no way for us to track that down.

19       THE COURT:   You can indicate as to those people who you

20   had contact with who responded to the autodialer.

21       MS. GROH:  And we don't have a record of that

22   information.  But we do have the same --

23       THE COURT:   Now, wait a minute, wait.  You also don't

24   have a record -- the autodialer calls John Jones Company.

25   John Jones Company calls you and says "I'm interested in what

1    the autodialer said."  There is no follow-up, there is no

2    record?

3        MS. GROH:   There is no way for us to track that down.

4        THE COURT:   Why not?  Can't you look in a file?  A file

5    was created when somebody called and affirmatively responded

6    to the promotion.  You can't tell me you have no records of

7    that.  That's how you make your living.

8        MS. GROH:   If someone called us in response to a

9    promotion, then there was no auto dial call.  Maybe I'm not

10   following you, Judge.

11       THE COURT:   If somebody called you and said "I was

12   called by your company, I'm interested," you have a record of

13   that, don't you?

14       MS. GROH:   If that prospective customer became a

15   customer, then that entry would be in our --

16       THE COURT:   Either became a customer or had

17   conversations regarding getting to be a customer.

18       MS. GROH:   As far as tracking how that occurred --

19       THE COURT:   No, that isn't what this asks.  What this

20   asks is any documents with any of these people that showed

21   express consent to call them.  I think that's what it asks

22   for, right?

23       MR. BURKE:  Yes.

24       THE COURT:   What you're saying is you have no such

25   documents?

1    MS. GROH:    Correct.

2    THE COURT:    Okay.  Well, why don't you answer that way.

3    If that's the truth, then answer that way.

4    MS. GROH:    And we have indicated to plaintiff that we

5    would supplement these responses accordingly.

6    MR. BURKE:    No documents supporting the affirmative

7    defenses, fine with us.

8    THE COURT:    Okay, what else?

9    MR. BURKE:    Page 11, Judge, information concerning the

10   plaintiff.  The defendant has refused to provide us with

11   information that it has regarding the plaintiff.  We have

12   asked for that stuff.  They're saying we don't get it.

13   MS. GROH:    We identified one document that we have that

14   has the plaintiff's name, his address, his phone number, the

15   name of his business.  Before we produce this to the

16   plaintiff, we would like to have it covered by the protective

17   order.

18   THE COURT:    What protective order?

19   MS. GROH:    We have been working on getting a protective

20   order entered in this case.

21   THE COURT:    What do you need a protective order for

22   plaintiff's information?  Plaintiff waives that, doesn't

23   plaintiff?

24   MR. BURKE:    As long as they don't put it in the public

25   record for discovery purposes, absolutely.

1    MS. GROH:   Out of an excess of caution, the plaintiff is

2    suing --

3    THE COURT:   Out of an excess -- it's excessive caution,

4    not an excess of caution.  You have -- if I tell you "Look,

5    this is my telephone number, you can tell John Jones my phone

6    number and you can tell John Jones everything you know about

7    me," you need a protective order after that if the party says

8    do it?

9    MS. GROH:   In this case the plaintiff is suing us for

10    violation of his privacy.  Out of an excess of caution it

11    would be our preference to designate that document as

12    confidential.

13    THE COURT:   The motion to compel on that is granted.

14    You give them all information that you have.  You can work out

15    protective orders generally, but with regard to plaintiff's

16    information that plaintiff is requesting, that's a ridiculous

17    position.  It is ridiculous.  The plaintiff wants you to tell

18    the plaintiff what information you have on the plaintiff.

19    MS. GROH:   Okay.

20    THE COURT:   And you have an excess of caution --

21    baloney.  Next.

22    MR. BURKE:   Page 12, Judge, materials bearing on

23    willfulness.  Treble damages are available if we can prove

24    that the violation is willful.  These requests are designed to

25    show that the defendant knew about the TCPA and made these

1   calls anyway.

