**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID MACK, on behalf of himself and | ) | |
| and others similarly situated, | ) | |
| Plaintiff, | ) | 1:10-cv-4244 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| MRS ASSOCIATES, INC., | ) | Magistrate Judge Keys |
| Defendant. | ) | |

## <u>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL</u>

NOW COMES the Defendant, MRS ASSOCIATES, INC. ("MRS"), by and through its undersigned counsel, and in response to Plaintiff's Motion to Compel, states as follows:

**I.     <u>Background</u>**

MRS is a debt collector.  MRS calls debtors only to collect debts they owe to MRS's clients.  Plaintiff alleges that MRS violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), by using an automatic telephone dialing system ("ATDS") to call Plaintiff on his cell phone ending in 9181.  The provision of the TCPA that Plaintiff invokes, § 227(b)(1)(A)(iii), forbids a person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service."  Such calls are prohibited only if made without the called party's consent. § 227(b)(1)(A).  Plaintiff claims that he did not consent to debt collection calls to his alleged cell phone number.  Plaintiff brings this case on all other persons whom MRS called on a cell phone where MRS does not have evidence that the recipient consented to being called on his or her cell phone.

Under a regulatory ruling promulgated by the Federal Communication Commission

("FCC"), if a debtor gives a cell phone number to a creditor, the consumer consents to be contacted at that number regarding the debt, and "autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party." Declaratory Ruling, 23 FCC Rcd. 559, FCC 07-232, ¶ 9.

This case has a unique set of facts which highlight standing issues that have yet to be resolved. Plaintiff David Mack is the brother of Christopher Mack and the son of Julie Mack.[1] Christopher and Julie Mack were account holders with Capital One. After Christopher and Julie fell behind in their payments, Capital One transmitted their accounts (along with various phone numbers that Capital One had obtained) to MRS for collection. Plaintiff has been provided with copies of these placement records. Thereafter, MRS placed calls to these numbers. Plaintiff has been provided with MRS's internal collection notes which identify calls placed to these cell phones in relation to MRS's efforts to collect monies owed to Capital One.

Early in this case, Christopher Mack provided MRS with a phone bill for a number ending in 8862. The bill was issued in Christopher's name. Around the same time, David Mack, by and through his counsel, claimed that he was called on a cell phone ending in number 9181. Defense counsel asked for records to substantiate this claim. Plaintiff's counsel responded that David did not have any phone records but that a subpoena had been issued to the cell phone provider. On or about February 14, 2011, Plaintiff provided phone bills for the 9181 number that he obtained from U.S. Cellular which identified Christopher Mack on the bills. *See* **Exhibit**

---

[1]   Julie Mack sued Defendant in an earlier lawsuit that resulted in an individual settlement. Christopher was originally named as a plaintiff in the present suit but he voluntarily dismissed his claims when counsel for MRS informed his attorney that Christopher had failed to identify his claims against MRS as potential assets in his bankruptcy schedules. Christopher now seeks to reenter this case and seek recovery of post bankruptcy petition calls to his cell phone.

2

**A**. Notwithstanding this fact, David continues to claim that he has standing to assert a claim under the TCPA. David's deposition is scheduled for the morning of Saturday, February 26, 2011. This date was agreed to by MRS in light of David's claim that he works the night shift at his place of employment. By agreement of the parties, Christopher's deposition will commence after the conclusion of David's deposition.

## II.     Plaintiff's Discovery Requests and MRS's Objections

Plaintiff's pending discovery requests ask MRS to produce materials that MRS may rely upon to show that *class members* consented to be contacted on their cell phones. In particular, Plaintiff has asked MRS to identify the following:

