**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID MACK and | ) | Judge William J. Hibbler |
| CHRISTOPHER MACK, on | ) | |
| behalf of themselves and others similarly situated, | ) | Case No.: 1:10-cv-04244 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MRS ASSOCIATES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OBJECTION TO MAGISTRATE JUDGE ARLANDER KEYS'
FEBRUARY 25, 2011 ORDER**

NOW INTO COURT, through undersigned counsel, comes defendant, MRS Associates,

Inc., n/k/a MRS BPO LLC ("MRS"), which, pursuant to Fed. R. Civ. P. 72(a), submits this

objection to Magistrate Judge Arlander Keys' February 25, 2011 order.

### I. INTRODUCTION

On July 8, 2010, David and Christopher Mack filed their Class Action Complaint. On

January 7, 2011, Christopher Mack voluntarily dismissed his claims, leaving David Mack as the

only remaining plaintiff in this case.

Plaintiff alleges he received calls from MRS on a cellular telephone number ending with

the last four digits of 9181. Plaintiff alleges MRS violated the Telephone Consumer Protection

Act ("TCPA"), 47 U.S.C. § 227, by making the calls. But it is undisputed that (1) plaintiff was

*not* the called party/intended recipient of the MRS calls and (2) plaintiff is *not* the cell phone

subscriber for the 9181 number. These uncontroverted facts establish plaintiff lacks standing to

assert a TCPA claim relating to the calls. Based upon these and other undisputed facts, the Court

should grant MRS' pending Motion for Partial Summary Judgment and dismiss plaintiff's TCPA

claim with prejudice. *See* Docket No. 44.

Even though he lacks standing to assert his own TCPA claim, plaintiff seeks to certify a TCPA class. In an effort to certify a class, plaintiff served discovery on MRS seeking to obtain information and documents relating to cell phone numbers called by MRS from July 8, 2006 to July 8, 2010 and all evidence of consent to make such calls. After MRS objected to plaintiff's discovery, plaintiff filed a motion to compel. *See* Docket No. 16. On February 25, 2011, Magistrate Keys granted plaintiff's motion. *See* Docket No. 42. The Court should reverse Magistrate Keys' discovery order for at least two reasons.

***First***, plaintiff does not have standing to assert his TCPA claim. In light of that fact, the requested class discovery is unnecessary. Simply put, plaintiff is improperly attempting to put the cart before the horse by demanding class discovery before the Court rules on whether he has standing to assert his TCPA claim.

***Second***, plaintiff is using the discovery process to overwhelm MRS and gain an unfair advantage. In truth, plaintiff does not want the discovery he purports to seek. Instead, he is hoping MRS will be so overcome with the scope and breadth of his daunting discovery demand—which amounts to many millions of documents in the hands of hundreds of third-party creditors spread across the country—that it will fold its tent and settle. The Seventh Circuit has advised lower courts to be cognizant of the use of such class-action litigation tactics. *See, e.g.*, *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298-1299 (7th Cir. 1995) ("Judge Friendly, who was not given to hyperbole, called settlements induced by a small probability of an immense judgment in a class action 'blackmail settlements.' Judicial concern about them is legitimate, not 'sociological[.]'") (citation omitted). And if he cannot force MRS to settle, then plaintiff will attempt to take away MRS' ability to defend. Despite the fact the requested documents are not in

MRS' possession, plaintiff intends to ask this Court to strike MRS' consent defense if MRS is unable to produce the millions of documents he requests. *See* Docket No. 16, at p. 2 ("[MRS] should be compelled to either waive the affirmative defense, or provide all evidence in support of the [consent] defense by date-certain.").

MRS implores the Court to intervene now and exercise its power and discretion under Fed. R. Civ. P. 23(d) and 26(c)-(d) to stop the discovery plaintiff unfairly seeks. Plaintiff's TCPA claim cannot be certified under Fed. R. Civ. P. 23. As explained below, if the Court permits this case to proceed as a class, there will undeniably be individualized issues relating to consent. Indeed, plaintiff's own motion to compel proves this point. *See* Docket No. 16, at pp. 1-2 ("[D]efendant has raised [consent] in its affirmative defenses. Understanding that defendant must have some Fed. R. Civ. P. 11 justification for bringing this affirmative defense, plaintiff requested that defendant 'show its hand' as to what support it has for such, *for each class member*.") (emphasis added). If the Court permits this case to proceed as a class, liability will need to be analyzed separately for each class member by weighing the evidence relating to consent, including all documentary evidence of the subject account and cell phone number and testimony from the related creditor. Such "mini trials" are the antithesis of the class action procedure.