2        THE COURT:   Complaints, written complaints, lawsuits.

3        MS. GROH:   We object to this, your Honor.

4        THE COURT:   Pardon?

5        MS. GROH:   We object to this.  Any complaint that was

6   filed against defendant does not have any bearing on this

7   case, it would never be admissible in court.  And it's -- it's

8   just plainly irrelevant and overbroad.

9        THE COURT:   I disagree.  If the complaints are the same

10  or similar, that somebody was called without their permission,

11  that shows knowledge, that shows intent, that shows or may

12  show -- all of these things may tend to show willfulness.

13  Willfulness has something to do with punitive damages.

14       MS. GROH:   Your Honor, if I may, the, just the fact that

15  a plaintiff lodged an allegation against the defendant would

16  not bear on willfulness --

17       THE COURT:   Oh, no, it's not --

18       MS. GROH:   That case could be dismissed, that case could

19  have been subject to Rule 11 sanctions.

20       THE COURT:   That's very true, that's very true, but we

21  are not talking about admissibility into evidence right now,

22  we are talking about discovery.  How is he to know what may be

23  admissible and what may not be admissible unless he has the

24  information?

25       MS. GROH:   I would again say that this is overbroad and

1  perhaps a judgment that was entered against the defendant in a

2  circumstance similar to this could be relevant to willfulness,

3  but as far as every allegation --

4      THE COURT:   Suppose you settled 10,000 of these

5  complaints individually.  You mean to say -- so there is no

6  judgment.  Isn't that potentially relevant?

7      MS. GROH:   We would say no, your Honor.

8      THE COURT:   I disagree with you.  I think it's

9  potentially relevant, the multiplicity -- I don't know if it

10  is and I'm not ruling that it is, don't get me wrong.  I'm not

11  ruling that it's admissible.  What I am ruling is first you

12  have to get the facts.  Once you get the facts, you will know

13  whether something is admissible or not.  It may lead to

14  admissible evidence and that's the standard.  Therefore, the

15  motion to compel with regard to that is granted.

16      MR. BURKE:   So that would be, Judge, request 23, 24, 25

17  is similar, your Honor, it asks for documents from any source

18  concerning the legality or propriety of making dialer calls.

19      THE COURT:   I would say all documents from any source

20  other than the defendant's own lawyers.

21      MR. BURKE:   They have already told us that there are no

22  such documents.

23      THE COURT:   Pardon?

24      MR. BURKE:   They have told us that there are no such

25  documents, no documents subject to privilege.

1       THE COURT:   All right.   So -- no such documents subject

2  to privilege.

3       MR. BURKE:   That's right, they put that in their papers

4  that there are no privileged documents.

5       THE COURT:   Motion to compel request No. 5 is granted.

6       MR. BURKE:   25, your Honor?

7       THE COURT:   Yes.

8       MR. BURKE:   Okay.   Documents that discuss defendant's

9  compliance or lack of compliance with the TCPA.

10      MS. GROH:   Again, your Honor, we will argue that this

11  does not bear on willfulness.   Perhaps if this was an FDCPA

12  case and there was a bona fide error defense, it could be

13  relevant, but as far as this case goes, the compliance or lack

14  of compliance with the policies and procedures in this regard

15  are not relevant and this motion should be denied.

16      MR. BURKE:   It's the same thing as with the complaints.

17  I mean, if you have got a hundred e-mails that were sent a

18  month before the autodialer called the plaintiff, it shows

19  that the defendant knew that they were taking a chance.

20      THE COURT:   I agree.   Document request 26 is granted for

21  the same reason.   Next.

22      MR. BURKE:   31.

23      THE COURT:   That's the same thing.

24      MR. BURKE:   Same thing.   32 is similar as well.

25      THE COURT:   Granted, granted.   And No. 32 --

1       MS. GROH:   Your Honor, if I could clarify --

2       MR. BURKE:   32 we withdraw.  That has to do with the

3   e-mail claim and there is a stay of discovery having to do

4   with the e-mail claim.

5       THE COURT:   All right.

6       MR. BURKE:   35.  35 is a little bit different than 31 in

7   that it has to do with revocation of consent.  For example,

8   somebody has called in to defendant and said "Hey, don't call

9   me," I think that would probably be subsumed in 31 and 26, but

10  this one is a little bit more explicit.