> 5.     Identify, state the number and state the time and date of all calls and date and time of notification for: All persons located in Illinois who defendant or some person on its behalf called on their cell phone using a Predictive Dialer and/or Prerecorded Message, where MRS' records *do not show* that the person provided the number to the defendant or the original creditor ....
>
> 6.     Identify the source(s) from which you obtained each of the telephone numbers you called that are responsive to the previous interrogatory, along with the date the numbers were obtained.
>
> 7.     If you contend that any person within the following parameters provided prior express consent to receive telephone calls from you using an automatic telephone dialing system, prerecorded voice message, artificial voice message, Predictive Dialer or Prerecorded message, please specifically identify all documents, data information or things that supports this contention.
>
> *See* **Plaintiff's Motion to Compel, Exhibit A, Request to Product Nos. 5, 6 and 7 (Emphasis supplied).**

As discussed below, in large part, these requests relate to *internal* records that Capital One and other *third party creditors* possess which may demonstrate that class members consented to being called on their cell phones. For example, potential class members may have provided their number to a creditor on an application or at some point during the life of the subject account. Alternatively, potential class members may have been parties to credit

130065265v1 0915035 00038

agreement which limit their right under the TCPA. For example, Capital One has a credit agreement which provides for arbitration and prohibits class actions. *See* **Exhibit B**. Capital One's credit agreement also provides that debtors consent to being called at any number that Capital One may obtain. *Id*. Lastly, Capital One's credit agreement provides that that debtors consent to being called by an autodialer. *Id*.

MRS objected to the above discovery requests and engaged in numerous Local Rule 37.2 conferences with Plaintiff's counsel. As discussed below, MRS has objected to the production of these class based records for the following reasons: **(1)** that Plaintiff's requests are premature prior to certification; **(2)** that Plaintiff's requests are overly burdensome; **(3)** that MRS has no duty to produce materials related to consent that are not in its possession, custody, or control (the subject documents are in the possessions of creditors who hired MRS to collect potential class members' debts); **(4)** that discovery on the merits of the class claim should be deferred until this Court rules on Plaintiff's motion for class certification; **(5)** that FRCP 1 requires that Plaintiff's standing as a class member be resolved before MRS is required to go through the expense of class-based discovery; and **(6)** that Plaintiff had not made a prima facie showing that the proposed class meets the requirements for certification under Rule 23, obviating the need to produce voluminous class based discovery. A copy of MRS's is attached to Plaintiff's Motion as **Exhibit B**.

In relevant part, MRS objected to Interrogatory No. 5 as follows:

> **Answer:** Defendant also incorporates General Objection No. 1 and states that this Interrogatory is premature prior to an order certifying the class. Second, this Interrogatory is also overly burdensome and not limited to the creditor associated with Ms. Mack's account. Third, Defendant objects to this request given the fact intensive nature of this request. As phrased Plaintiff's request will encompass a review of tens of millions of accounts. Fourth, Defendant currently lacks knowledge or information sufficient to readily identify or differentiate, in every instance, whether a cell phone number that it called during the class period was given to it by the debtor, obtained directly from a client-creditor (with or without the express or

130065265v1 0915035 00038

implied consent of the debtor), through skip tracing, so-called telephone capture, or otherwise provided to a collector by the debtor or a third party. For example, Defendant obtained the subject numbers at various times during the collection of the subject accounts, including, but not limited to: during in-bound calls to Defendant's call centers where debtors may provide their telephone number(s) or otherwise update their contact information; written communications from debtors, including, the submission of "web-forms" to update contact information; credit bureau updates; and skip-tracing. Further, after an account is placed with Defendant, and a debtor calls the creditor, certain creditors (including Capital One) may transfer the caller to Defendant which may result in the debtor providing his or her number to Defendant.

MRS's objections to Interrogatory No. 6 were similar to its objections to Interrogatory

No. 5. MRS' objections to Interrogatory No. 7 stated in relevant part:

>**Answer:** Objection, this is a premature contention interrogatory. This Interrogatory is also overly burdensome. Further, the requested material is premature prior to an order certifying the class. Defendant also incorporates General Objection No. 1. Furthermore, Defendant objects to this request given the fact intensive nature of this request. As phrased Plaintiff's request may encompass a review of tens of millions of accounts and hundreds of clients. Additionally, Defendant incorporates its third and fourth objections to Interrogatory No. 5. Subject to and without waiving these objections, Defendant identifies datasets received from its client which contain numbers that each creditor has represented relate to the formation of the subject debt or where the client received the number from the debtor for the purposes of collecting the debt and/or the debtor indicated to Defendant that it was permissible to be called at the subject number or otherwise consented to being called at that number. For example, Defendant may have obtained consent to call debtors cell phones at various times during the collection of the subject accounts, including, but not limited to: during in-bound calls to Defendant's call centers where debtors provided their cell number(s) or otherwise updated their contact information; and from written communications from debtors, including, the submission of "web-forms" to update contact information, including cell phone numbers. Defendant's computer and telephony systems does not and has not independently tracked consent to call cell phones in a manner that is readily retrievable. Accordingly, an account-by-account review of individual collection notes is necessary to ascertain whether consent was provided. Defendant, cannot gather or produce this data without incurring great expense and time. To date, Defendant has incurred in excess of 200 hours of time in collecting the numbers that it called over the relevant time period. Further, maintaining this data for this time period will likely result in Defendant purchasing additional equipment and consulting services within the next week or two. Until it is demonstrated that Plaintiffs have standing and/or a class is certified, it would be unreasonable for Defendant to incur the time and expense of identifying the requested data. Having said that, Defendant will maintain records of all outbound calls and calls logs as it attempts to identify a potential class. Defendant's records are kept on-site and are not stored by a third-party.

130065265v1 0915035 00038

When Plaintiff's counsel pressed counsel for MRS to produce records in the possession of Capital One related to plaintiff(s) and the class consent issue, counsel for MRS informed counsel for Plaintiff that Capital One was unwilling to produce any records. As detailed below, counsel for MRS proceeded to subpoena Capital One's records related to plaintiff(s). Declaration of James C. Vlahakis, ¶¶ 2-12.

## III.   Documents That MRS Will Agree to Produce

### A.     Documents that MRS Will Agree to Produce

Document Request seeks the production of the "sources" where MRS obtained the telephone numbers that it may have called on a class-wide basis:

> 6. Identify the source(s) from which you obtained each of the telephone numbers you called that are responsive to the previous interrogatory, along with the date the numbers were obtained.

The documents that MRS *has its possession* that are potentially responsive are as follows: (a) placement records received from creditors relating to the placement of the debt – which typically include the amount of the debt, the debtor's address and contact numbers; (b) MRS's collection notes for each potential class member; and (c) certain recordings of in-bound and out-bound telephone calls with MRS's collectors and debtors. MRS has produced to Plaintiff items (a), (b) and (c) *for account holders Julie and Chris Mack* in relation to MRS's efforts to collect debts owed to Capital One by Julie and Chris Mack.

While MRS believes that the above request is premature prior to certification and that this request is overly burdensome, MRS is willing to produce placement records from Capital One and other creditors that are which identify the cell numbers which were provided to MRS by their clients. Due to the amount of data involved, MRS is willing to produce these records on a rolling basis over the next 30 days. While Plaintiff may claim that this was is too much time,

130065265v1 0915035 00038

and argue that MRS has had months to gather this data, these arguments miss the mark. First, MRS had every right to stand on its objections. Second, Plaintiff only recently moved to compel. Accordingly, the issue of whether to produce these documents is just now ripe. In light of the four year time-frame, it is not unreasonable to seek 30 days to produce the records that may exist. Additionally, it is not unreasonable to allow 30 days to produce these records in light of the fact that creditors did not provide placement data on a uniform basis. For example, placement data will need to be produced in various formats and programs may need to be written to allow the data to be viewable to Plaintiff does not have MRS's confidential and proprietary software.

MRS does not agree to produce recordings of telephone calls or collections notes for the putative class at this time. Rather, if and when a class is certified, MRS will produce records which may demonstrate consent to be called.