The Court should reverse Magistrate Keys' discovery order, or at least temporarily stay all class discovery in this matter until the threshold legal issues, such as standing, are resolved.

## II. PROCEDURAL HISTORY

On July 8, 2010, Christopher and David Mack filed their Complaint. *See* Docket No. 1. On January 7, 2011, Christopher Mack voluntarily dismissed his claims without prejudice, leaving David Mack as the only remaining plaintiff in this case. *See* Docket No. 15.

Plaintiff alleges he received calls from MRS on a cellular telephone number ending with the last four digits of 9181. Plaintiff asserts two counts based upon these calls. *See* Docket No. 1, at ¶¶ 13-31. In Count 1, plaintiff asserts a TCPA claim. *Id.* at ¶¶ 13-24. Plaintiff alleges MRS violated the TCPA by calling the 9181 number in an attempt to collect a debt allegedly owed by his mother, Julie Schultz. *Id.* Plaintiff seeks to bring the TCPA claim on behalf of a class of individuals who are allegedly similarly situated. *Id.* at ¶ 17.

In Count 2, plaintiff asserts a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq. Id.* at ¶¶ 25-31. Plaintiff's FDCPA claim is only brought on an individual basis. *Id.*

On August 26, 2010, MRS filed an answer, including affirmative defenses. *See* Docket No. 9. In its answer, MRS asserted consent as a defense, stating "[t]he Complaint fails to state a claim upon which relief can be granted to the extent that the underlying debtor gave consent to receive telephone calls on her cellular telephone." *Id.* at p. 10. MRS also asserted "[t]he Complaint fails to state a claim upon which relief can be granted to the extent the [plaintiff] [does] not own the telephone(s) associated with the subject telephone numbers." *Id.*

On January 11, 2011, plaintiff filed a Motion to Compel. *See* Docket No. 16. On February 22, 2011, MRS filed its opposition to plaintiff's motion. *See* Docket Nos. 37-39.

On February 25, 2011, a hearing was held on plaintiff's motion. At the hearing, Judge Keys granted plaintiff's compel motion, but entered a somewhat confusing order. *See* Docket No. 42. MRS believes Judge Keys compelled interrogatories 5-7 and document request 4-6 and 15. However, the minute order refers to different discovery requests. *Id.* Plaintiff also believes Judge Keys' order is incorrect. *See* Docket No. 48. In light of this fact, MRS' objection is directed to what the parties believe Judge Keys compelled, *i.e.*, interrogatories 5-7 and document

request 4-6 and 15. A copy of plaintiff's discovery requests are attached as **Exhibit A** and MRS's responses are attached as **Exhibit B**.

In shortest summary, plaintiff's discovery seeks information and documents relating to cell phone numbers called by MRS from July 8, 2006 to July 8, 2010 and all evidence of consent to make such calls. As detailed below, plaintiff's discovery requests should be denied and Magistrate Keys' discovery order should be reversed, or at least temporarily stayed until the threshold legal issues, such as standing, are resolved.

### III. LAW AND ARGUMENT SUMMARY

"A district court's review of a magistrate judge's *non-dispositive* order is governed by Rule 72(a) of the Federal Rules of Civil Procedure[.]" *Lerman v. Turner*, 2011 WL 494623, *1 (N.D. Ill. 2011) (emphasis added). "[D]iscovery motions are considered to be non-dispositive under Rule 72(a)[.]" *Nance v. City of Elgin*, 2010 WL 2757164, *1 (N.D. Ill. 2010). Under Fed. R. Civ. P. 72(a), the district court judge should overturn the magistrate judge's ruling "if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

With all due respect, Magistrate Keys clearly erred in compelling the requested discovery. In light of this fact, the Court should reverse Magistrate Keys' order per Rule 72(a).