11      THE COURT:   Well, you do, maintain a Do Not Call list,

12  right?

13      MS. GROH:   Currently we do, your Honor, and I don't know

14  the time frame on that, but again, within the class period we

15  don't have any data that would be responsive to this.

16      THE COURT:   Well, you have documents -- you have some

17  documents which list Do Not Call.  You must have some sort of

18  a procedure as to what happens when somebody says "Don't call

19  me," right?

20      MS. GROH:   I'm not sure if it's a written procedure or

21  if it's a --

22      THE COURT:   Well, you're not sure, answer it.  You don't

23  have to create any documents, all you have to do is answer it.

24  And come up with the documents that you have.  Request No. 35

25  is granted.

1    MR. BURKE:  39, your Honor, another arm of what CCH does

2  is they publish legal treatises for compliance with marketing

3  and advertising laws.

4    THE COURT:  I know about CCH.  I used to use them.  They

5  were pretty tough to use when I was in law school.  Maybe

6  they're a lot better now.

7    MR. BURKE:  They're organized by date rather than by

8  subject.  Your Honor, we are asking for anything -- and I

9  think this is included in 25, maybe some of the other

10  requests, but expressly we are asking for their legal

11  treatises and updates that have to do with TCPA compliance.

12    MS. GROH:  And, your Honor, I see no relevance in this

13  whatsoever.

14    THE COURT:  I don't think it's relevant either.  If you

15  want to, look them up.  They're published, aren't they?

16    MS. GROH:  Correct.

17    THE COURT:  These are treatises.  They're published, you

18  can look them up.

19    MR. BURKE:  I haven't been able to find one, your Honor.

20    THE COURT:  Well, so maybe --

21    MR. BURKE:  On eBay, not in the library, not anywhere

22  else.

23    THE COURT:  Well --

24    MR. BURKE:  And we are asking to show knowledge of

25  these -- of the TCPA.

1      THE COURT:   I don't think it's relevant however.

2      MR. BURKE:  Okay.

3      THE COURT:   Their exposition of the law, I don't think

4   that's relevant.

5      MR. BURKE:  Organizational charts of the defendant.

6      THE COURT:   What else -- where are you at?

7      MR. BURKE:  Sorry, Judge.  We are almost done.  Page 14.

8      THE COURT:   Organization charts.

9      MR. BURKE:  Both of personnel and the corporate structure

10   of the defendant.

11      THE COURT:   What's the relevance?

12      MR. BURKE:  Well, as to personnel I want to know where

13   Brian Holbrook, this autodialer guy, where he falls, who his

14   boss is, who works underneath him.

15      THE COURT:   Why don't you ask that specifically.  You

16   want an entire organizational chart for a company that's been

17   in existence a long time and is a large company.  You don't

18   need to know all that, do you?  If you want something specific

19   about specific people that are involved with the autodialer,

20   okay, but --

21      MR. BURKE:  I don't think -- I suspect they're not going

22   to have a chart that just deals with Brian Holbrook, but any

23   chart that includes Brian Holbrook I think would be

24   appropriate.

25      MS. GROH:   Judge, I would agree with you that this is

 1    plainly irrelevant and overbroad, and as you stated, this is a

 2    large company with a lot of players and personnel --

 3         THE COURT:   If you want anything specific, you can ask

 4    something specific, but I think this is overly broad and is

 5    irrelevant and therefore, that motion is denied.

 6         MR. BURKE:   Judge, we don't have an insurance policy from

 7    the defendant.

 8         MS. GROH:   On this point, your Honor, we were seeking to

 9    enter a protective order before disclosing this proprietary

10    business contract with a third-party.

11         THE COURT:   Can I ask you what's proprietary about an

12    insurance policy?

13         MS. GROH:   It's a private contract that is commercial

14    information under Rule 26(c).

15         THE COURT:   It's a private contract.  You have already

16    disclosed what company.