## IV.    MRS's Arguments in Opposition to the Production of Third Party Documents

### A.    Plaintiff's Motion to Compel is Untimely

As an initial matter, Plaintiff's Motion to Compel is untimely. Defendant responded to Plaintiff's discovery requests on or about October 22, 2010. While the parties did engage in extended Local Rule 37.2 discussions, Plaintiff should not be able to argue that Defendant had ample time to gather the requested documents. Rather, MRS objected, and had the right to stand on its objections. Arguably, Plaintiff has waived any Motion to Compel by waiting till the due date for its Motion for Summary Judgment to file its Motion to Compel. Alternatively, to the extent that this Court grants aspects of its Motion to Compel, MRS should be given ample time to gather and produce its responses. This is especially true given the fact that certain requests may take weeks to gather and format for production.

### B.     Plaintiff's Motion to Compel Should Be Denied Because MRS is Not in Possession or Control of the Third Party Data

While this Response will address all of these objections, a majority of this Response will focus on the fact that MRS does not have an obligation to produce records that are maintained by its creditors, including, but limited to Capital One.  Consistent with *Chaveriat v. Williams Pipe Line Company,* 11 F.3d 1420 (7th Cir. 1993), these records are not in the possession, custody, or control of MRS.  Accordingly, Plaintiff's Motion to Compel the production of these documents should be denied.

Significantly, when MRS attempted to obtain account records for Christopher and Julie Mack from Capital One, in-house legal staff for Capital One informed counsel for MRS  that it would only produce the account holders' documents pursuant to a subpoena.  *See* **Exhibit C**, Declaration of James C. Vlahakis  Pursuant to a subpoena, MRS has obtained and immediately produced numerous records that it received *from* Capital One related to the accounts of Julie and Chris Mack.  These documents were immediately forwarded to counsel for Plaintiff.  It took counsel for MRS at least  two dozen emails and telephone calls to secure these documents.  In the opinion of counsel for MRS, the production of these documents appears to be incomplete.  *Id*

Against this backdrop, Capital One has advised MRS that it will not voluntarily produce class based discovery.  *See* **Exhibit C**, Declaration of James C. Vlahakis.  Passed upon the manner in which documents were produced in response to the subpoena that was issued for the Christopher and Julie Mack account records, it will take considerable back-and-forth with Capital One to receive substantive responses.  Additionally, passed upon this prior conduct, counsel for MRS believes On information and belief, counsel for MRS believes that Capital One may present objections to the District Court prior to providing MRS with responsive documents.

130065265v1  0915035  00038

Furthermore, counsel for MRS reasonably believes that other creditors would similarly object to any lawful subpoena. *Id.*

Against this backdrop, MRS submits that Plaintiff's motion to compel should be denied under the authority of *Chaveriat v. Williams Pipe Line Company,* 11 F.3d 1420 (7th Cir. 1993) which held that a party in litigation has no duty to produce, and should not be sanctioned for failing to produce, *materials that are in the custody or control of a third party*.

Alternatively, Plaintiff's motion should be denied to the extent that class based discovery should be deferred until the district court has resolved who is the proper plaintiff for standing or until the district court rules on class certification. As noted above, precertification discovery on the merits of the class based claim is especially inappropriate where the district court has yet to rule on whether the Plaintiff has standing to sue.[2]

Under Federal Rule 34, a party may serve on the other party a request for documents or things "in the responding party's possession, custody, or control." The Federal Rules, however, do not require a party to produce materials that are not its possession, custody, or control. Fed.R.Civ.P. Rule 34; Wright & Miller, 8A Fed. Prac. & Proc. Civ. 2d § 2210; *Burton Mechanical Contractors, Inc. v. Foreman,* 148 F.R.D. 230, 236 (S.D. Ind. 1992).

As noted above, *Chaveriat v. Williams Pipe Line Company,* 11 F.3d 1420 (7th Cir. 1993) unequivocally held that that a party had no duty to produce materials that are in the custody or

---

[2] The resolution of standing was not determined earlier in this litigation because Christopher Mack appeared to have standing. It was not until counsel for MRS discovered that Christopher Mack failed to disclose his claim on his bankruptcy schedules that the adequacy of his brother David needed to be addressed. It is axiomatic that if Christopher (as an account holder and owner of one of the cell phones in question) had standing as the putative class representative, it was unnecessary to determine whether David had standing. With Christopher voluntarily dismissing his claims without prejudice, David's standing became relevant. The issue of David's standing has taken several weeks to determine, and Plaintiff's counsel should receive credit for being cooperative in this regard. The record should also reflect the fact that Plaintiff's counsel granted several extensions to Plaintiff's discovery requests.