#### A. The Requested Discovery Should Be Denied Because Plaintiff Does Not Have Standing

Standing is a threshold issue that should be resolved *first* before the case proceeds. *See, e.g.*, *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008); *U.S. v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir. 1987) ("[S]tatutory standing also is a threshold issue.") (gathering authorities). This Court has stated: "Before considering the merits of a litigant's case, a federal court must first decide the threshold question whether that party has

standing to bring the action." *Young v. Lehigh Corp.*, 1989 WL 117960, *3 (N.D. Ill. 1989).[1] As the Third Circuit has explained, "review of standing is a threshold inquiry, and that the proper disposition of a case in which the putative class plaintiff lacks standing is to dismiss the complaint—not to deny class certification—and to avoid reaching a decision on the merits of the claims presented." *Hassine v. Jeffes*, 846 F.2d 169, 176 (3d Cir. 1988).

As explained in MRS' pending Motion for Summary Judgment, plaintiff lacks standing to assert his TCPA claim because (1) he was *not* the called party/intended recipient of the MRS calls and (2) he is *not* the cell phone subscriber for the 9181 number. *See* Docket No. 44. Based upon these undisputed facts, plaintiff's TCPA claim should be dismissed for lack of standing.[2]

Considering plaintiff does not have standing to assert his TCPA claim, the Court should reverse Magistrate Keys' discovery order and deny plaintiff's requested class discovery. MRS should not be further burdened with plaintiff's class discovery when plaintiff does not even have

---

[1] *See also ING Inv. Plan Services, LLC v. Barrington*, 2010 WL 3385531, *2 (N.D. Ill. 2010) ("The court shall first address the threshold issue of standing."); *Akel v. City of Chicago Mayor's License Com'n.*, 2004 WL 1630515, *2 (N.D. Ill. 2004) ("As standing is a threshold matter and as it is dispositive in this case, the court addresses that issue first."); *Feldman v. Motorola, Inc.*, 1994 WL 722883, *2 (N.D. Ill. 1994) ("Because standing is a threshold inquiry separate and apart from the requirements of Rule 23, this report addresses it first.") (citation omitted); *King v. Bradley*, 829 F.Supp. 989, 992 (N.D. Ill. 1993) ("Here, the 12(b)(1) motion is brought on grounds of lack of standing, so it must first be decided whether plaintiffs have standing to bring this suit."); *U.S. v. 105,800 Shares of Common Stock of FirstRock Bancorp, Inc.*, 830 F.Supp. 1101, 1115 (N.D. Ill. 1993) ("Because standing is a threshold issue and fundamental to a court's subject matter jurisdiction, this court will address the standing issue first."); *U.S. v. One Hundred Fifty-Three Thousand Nine Hundred Twenty and 00/100 ($153,920.00) in U.S. Currency*, 2009 WL 2176052, *2 (C.D. Ill. 2009) ("The Court must first address the threshold issue of standing raised by the Government. If a court decides that a movant does not have standing, then the court cannot proceed with evaluating the merits of the issue raised in the movant's motion."); *Rahim v. Sheahan*, 2001 WL 1263493, *3 (N.D. Ill. 2001); *Schmidt v. Reich*, 835 F.Supp. 435, 438 (N.D. Ill. 1993).

[2] *See, e.g., Leyse v. Bank of America, Nat. Ass'n*, 2010 WL 2382400, *4 (S.D. N.Y. 2010) (dismissing the plaintiff's TCPA claim because the plaintiff was not the "called party" or intended recipient of the call); *Cellco Partnership v. Dealers Warranty, LLC*, 2010 WL 3946713, *9-10 (D. N.J. 2010) (dismissing the plaintiff's TCPA claim because the plaintiff was not "the party to whom the call [was] directed" or "intended recipient of the call"); *Balbarin v. North Star*, 2011 WL 211013, *1 (N.D. Ill. 2011) (applying *Leyse* and *Cellco*).

standing to assert his TCPA claim.[3]

## B. Plaintiff Is Using the Discovery Process to Overwhelm MRS and Gain an Unfair Advantage

"The class action is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated." *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 744 (7th Cir. 2008). To be sure, "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). "But the class action device has its downside, or rather downsides." *Thorogood*, 547 F.3d at 744. Class actions present "opportunities for abuse as well as problems for courts and counsel in the management of cases." *Gulf Oil*, 452 U.S. at 100. "As a result, the 'court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'" *Tillman v. Indiana Energy Sav. Corp.*, 2010 WL 1729591, *4 (N.D. Ill. 2010). "With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). "Failure to exercise that control results in enormous costs to the litigants and to the due administration of justice." *Tillman*, 2010 WL 1729591 at *4.