17         MS. GROH:   Pursuant to our Rule 26 obligations, we

18    have --

19         THE COURT:   So --

20         MS. GROH:   -- identified the policy limits --

21         THE COURT:   If somebody wanted to call that company and

22    say "Look, I would like to have a liability policy that covers

23    the following," they would present that policy, wouldn't they?

24    They should be happy with that.  I don't understand what's so

25    proprietary.  Everything these days is proprietary and

1   confidential.  How does it hurt you -- how does a competitor

2   gain an advantage over your liability insurance policy for

3   heaven's sake?

4       MS. GROH:   It's our position, your Honor, that it's

5   commercial information that should be protected --

6       THE COURT:   Why?

7       MS. GROH:   -- from disclosure.

8       THE COURT:   Why?  What I'm trying to get at is why.

9   You're not the only one.  The lawyers now, everything is

10  proprietary and everything is confidential.  That isn't the

11  way it's supposed to work.  It's supposed to be secrets that

12  are subject to protective orders, not any other old document

13  that doesn't hurt you competitively.

14      Anyway, you're going to work on a protective order.  The

15  motion with regard to the insurance -- produce the insurance

16  policy.  Also, work on your protective order.

17      MR. BURKE:  Judge, two more issues remain.  One is that

18  there is no privilege log, but in their papers they said that

19  they're not withholding anything based on privilege, so I

20  think that's a non-issue.

21      THE COURT:   Well, so we don't have to visit it.

22      MR. BURKE:  And the final issue is an interrogatory that

23  I issued asking for essentially a privilege log of documents

24  that the defendant knows are responsive to the discovery

25  requests but they don't have in their possession, custody, or

1   control.  And I have narrowed that interrogatory to dialer

2   documents.

3       THE COURT:  I don't understand that.  Documents that

4   they know exist, but they do not have any control --

5       MR. BURKE:  I'm asking where they are so I can go get

6   them.

7       THE COURT:  Well, it's not a privilege log.

8       MR. BURKE:  No, it's sort of a log of what they don't

9   have.

10      THE COURT:  It's a list.

11      MR. BURKE:  Yes, it's a list.

12      THE COURT:  A list of --

13      MS. GROH:  Interrogatory No. 7 requests defendant

14  identify all responsive documents that are being withheld on

15  the basis of privilege or an objection.  Defendant answered

16  that to say that there are none.  Somehow plaintiff is still

17  moving to compel on this request.

18      THE COURT:  There are none.

19      MR. BURKE:  Well, I mean, your Honor, for example, there

20  are manuals that were not being produced before today that the

21  defendant was withholding based upon objection of overly

22  burdensome.

23      THE COURT:  But they are going to produce them in

24  accordance with our rulings today.

25      MR. BURKE:  For sure.

1    THE COURT:   Okay.

2    MR. BURKE:   What I'm asking for here, what I wanted was

3    for them to tell me is "Oh, we have got these manuals, but

4    we're not giving them to you because we think it's unduly

5    burdensome."  If there is anything after today that they're

6    not giving me because of some objection, I would like to know

7    what it is.  And if there is something that they don't have

8    custody of --

9    THE COURT:   They have to give you everything they have.

10   If they know where something is and they do not have control

11   over it, ask them that specifically, but you didn't ask them

12   that in this interrogatory.

13   MR. BURKE:   Not specific enough.

14   THE COURT:   Therefore, the motion with regard to that

15   interrogatory is denied.

16   MR. BURKE:   Judge, as to the protective order, this is

17   our last issue.  There are two subjects that were, that the

18   parties are dealing with and I think that if we can resolve

19   them today, the defendant will probably be able to file a

20   motion for protective order.

21   One, I would like to have a sentence in Paragraph 1 that

22   says "Nothing herein shall expand or restrict the scope of

23   materials that may be designated as confidential pursuant to

24   Rule 26 and applicable case law."  The defendant finds that

25   objectionable.