130065265v1 0915035 00038

control of a third party. In *Chaveriat,* the plaintiff landowners asserted a nuisance claim against

an oil pipeline operator, seeking damages relative to a pipeline spill. Prior to the litigation, the

plaintiff fired a firm named Eiler to clean up the contamination. Eiler, retained a contractor,

TSC, to take soil samples. TSC in turn, hired NET Midwest to perform a chromatographic

analysis of the samples. The defendant pipeline company issued discovery to the plaintiffs

which requested NET's chromatographic reports. The plaintiffs did not produce the records. As

a sanction for plaintiffs' failure to produce the reports, the district judge excluded the reports

from the summary judgment record. The Seventh Circuit, in an opinion by Judge Posner, held

that this sanction was error because the plaintiff id not have "possession, custody, or control" of

the reports, *despite the fact that the plaintiff failed to ask the vendor for the reports*:

> [The plaintiffs] cannot be criticized for having failed to produce the 1989
> chromatograms when the defendant first requested all test results. The
> request was broad enough to have encompassed any chromatograms that
> the plaintiffs had; and the plaintiffs do not deny that the request required
> them to produce every pertinent document in their "possession, custody, or
> control" within the meaning of Fed.R.Civ.P. 34(a)(1). But they did not
> have custody or control: they could not order NET to surrender the
> chromatograms to them. *Searock v. Stripling,* 736 F.2d 650, 653-54 (11th
> Cir. 1984); *Gerling Int'l Ins. Co. v. Commissioner,* 839 F.2d 131, 139-40
> (3d Cir. 1988).
>
> * * *
>
> The plaintiffs could no doubt have asked NET to give it [*sic*] the
> chromatogram; judging from what happened later, NET would have
> complied and maybe if it had balked, the plaintiffs could have bought the
> chromatograms from it. But the fact that a party could obtain a document
> if it tried hard enough and maybe if it didn't try hard at all does not mean
> that the document is in its possession, custody, or control; in fact it means
> the opposite.

*Chaveriat*, 11 F.3d at 1426-27.

Pre-dating *Chaveriat*, a similar approach was taken by the Circuit in *Searock v. Stripling,*

736 F.2d 650 (11th Cir. 1984):

10

First, we consider the related issues of Stripling's ability to produce the requested documents and his willfulness, bad faith, or fault in failing to produce them after having been given numerous opportunities to do so by the district court. Under Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand. Allied Marine contends that because Stripling asserted in his deposition that he could obtain the documents upon demand he is estopped from later claiming that he did not have control over the documents and from claiming inability to produce the documents by reason of this lack of control to secure and produce the documents in the custody of the repair shops. Stripling's assertion that he had "control" over the documents does not conclusively decide this issue. Further, a fair reading of Stripling's deposition testimony does not support a characterization of his testimony as a statement that he had the *legal right* to obtain the documents on demand; instead his testimony on this point was merely a statement that because he lived in Alabama where the repair work was done he would write letters to the repair shops and attempt to obtain the documents. Throughout the course of this litigation, Stripling continually represented to Allied Marine and the court that he did not have possession of the documents because they went down with the vessel, that he was diligently attempting to obtain the documents and, finally, that he had produced all of the repair invoices he was able to obtain from the repair shops. In short, it does not appear from this record that Stripling asserted "control" over the documents in the sense required for production under Rule 34.