The Court should intervene now before any more time or resources are wasted. Plaintiff's requested class discovery is simply unnecessary. As shown by the summary below, the legal issues involved in this TCPA cell phone case prevent class certification. Plaintiff's TCPA claim cannot be class certified due to the individualized liability issues relating to consent.

---

[3] *See Marrese v. American Academy of Orthopaedic Surgeons*, 706 F.2d 1488, 1497 (7th Cir. 1983) ("[A] a district court has the power under Rules 26(c) and (d) of the Federal Rules of Civil Procedure, and in a clear case the duty, to defer a burdensome discovery request pending completion of discovery on an issue that may dispose of the entire case and thereby make the request moot."); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) ("[A] district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties."); Fed. R. Civ. P. 23(d).

### *1. The TCPA Cell Phone Provision*

In relevant part, the TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call (other than a call made for emergency purposes or *made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

"[T]he Federal Communications Commission (the 'FCC'), which Congress tasked with implementing certain regulations under the TCPA, see 47 U.S.C. § 227(b)(2), has issued orders interpreting the TCPA." *Abbas v. Selling Source, LLC*, 2009 WL 4884471, *2 (N.D. Ill. 2009). The TCPA does *not* include a definition for the phrase "prior express consent," but the FCC has explained through various orders how such consent can be obtained. The Court must follow and apply the FCC's orders relating to consent per the Hobbs Act, 28 U.S.C. § 2342.[4] This Court recently acknowledged the limitations imposed by the Hobbs Act with respect to FCC TCPA orders.[5]

### *2. How Is Consent Established?*

In today's society, the use of cell phones is prevalent. In fact, many consumers

---

[4] The Hobbs Act "vests the courts of appeals with exclusive jurisdiction to review certain orders issued by the Federal Communications Commission[.]" *Illinois Bell Telephone Co. v. F.C.C.*, 740 F.2d 465, 467 (7th Cir. 1984); *see also Indiana Bell Tel. Co., Inc. v. McCarty*, 362 F.3d 378, 389 n. 13 (7th Cir. 2004). Said another way, "[p]roceedings for judicial review of final orders of the FCC . . . may be brought only in a federal court of appeals." *City of Peoria v. General Elec. Cablevision Corp. (GECCO)*, 690 F.2d 116, 119 (7th Cir. 1982).

[5] *See Greene v. DirecTv, Inc.*, 2010 WL 4628734, *3 (N.D. Ill. 2010) ("The Federal Communications Commission . . . has clarified what constitutes 'express consent' under the statute pursuant to its authority to create rules and regulations implementing the TCPA. . . . A district court must accept the FCC's interpretation of the TCPA as expressed in their regulations and orders."); *CE Design Ltd. v. Prism Business Media, Inc.*, 2009 WL 2496568 (N.D. Ill. 2009); *see also Leckler v. Cashcall, Inc.*, 2008 WL 5000528 (N.D. Cal. 2008).

exclusively utilize a cell phone and do not have a landline-home phone. *See* S. Blumberg and J. Luke, *Wireless Substitution: Early Release of Estimates from the National Health Interview Survey*, January-June 2009.[6] A 2009 survey conducted by the Centers for Disease Control and Prevention indicated that more than 1 of every 5 American homes (22.7%) had *only* cell phones. *Id.* In addition, 1 of every 7 American homes (14.7%) had a landline, *but* received all or almost all calls on their cell phone. *Id.* In other words, many Americans provide their cell phone number as their exclusive, primary, or preferred number for contact. *Id.*[7]

Cell phone numbers are often supplied along with the completion of various forms or contracts, including (but not limited to) credit applications, which result in binding credit obligations. In other instances, binding credit obligations are created without the completion of any documents, but contact information is nevertheless supplied to the creditor. For example, consumers may not sign written agreements when receiving medical treatment or establishing public utilities, but still supply a cell phone number to the medical provider or utility company as the contact number.