1      MS. GROH:    We have three objections to that, your Honor.

2   Frankly, we wouldn't have a problem if we cut that sentence

3   off at "Nothing herein shall expand or restrict the scope of

4   materials that may be designated as confidential," period.

5   The remaining part of the sentence, however, restricts the

6   designation of confidential materials while the first part of

7   the sentence expands it.  We find that to be contradictory

8   and --

9      THE COURT:    But you still have a provision that says if

10  somebody challenges that, you can go to court and the court

11  can determine that.

12     MS. GROH:    Exactly, which is why we don't think that

13  this provision is necessary because there is a provision later

14  on on how to challenge the designation of a document.

15  Additionally, this "pursuant to Rule 26(c) and applicable case

16  law" is just a vague statement that we find to be unnecessary

17  and unclear.

18     MR. BURKE:    Earlier in the paragraph it says that the

19  defendant or any party -- first it said defendant only -- can

20  make any document that's not previously made available to the

21  public confidential in this case.

22     THE COURT:    All right.

23     MR. BURKE:    I think that's too broad.  I don't see --

24     THE COURT:    Well, then you can challenge -- there is a

25  challenge provision here, isn't there?

1        MR. BURKE:   There is.

2        THE COURT:   So challenge it when the time comes,

3    challenge it.

4        MR. BURKE:   As long as I don't get stuck with some

5    argument that says oh, the law of the case is that any

6    document that wasn't previously disclosed to the public, the

7    order already tells us that it's confidential.  That's what

8    I'm worried about.  And I think that any motion challenging

9    confidentiality, we are going to be arguing Rule 26(c) and

10   applicable case law.

11       THE COURT:   Have the words "subject to the challenge

12   provisions as shown in paragraphs" whatever they are, you can

13   add that, but make it subject to the challenge provisions.

14       MR. BURKE:   And the second issue is that I think that

15   it's appropriate, and I have had this in other protective

16   orders, to have a provision that third parties that seek to

17   use the protective order in subpoena responses subject

18   themselves to the jurisdiction of this court for any disputes

19   or anything else having to do with their subpoenaed responses.

20       THE COURT:   Well, they are anyhow.  They are anyhow.  If

21   you subpoena somebody and they don't want to come up with the

22   documents that you have subpoenaed, you come to court, you ask

23   that they be held in contempt of court.

24       MR. BURKE:   I don't want to have to --

25       THE COURT:   What do you need that for?

1    MR. BURKE:  Well, say, for example, a subpoena issues out

2  of the District of Alaska.

3    THE COURT:   Then you have got to go up to Alaska.  We're

4  not going to circumvent that and say -- first of all, it

5  doesn't bind any of the third parties anyway.  I can make all

6  kinds of orders with regard to that, they didn't agree, and

7  you're saying, well, if they look at it --

8    MR. BURKE:  No, I'm saying if they use the protective

9  order, if they designate materials protected, confidential

10  under this protective order, they're submitting to the

11  jurisdiction of this court with regard to those documents.

12    MS. GROH:   We don't think this language is necessary,

13  your Honor, and think it's overly burdensome to require a

14  third party to submit to the jurisdiction of this court.

15    THE COURT:   I agree.  It's an attempt to circumvent that

16  portion of the Rules that say, that have to do with where

17  disputes as to third-party subpoenas are resolved and I don't

18  think you can do that, and I don't think it's binding upon

19  them at all even if they use it.  Therefore, the order is

20  don't put it in.

21    MR. BURKE:  Very good.

22    THE COURT:   Okay.  You're going to submit a draft order

23  on this.

24    MR. BURKE:  Okay.

25    THE COURT:   All right.  We will circulate it and --

1   submit a draft order.

2        MR. BURKE:  I'm going to also order the transcript.

3        THE COURT:   I think you're going to need to.

4        MR. BURKE:  Okay.

5        THE COURT:   All right.

6          *                    *                    *

7             I certify that the above was transcribed

8             from digital recording to the best of my ability.

9

10                    /s/ Lois A. LaCorte

11        _____        _____

12        Lois A. LaCorte                 Date

13        Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

# Appendix 4