*Id*. at 653-54. Further, a keycite search of this decision demonstrates that Judge Posner's opinion has been followed by numerous court without and outside this jurisdiction. *See also, Aiello v. McCaughtry,* 92 F.3d 1187 (table), 1996 WL 420456, *4 (unpublished disposition) (7th Cir. 1996); *Beil v. Lakewood Eng'g & Mfg. Co.,* 15 F.3d 546, 552 (6th Cir. 1994); *In re Citric Acid Litigation,* 191 F.3d 1090, 1108 (9th Cir. 1999)("Ordering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, precisely because the party has no certain way of getting those documents."); *United States v. International Union of Petroleum & Indus.* Workers, 870 F.2d 1450, 1452-1454 (9th Cir. 1989) (international union could not be compelled to turn over documents in possession of non-party local affiliates); *Klesch & Co. Ltd. v. Liberty Media Corp.,* 217 F.R.D. 517, 521-22 (D. Colo. 2003).

Further, this Honorable Court has recognized that Rule 34 does not require a party to produce records where the responding party does not have "the legal right to control or obtain the

documents at issue." *Evan Law Group LLC v. Taylor*, 2011 WL 72715 (N.D. Ill. 2011).
According to this Court:

> Pursuant to Federal Rule of Civil Procedure 34, a party may request that another party produce designated documents that are in the non-requesting party's "possession, custody or control." With regard to the issue of control, it is "well-settled that a party need not have actual possession of documents to be deemed in control of them." *In re Folding Carton Antitrust Litigation,* 76 F.R.D. 420, 423 (N.D.Ill.1977) (citing 4A Moore's Federal Practice, para. 34.17, p. 34-98)). Rather, the "test is whether the party has a legal right to control or obtain them." *Id.* (citing *Buckley v. Vidal,* 50 F.R.D. 271 (S.D.N.Y.1970)). Obviously, this determination is case-specific. *Id.*

> Plaintiff maintains that Defendant has the legal right to control or obtain the documents at issue. In support of its argument, it states that Defendant, as one of only two patent agents, is "a principal employee" of Blanchard, and has an extensive professional relationship with it and personal relationship with its founder. These allegations, without more, are not enough for the Court to find that Defendant has a legal entitlement to documents belonging to Blanchard. To do so under these circumstances would be to completely circumvent the protections afforded by Federal Rule of Civil Procedure 45.

*Id.* at * 10. Here, the evidence demonstrates that MRS does not have the legal right to control or obtain the documents at issue."

As was the case in *Chaveriat,* it would constitute reversible effort for compel or sanction MRS for failing to produce records that related to potential consent that are in the possession of third party creditors such as Capital One. First, unlike *Chaveriat*, MRS's counsel has asked for the records and was rebuked. Second, consistent with *Chaveriat*, MRS cannot order third party creditors to surrender the materials in their possession regarding consent. MRS does not have the right under its agreements with third party creditors to compel them to produce such materials.

Furthermore, despite being presented with the *Chaveriat* decision in relation to the defendant debt collector's appeal of this Honorable Court's decision in the *Fike* case, Plaintiff has not argued that MRS has a legal right to obtain materials in the possession of third party creditors. Plaintiff has not put forward evidence that MRS can force Capital One or other

12

creditors to turn over these materials.

      **C.**      **Discovery on the merits of the class claim should be deferred until this Court decides the motion for class certification.**

As MRS explained during the last court appearance before this Honorable Court, MRS is not seeking to defeat class certification based upon the consent of potential class members. Rather, assuming for the sake of argument that the standing issue is resolved in Plaintiff's favor, <u>and</u> that a class is certified, MRS *may* seek to reduce the size of the class after a certification order is entered. This is not an unreasonable approach, given the fact that sufficient numerosity may exist. Accordingly, given the principles embodied by FRCP 1 (which promotes the efficient and cost effective resolution of cases) and FRCP 23, the production of this data can be delayed to a future date. For this reason alone, Plaintiff's Motion to Compel should be denied.

Furthermore, the Federal Judicial Center's Manual for Complex Litigation states that:

> Discovery relevant to certification should generally be directed to the named parties. Discovery of unnamed members of a proposed class requires a demonstration of need. [fn779] If precertification discovery of unnamed class members is appropriate, the court should consider imposing limits beyond those contemplated by the Federal Rules of Civil Procedure.