With this backdrop in mind, the FCC has ruled that calls made to phone numbers supplied by consumers in obtaining credit are made with "prior express consent."[8] Consent may

---

[6] *See* http://www.cdc.gov/nchs/data/nhis/earlyrelease/wireless200912.pdf.

[7] The survey conducted by the Centers for Disease Control and Prevention in 2010 indicates the number of American homes with only cell phones continues to grow and this trend is expected to continue for several years. *See* http://www.cdc.gov/nchs/data/nhis/earlyrelease/wireless201012.pdf. The 2010 survey showed more than 1 of every 4 American homes (26.6%) had *only* cell phones, an increase of 2.1% since the second half of 2009. *Id.* Also, nearly 1 of every 6 American homes (15.9%) received all or almost all calls on their cell phone despite having a landline. *Id.*

[8] *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 at ¶ 31 ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 559 at ¶ 1 ("In this ruling, we clarify that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party."), and 23 FCC Rcd. at 564, ¶ 9.

be established by proving, *e.g.*, the cell phone number was provided to the creditor on a credit card application. *See* 23 FCC Rcd. at 564, ¶ 9. Several courts have agreed with and applied this common-sense ruling in TCPA cell phone cases.[9]

### *3. Who May Be Held Liable Under the TCPA?*

The FCC has ruled "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." 23 FCC Rcd. at 565, ¶ 10. The FCC has held "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number *bears the responsibility for any violation of the Commission's rules.*" *Id.* (emphasis added). Based upon the FCC's rulings, it is clear that a debt collector cannot be held liable under the TCPA for making calls on behalf of a creditor to phone numbers the creditor provided the debt collector.[10]

In addition to ruling creditors bear the responsibility for violations of the TCPA, the FCC has also ruled that *creditors* (not debt collectors) carry the burden of proving consent. *Id.* The FCC has ruled:

> To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. *The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase*

---

[9] *See, e.g., Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270, *3 (N.D. Ill. 2010); *Gutierrez v. Barclays Group*, 2011 WL 579238, *2 (S.D. Cal. 2011); *Cunningham v. Credit Management, L.P.*, 2010 WL 3791104, *4-5 (N.D. Tex. 2010); *Pugliese v. Professional Recovery Service, Inc.*, 2010 WL 2632562, *7 (E.D. Mich. 2010); *Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756, *3 (W.D. N.Y. 2010); *Pollock v. Bay Area Credit Service, LLC*, 2009 WL 2475167, *9-10 (S.D. Fla. 2009); *Bates v. I.C. System, Inc.*, 2009 WL 3459740, *2 (W.D. N.Y. 2009).

[10] The FCC's ruling regarding debt collectors is similar to its ruling regarding "fax broadcasters," *i.e.*, entities hired to send faxes on behalf of advertisers. In a Memorandum Opinion and Order adopted on July 26, 1995, and released on August 7, 1995, the FCC ruled that fax broadcasters cannot be held liable for the TCPA "fax blast" provision: "We clarify that the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements, *and that fax broadcasters are not liable for compliance with this rule.*" *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12407 at ¶ 35 (emphasis added).

*agreements, sales slips, and credit applications.* Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.

*Id.* (emphasis added).

The FCC's pronouncements suggest creditors may be necessary parties to TCPA cell phone cases under Fed. R. Civ. P. 19.[11] The interests of creditors are clearly implicated in TCPA cell phone cases, as a court's consent ruling could be binding on the creditors and create *de facto* liability for the creditors. Assuming the Court's consent ruling would be binding on the creditors, the creditors are necessary parties because "disposing of the action in the [creditors'] absence [would obviously] . . . impair or impede the [creditors'] ability to protect the[ir] interest[s.]" Fed. R. Civ. P. 19(a)(1)(B)(i). Further, "[t]he fact that the litigation is in the form of a class action rather than an ordinary suit does not impair [a] [party's] right to insist upon joinder of all interested parties." *In re Fine Paper Litigation State of Wash.*, 632 F.2d 1081, 1091 (3d Cir. 1980).