§ 21.14, Manual for Complex Litigation (4th Ed.).

It is common for courts to allow classwide discovery on the certification issue and postpone classwide discovery on the merits until after ruling on the class certification motion. *Washington v. Brown & Williamson Tobacco Corp*., 959 F.2d 1566, 1571 (11th Cir. 1992). When the plaintiff fails to make a *prima facie* showing that the proposed class meets the requirements of Rule 23, the trial court may deny discovery of the alleged class members. *Mantolete v. Bolger*, 767 F.2d 1416, 1423-24 (9th Cir. 1985).

Here, discovery on the merits of the class claim is improper because Plaintiff has not shown a need for such discovery and because he has not made a *prima facie* showing that the

13

proposed TCPA class meets the requirements of Rule 23. As to need, discovery on the question of whether potential class members consented can be postponed until after this Court rules on the plaintiff's expected motion to certify a TCPA class. If this Court certifies a class and plaintiff serves discovery regarding whether class members consented to contacted on their cell phones, MRS will produce the materials bearing on that issue in its possession, custody, or control. There is no reason to put MRS to the burden and expense of producing all such materials before Plaintiff has moved for class certification and before the Court has ruled on such a motion.

Requiring MRS to produce all materials bearing on the question of consent is especially unjustified here because Plaintiff faces formidable barriers to showing that a TCPA class could be certified under Federal Rule 23. A party seeking class certification must satisfy the four requirements of Federal Rule 23(a) and show that the class meets one of the three subsections of Rule 23(b). *Hicks v. Client Services, Inc.,* 2008 WL 5479111, *7-*8 (S.D. Fla. 2008). Plaintiff argues that the TCPA class satisfies Federal Rule 23(b)(3), which requires him to show that common issues of fact or law predominate over the questions affecting only individual class members, and that the class action is superior to other methods for adjudicating the controversy. The common issues are predominant if "there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Foreman v. PRA III, LLC,* 2007 WL 704478 (N.D. Ill. 2007); *see also Gene and Gene, LLC v. Biopay LLC,* 541 F.3d 318, 328 (5th Cir. 2008). The predominance inquiry looks to "how a trial on the merits would be conducted if a class were certified." *Biopay LLC,* 541 F.3d at 328.

Plaintiff has not demonstrated a need to conduct discovery on the merits of the class claim before the Court rules on the expected motion for class certification.

14

Plaintiff filed this lawsuit months ago, but he still has not filed his memorandum in support of his motion for class certification or demonstrated whether he has standing to assert his claim. Respectfully, it puts the cart before the horse to compel MRS produce all materials related to whether class members gave consent, especially when the class claim is tenuous, and no class has been certified.

## II.    CONCLUSION

For the above reasons, Defendant, MRS ASSOCIATES, INC., respectfully requests that this Honorable Court deny Plaintiff's Motion to Compel. Alternatively, in light of the fact that Plaintiff only brought this Motion to Compel on the eve of the due date for his Memorandum of Law in Support of Class Certification, Defendant respectfully requests that this Honorable Court allow it time to issue subpoenas to all of its creditors and to allow sufficient time for the creditors to object or respond to the subpoenas. Defendant suggests a 30 or 45 day status on this matter to report back on service of the subpoenas as well as any objections or responses to the subpoenas.

David M. Schultz
James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois  60601
(312) 704-3715
Fax:  (312) 704-3001
jvlahakis@hinshawlaw.com

Respectfully submitted

Defendant MRS ASSOCIATES, INC.,

By:  /s/ James C. Vlahakis
          One of its Attorneys

15

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on February 22, 2011, I served this document by filing it with the Court's CM/ECF system, which will make copies of the documents available to all counsel of record.

/s/ James C. Vlahakis_____

## Service List

Alexander H. Burke, Esq.
BURKE LAW OFFICES, LLC
155 N. Michigan Avenue, Suite 9020
Chicago, Illinois  60601
ABurke@BurkeLawLLC.com

16

130065265v1  0915035  00038