### 4. *Individualized Liability Issues Relating to Consent Will Dominate this Case if Plaintiff's TCPA Claim Is Class Certified*

Before certifying a class action, "[t]he court is obligated to determine whether the existence of individual issues preclude certification, and must take into account the substantive elements of [plaintiff's] claims to consider whether a trial would be manageable or problematic. Where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper." *Haynes v. Dart*, 2009 WL 2355393, *11 (N.D. Ill. 2009) (citations

---

[11] "The purpose of Federal Rule of Civil Procedure 19 is to permit joinder of all materially interested parties to a single lawsuit *so as to protect interested parties and avoid waste of judicial resources.*" *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990) (emphasis added). "[Rule 19] should be employed to promote the full adjudication of disputes with a minimum of litigation effort." 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1602. "Determinations under Rule 19 must be made in practical context of each particular case, leaving to the discretion of the court how an action should best proceed under the circumstances." *Lid Electric, Inc. v. Local Union No. 134*, 2002 WL 31455980, *2 (N.D. Ill. 2002).

omitted). "Manageability 'encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit.'" *Gerlib v. R.R. Donnelley & Sons Co.*, 1997 WL 672645, *5 (N.D. Ill. 1997). In particular, the court should carefully consider the proof or evidence that will be introduced at trial. *See Farmer v. DirectSat USA, LLC*, 2010 WL 3927640, *22 (N.D. Ill. 2010).

If the Court permits this case to proceed as a class, there will be individualized liability issues relating to consent. Before liability could be determined, there would need to be a finding as to whether each class member consented to the call(s).[12] That could require at least tens of thousands of "mini trials" as to consent, making this case completely unmanageable. *See Radmanovich v. Combined Ins. Co. of America*, 216 F.R.D. 424, 439 (N.D. Ill. 2003) ("[T]here would need to be individual determinations—potentially more than six thousand—with regard to [defendant's] liability to each potential class member. The volume of these individual liability determinations would render this case totally unmanageable as a class action."). At trial the Court would need to evaluate millions of documents and consider testimony from hundreds of different creditors relating to at least tens of thousands of different "class members."

The problems inherent in certification of plaintiff's TCPA claim are obvious now. *See Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 534 (N.D. Ill. 2008) ("Not only would individual hearings be necessary on such issues as ownership and distinctiveness, but even prior to that, discovery and the inevitable individual discovery disputes would become all-consuming."). Does the Court really want MRS to issue subpoenas to all of the creditors and

---

[12] *See Cedeno v. Fieldstone Mortgage Co.*, 2002 WL 1592759, *6 (N.D. Ill. 2002) ("Because the court must examine each individual case to determine [liability], this process is not amenable to a class action."); *Rodriguez v. Ford Motor Credit Co.*, 2002 WL 655679, *5 (N.D. Ill. 2002) ("[A] trial would require an individualized inquiry into the reasons for thousands of credit decisions. As this court has previously held, 'where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper.'").

request production of the millions of documents plaintiff seeks? The creditors will certainly resist the subpoenas for the same reasons expressed by MRS herein. Does the Court really expect MRS to take depositions of all of the creditors who are outside the subpoena power of this Court for trial? How can such depositions be conducted when at least tens of thousands of accounts are at issue?

Moreover, if creditors are necessary parties in TCPA cell phone cases under Rule 19, it is hard to imagine how plaintiff's TCPA class claim could proceed. *See Robertshaw Controls Co. v. Therm-O-Disc, Inc.*, 2009 WL 4043083, *1 (N.D. Ill. 2009) ("[W]here an interested party cannot be joined, dismissal may be required[.]"); Fed. R. Civ. P. 19(b). Plaintiff's TCPA claim could involve hundreds of creditors. Joinder of every creditor is impossible. Even if the Court could exercise jurisdiction over each creditor, and venue was appropriate in this Court, the case could not logistically proceed. The case would digress into "mini trials" as to each creditor and whether that creditor satisfied its burden of proving consent. If such were permitted, "this case would be unwieldy and run counter to the expected benefits of a class action." *Kline v. Security Guards, Inc.*, 196 F.R.D. 261, 274 (E.D. Pa. 2000).

It should also be noted that "if a class member has a large enough stake to be able to litigate on his own, the case for class-action treatment is weakened." *Pastor v. State Farm Mut. Auto. Ins. Co*, 487 F.3d 1042, 1047 (7th Cir. 2007); *see also Nagel v. ADM Investor Services, Inc.*, 217 F.3d 436, 443 (7th Cir. 2000). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries[.]" *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Plaintiff seeks for himself TCPA statutory damages of $17,500 to

$52,500; such damages are far from "paltry." Considering this fact, and the complexity in calculating each class member's TCPA statutory award, it is clear plaintiff's TCPA claim cannot be class certified and so the requested discovery should be denied.

The problems the Court will face if plaintiff's TCPA claim is class certified are nearly identical to the issues described in *G.M. Sign, Inc. v. Brink's Mfg. Co.*, 2011 WL 248511 (N.D. Ill. 2011). In *G.M. Sign*, the plaintiff sought to certify a TCPA fax blast case. Judge St. Eve denied plaintiff's motion and explained:

> [W]ere the Court to certify the Complaint's proposed class, it would have to engage in a class-member-specific inquiry to determine whether each recipient did indeed give permission or have an established business relationship with Defendant at the pertinent time. The relevant question is whether this inquiry means that individualized questions predominate over common questions of law or fact. The Court finds that, on the facts of this case, they do.
>
> Plaintiff points to several cases in which courts in this district have certified TCPA cases. Of course, the question whether common questions predominate is necessarily a case-specific one. Ultimately, the facts in this case are distinguishable from Plaintiff's cited cases because Defendant has put forth evidence that it obtained the consent of Plaintiff and the other non-pre-existing-customer recipients of the faxes before sending them. They are also distinguishable because Defendant has proffered evidence that the other recipients of the faxes were pre-existing customers. This evidence reveals that Plaintiff could not prove its case, or establish the population of the Complaint's proposed class definition, by generalized proof.
>
> . . . .
>
> [I]t seems unavoidable that the Court would have to conduct a series of mini-trials to determine the facts of prior business relationships and consent. It would have to do so both to establish the population of the class, and to determine liability.
>
> . . . .
>
> Individual questions predominate in the instant case because, if the Court were to certify the proposed class, it would have to determine whether each prospective class member gave consent or had an existing business relationship with Defendant. Unlike the facts of *Travel 100*, those determinations would most certainly require individualized inquiry.

*G.M. Sign*, 2011 WL 248511 at *8-10 (citations omitted).

## IV. CONCLUSION

Considering the foregoing, the Court should reverse Magistrate Keys' discovery order, or at least temporarily stay all class discovery in this matter until the threshold legal issues, such as standing, are resolved.

Respectfully submitted,


/s/ James K. Schultz
Attorney for MRS Associates, Inc.,
n/k/a MRS BPO LLC

James K. Schultz
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
55 West Monroe Street, Suite 1120
Chicago, IL 60603
Telephone: 312-578-0990
Facsimile: 312-578-0991
jschultz@sessions-law.biz

Bryan C. Shartle
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
Lakeway Two, Suite 200
3850 N. Causeway Boulevard
Metairie, LA 70002
Telephone: 504-828-3700
Facsimile: 504-828-3737
bshartle@sessions-law.biz

Attorneys for MRS Associates, Inc.,
n/k/a MRS BPO LLC

## CERTIFICATE OF SERVICE

I certify that on this 7th day of March 2011 a copy of the foregoing **Objection to Magistrate Judge Arlander Keys' February 25, 2011 Order** was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel, as described below. Parties may access this filing through the Court's system.

> Alexander H. Burke
> BURKE LAW OFFICES, LLC
> 155 N. Michigan Ave., Suite 9020
> Chicago, IL 60601
> Telephone: 312-729-5288
> Facsimile: 312-729-5289
> aburke@burkelawllc.com


/s/ James K. Schultz
Attorney for MRS Associates, Inc.,
n/k/a MRS BPO LLC

\\sfnfs02\prolawdocs\9441\9441-27232\Mack, David & Christopher\368312.doc