**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID MACK, on behalf of | ) | 1:10-cv-4244 |
| Himself and others similarly situated, | ) | |
| Plaintiffs, | ) | Judge Hibbler |
| v. | ) | Magistrate Judge Keys |
| | ) | |
| MRS ASSOCIATES, INC., | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

**PLAINTIFF'S**

**(1)  STATUS REPORT ON DEFENDANT'S EFFORTS TO COMPLY WITH DISCOVERY ORDERS;**

**(2)  MOTION FOR AN ORDER REQUIRING MRS  TO PROVIDE ROLLING PRODUCTION OF COMPELLED CLASS INFORMATION AND DATA, and**

**(3)  MOTION TO CLARIFY TERMS OF PRODUCTION OF DATA MRS HAS AGREED TO PRODUCE.**

In addition to notifying the Court of the status of MRS' apparent efforts to comply with this Court's discovery order, plaintiffs respectfully request that this Court:

(1) Order MRS to provide a rolling production of information, data and documents responsive to the discovery requests that Judge Keys compelled on February 25, 2011, objections overruled March 15, 2011; beginning with materials and information already in its possession; and

(2)  issue an order stating that plaintiff's acceptance of nonresponsive "placement data" that defendant agreed to produce while briefing the motion to compel is without prejudice to plaintiff's entitlement to true responses to the compelled discovery requests.  In support, plaintiff states:

1.   **STATUS REPORT**

After extensive oral argument and briefing, on February 25, 2011, Judge Keys granted plaintiff's motion to compel class information and documents. Full responses, information, documents and data were ordered to be produced by April 8, 2011.

Instead of issuing the subpoenas MRS argued would be necessary to comply with the order, MRS hired new attorneys who cancelled the plaintiffs' depositions, filed an objection to the discovery order, filed a motion to stay proceedings and filed a motion for summary judgment. As of the date of hearing on MRS' objection to this Court's ruling, March 15, 2011, it was apparent that MRS had not begun compiling any class information. Judge Hibbler denied the motion to stay and overruled the objection to this Court's order, and indicated that he wanted the case to move forward.

Despite that MRS did not prevail on its efforts to stop this case from proceeding, it has *still* made no apparent efforts to obtain the information compelled. Instead, MRS has focused its attention on pressuring the plaintiffs to settle or drop their claims, rather than on proving their defense.

MRS has issued three subpoenas so far in this case, all on March 16, 2011, and none pertaining to any of its defenses: one subpoena to US Cellular asking for plaintiffs' cell phone bills, and two issued to Christopher Mack's employer. <u>Appendix 1</u>. Apparently, defense counsel has a hunch that Christopher's employer pays for Christopher's cell phone. Plaintiff filed a motion to quash the subpoena and for a protective order the morning of March 17, 2011, which is pending before Judge Hibbler. The subpoena is obviously designed to place improper pressure on plaintiff; *plaintiff has the information* MRS seeks from plaintiff's employer, but MRS has not bothered to ask plaintiff.

The subpoenas to plaintiff's employer are not the only thing MRS has been busy with (instead of working on finding materials and information that support its affirmative defenses) Also on March 16, 2011, defense counsel sent plaintiff's counsel the letter attached as <u>Appendix 2</u>, which demands indemnity from plaintiffs' mother, for this lawsuit. The demand is frivolous, and is an obvious attempt to exert pressure on plaintiffs to drop the case or settle for fear of bankrupting their mother by proceeding.

The upshot is that MRS, which is represented by two national law firms, Sessions, Nathan, Fishman & Israel with 45 lawyers in nine offices, and Hinshaw & Culbertson with twenty-five offices and well over 300 lawyers (according to their websites), <u>has not issued a single subpoena in response to the order compelling it to "put up or shut up."</u> <u>Appendix 3</u> at 22.

Plaintiffs' counsel believes that defense counsel has not issued any subpoenas because it is hedging its bets that two things to happen: (1) this court will grant it more time to compile the information and materials subject to the order compelling it to provide such, and (2) Judge Hibbler will grant some future motion to stay the proceedings, even though such a motion has not been filed.

In other words, plaintiff reports that defendant has elected <u>not to even begin to try</u> to obtain class information, and has instead decided to focus its efforts on pressuring the plaintiffs. This is not good faith litigation.

Under these circumstances, where defendant has decided to focus litigation efforts elsewhere, plaintiff's counsel submits that an extension of time to provide the materials and information compelled would not be fair or justified.

2.    **MOTION FOR A ROLLING PRODUCTION**

Plaintiff also requests that this Court issue an order requiring MRS to produce the materials that it obtains, or has, on a rolling basis when it receives such.  MRS already has some responsive class information.  For example, Capital One accounts where MRS autodialed cell phone numbers that Capital One indicated were obtained through ANI.  "ANI" means Automatic Number Identification, and is a service that provides the telephone number of an incoming call to the call's recipient. Both David and Christopher's phone numbers were apparently obtained by Capital One through ANI, and MRS has had this information all along in its records.

Similarly, MRS' discovery responses indicate that it obtained some cell phone numbers it called through skip tracing. Certainly MRS does not need to contact creditors to provide information regarding these class members.

Plaintiff sent an email to defense counsel on March 16, 2011, asking for a rolling production of these materials, and defense counsel responded, incorrectly, that MRS cannot identify the class members without reviewing the creditor records.

These two methodologies for obtaining telephone numbers were provided to plaintiff by MRS in MRS' original response to interrogatory 5, which this Court compelled.  Appendix 4. None of the phone numbers within these two sets of data were obtained through a method that could even arguably be called consent.

There is therefore no justification for MRS to withhold this class data.  Further, the Court should compel its immediate production in order to stop MRS' improper litigation tactics (i.e. threatening the plaintiffs' mother and subpoenaing their employers) from scaring David and Christopher Mack into dropping or settling the case.  No matter how unjustified or improper a

threat to one's mother, it would be difficult for any person to continue to pursue a class case given the chance to get out quick with mom unharmed.

For these reasons, the Court should order MRS to produce the information that it has in its possession immediately, and to produce the materials it receives from third parties on a rolling basis.

**3.      MOTION TO CLARIFY TERMS OF MATERIALS MRS AGREED TO PRODUCE**

Plaintiff requests that the Court clarify that there are no "strings attached" to MRS' production of the documents, data or other information it committed to producing while briefing and arguing the motion to compel.  This includes so-called "placement data" for the class members. See response brief at 6, transcript of argument at 3, 6.

In other words, plaintiff will accept this data, because MRS unequivocally offered it, but it will only be accepted with the caveat that production of this information does not satisfy MRS' duty to produce full responses to the interrogatories or document requests that were compelled.

The information promised apparently includes more than 10 million "placement records."  Defendant has indicated that there were only 2 million calls to potential class members.

Thus, although MRS has indicated that it may be willing to provide this data, plaintiff would like the record clear that MRS' view of the commitment is apparently <u>not</u> to provide any data that is necessarily responsive to plaintiff's discovery requests, but to provide information concerning every single person MRS called, without regard to consent, whether it was a cell phone that was called or whether the number called was an Illinois phone number.

Plaintiff does not object to receiving these records, as long as they are provided in a format that is just as readable and searchable as MRS has the data. That means that every field MRS can search, plaintiff can search through Microsoft Access or Concordance litigation software, or some other software specified by MRS and accessible to plaintiff.

Because most of the ten million, or so, records MRS plans to produce are non-responsive to plaintiffs' requests, plaintiffs also would like to make clear that acceptance of these records does not constitute any waiver of any right to obtain real, substantive responses to the interrogatories and document requests that were compelled.

In other words, production of the data MRS has agreed to provide is acceptable, but is not a substitute for the list of persons who did not provide their phone numbers to MRS or the creditor.

**CONCLUSION**

WHEREFORE, plaintiff requests that the Court take note of the defendant's lack of efforts to provide information regarding its affirmative defenses, require MRS to produce whatever records it obtains, when it obtains such (including materials it already has), and hold that plaintiff's acceptance of the "placement records" is without prejudice to receive true responses to the discovery requests that were compelled.

Respectfully submitted,

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

# Appendix 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID MACK and )
CHRISTOPHER MACK, on behalf of )
themselves and others similarly situated, )
                                        )
          Plaintiff, )       Judge Hibbler
                                          )
      v.                     )       Case No.:  1:10-cv-04244
                                          )
MRS ASSOCIATES, INC., )       Magistrate Keys
                                          )
          Defendant. )

### NOTICE OF SUBPOENA

To:   Alexander H. Burke
       BURKE LAW OFFICES, LLC
       155 N. Michigan Ave., Suite 9020
       Chicago, IL 60601
       ABurke@BurkeLawLLC.com

PLEASE TAKE NOTICE that the attached subpoena was served on Regina Webster & Associates on March 16, 201, scheduling a deposition and document production for April 15, 2011 at 3:00 p.m., at which time you may appear.

Respectfully Submitted,

By: */s/ James K. Schultz*
Attorney for MRS Associates, Inc.

James K. Schultz
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLC
55 West Monroe, Suite 1120
Chicago, IL 60603
Telephone: (312) 578-0990
Facsimile: (312) 578-0991
E-Mail: jschultz@sessions-law.biz

Bryan C. Shartle
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLC
Lakeway Two, Suite 200
3850 North Causeway Boulevard
Metairie, LA 70002-7227
Telephone: (504) 828-3700
Facsimile: (504) 828-3737
E-Mail: disrael@sessions-law.biz

Attorneys for Defendant MRS Associates, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March, 2011, a copy of the foregoing **NOTICE OF SUBPOENA** was served electronically on the following attorney of record.

> Alexander H. Burke
> BURKE LAW OFFICES, LLC
> 155 N. Michigan Ave., Suite 9020
> Chicago, IL 60601
> (312) 729-5288
> (312) 729-5289 (fax)
> ABurke@BurkeLawLLC.com

> /s/ James K. Schultz
> Attorney for MRS Associates, Inc.

- 3 -

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID MACK and CHRISTOPHER MACK | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   10 C 4244 |
| MRS ASSOCIATES, INC. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Regina Webster & Associates, Inc., 8619 West Bryn Mawr Avenue, Suite 602, Chicago, Illinois  60631-3551

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See attached Rider.

| Place: Sessions, Fishman, Nathan & Israel, LLC | Date and Time: |
|---|---|
| 55 West Monroe St., Suite 1120<br>Chicago, Illinois  60603 | 04/15/2011 3:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  _____

*CLERK OF COURT*

                                                    OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*      MRS Associates, Inc.
_____ , who issues or requests this subpoena, are:

James K. Schultz, Sessions, Fishman, Nathan & Israel, LLC, 55 West Monroe Street, Suite 1120, Chicago, Illinois, 60603, (312) 578-0993; jschultz@sessions-law.biz

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 10 C 4244

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                               *Server's signature*

                                       _____
                                               *Printed name and title*

                                       _____
                                               *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

### (c) Protecting a Person Subject to a Subpoena.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

### (d) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

### (e) Contempt. 
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

*Mack v. MRS Subpoena Rider*

1. Any and all records, documents, statements, invoices, or receipts relating to the ownership, purchase, use, or reimbursement for any cell or mobile phone used by Christopher Mack, including, but not limited to, the 773-███-8862 or 773-███-9181 telephone numbers.

2. Any and all records, documents, memos, policies, guidelines or similar material that reflect or contain the company's policy regarding the use of cell phones by employees and/or reimbursement to the employee of the costs associated with the use of the cell phone.

3. Any and all records, documents, e-mails or other correspondence regarding Christopher's Mack use of a cell phone associated with the number 773-███8862 or 773-███9181 in performance of his job duties.

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

### NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID MACK and CHRISTOPHER MACK | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   10 C 4244 |
| MRS ASSOCIATES, INC. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) |   ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Regina Webster & Associates, Inc., 6160 North Cicero Avenue, Chicago, Illinois  60646

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See attached Rider.

| Place: Sessions, Fishman, Nathan & Israel, LLC<br>55 West Monroe St., Suite 1120<br>Chicago, Illinois  60603 | Date and Time:<br><br>04/15/2011 3:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  _____

|  | |
|---|---|
| *CLERK OF COURT* | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   MRS Associates, Inc.
_____, who issues or requests this subpoena, are:

James K. Schultz, Sessions, Fishman, Nathan & Israel, LLC, 55 West Monroe Street, Suite 1120, Chicago, Illinois, 60603, (312) 578-0993; jschultz@sessions-law.biz

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   10 C 4244

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____     _____
                                                      *Server's signature*

                                        _____
                                                      *Printed name and title*

                                        _____
                                                      *Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

*Mack v. MRS Subpoena Rider*

1.    Any and all records, documents, statements, invoices, or receipts relating to the ownership, purchase, use, or reimbursement for any cell or mobile phone used by Christopher Mack, including, but not limited to, the 773-███-8862 or 773-███-9181 telephone numbers.

2.    Any and all records, documents, memos, policies, guidelines or similar material that reflect or contain the company's policy regarding the use of cell phones by employees and/or reimbursement to the employee of the costs associated with the use of the cell phone.

3.    Any and all records, documents, e-mails or other correspondence regarding Christopher's Mack use of a cell phone associated with the number 773-███-8862 or 773-███-9181 in performance of his job duties.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID MACK and )
CHRISTOPHER MACK, on behalf of )
themselves and others similarly situated, )
     )
         Plaintiff, )    Judge Hibbler
     )
         v. )    Case No.: 1:10-cv-04244
     )
MRS ASSOCIATES, INC., )    Magistrate Keys
     )
         Defendant. )

### NOTICE OF SUBPOENA

To:    Alexander H. Burke
        BURKE LAW OFFICES, LLC
        155 N. Michigan Ave., Suite 9020
        Chicago, IL 60601
        ABurke@BurkeLawLLC.com

PLEASE TAKE NOTICE that the attached subpoena was served on U.S. Cellular

on March 16, 201, scheduling a deposition and document production for April 15, 2011

at 1:00 p.m., at which time you may appear.

Respectfully Submitted,

By: */s/ James K. Schultz*
        Attorney for MRS Associates, Inc.

James K. Schultz
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLC
55 West Monroe, Suite 1120
Chicago, IL 60603
Telephone: (312) 578-0990
Facsimile: (312) 578-0991
E-Mail: jschultz@sessions-law.biz

Bryan C. Shartle
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLC
Lakeway Two, Suite 200
3850 North Causeway Boulevard
Metairie, LA 70002-7227
Telephone: (504) 828-3700
Facsimile: (504) 828-3737
E-Mail: disrael@sessions-law.biz

Attorneys for Defendant MRS Associates, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March, 2011, a copy of the foregoing

**NOTICE OF SUBPOENA** was served electronically on the following attorney of

record.

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

/s/ James K. Schultz
Attorney for MRS Associates, Inc.

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

### NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID MACK and CHRISTOPHER MACK | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   10 C 4244 |
| MRS ASSOCIATES, INC. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  US Cellular (via fax at 866-669-0894)

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: All records showing that Julie Mack a/k/a Julie Schultz was an authorized user as to the telephone numbers or the accounts that included 773-■9181 or 773-■8862 for the period from September 1, 2009 through July 31, 2010.

| Place: Sessions, Fishman, Nathan & Israel, LLC, 55 W. Monroe St., Suite 1120, Chicago, Illinois  60603 | Date and Time: 04/15/2011 1:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  ___03/16/2011___

| *CLERK OF COURT* | | |
|---|---|---|
| _____ | OR | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   MRS Associates, Inc.
_____ , who issues or requests this subpoena, are:

James K. Schultz, Sessions, Fishman, Nathan & Israel, LLC, 55 West Monroe Street, Suite 1120, Chicago, Illinois 60603; (312) 578-0993; jschultz@sessions-law.biz

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   10 C 4244

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____         _____
                                              *Server's signature*

                                       _____
                                              *Printed name and title*

                                       _____
                                              *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# Appendix 2



SESSIONS
FISHMAN
NATHAN&
ISRAEL L.L.C.
ATTORNEYS AT LAW

BRYAN C. SHARTLE
Direct: (504) 846-7917
bshartle@sessions-law.biz

March 16, 2011

**Via U.S. Mail & Email**

Alexander H. Burke, Esq.
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, IL  60601

Re:  *David and Christopher Mack v. MRS Associates, Inc.*
Case No. 10-cv-04244, U.S.D.C., N.D. Ill.
**Indemnity Demand**

Dear Mr. Burke:

MRS Associates, Inc. ("MRS") hereby demands that Julie Schultz indemnify the company for all damages, liability, attorneys' fees, and costs relating to the above-referenced matter.

On June 25, 2010, Ms. Schultz executed the attached Release and Settlement Agreement ("Agreement"). *See* Exhibit A, Agreement.  Pursuant to the Agreement, Ms. Schultz released MRS from any claim she "ever had, or now has, against MRS by reason of any matter, cause or thing whatsoever occurring from the beginning of the world to the date of this Release, regarding any of the allegations made or that could have been made in the Lawsuit, including, but not limited to, the debt collection activities of MRS[.]" *Id.* at p. 2, ¶ 3.  Ms. Schultz represented and warranted "that she has not transferred, assigned or otherwise sold any portion of the claims or causes of action . . . which are related in any way to the Account or the collection attempts related to the Account, *and that she is the sole holder of such claims and causes of actions.*" *Id.* at pp. 2-3, ¶ 6 (emphasis added).  The Agreement requires Ms. Schultz "to indemnify and hold MRS harmless if [she] is found to have pursued any Released Claim against any Released Party." *Id.* at p. 2, ¶ 4.  The Agreement also requires Ms. Schultz to pay all attorneys' fees and costs incurred by MRS in enforcing the Agreement. *Id.* at p. 4, ¶ 13.

At the time the Agreement was executed, Ms. Schultz *and you* were aware that MRS called the 8862 and 9181 numbers.  Both Ms. Schultz and you understood that MRS was calling the two numbers *for Ms. Schultz* and in an attempt to collect *Ms.*

Lakeway Two    Suite 200    3850 North Causeway Boulevard    Metairie, Louisiana    70002-7227
(504) 828-3700    (504) 828-3737 F    www.sessions-law.com

CALIFORNIA ■ COLORADO ■ FLORIDA ■ ILLINOIS ■ LOUISIANA ■ NEW JERSEY ■ NEW YORK ■ TEXAS

SESSIONS FISHMAN NATHAN *&* ISRAEL LLC
ATTORNEYS AT LAW

Alexander H. Burke, Esq.
*David and Christopher Mack v. MRS Associates, Inc.*
Case No. 10-cv-04244, U.S.D.C., N.D. Ill.
March 16, 2011 – Page 2

*Schultz's Account.* Per the Agreement, Ms. Schultz confirmed (with your approval) that she was "the sole holder" of any claims and causes of action relating to these calls. *Id.* at pp. 2-3, ¶ 6. Based upon these representations, MRS settled its claims with Ms. Schultz.

Despite Ms. Schultz's representations, on July 8, 2010 (only 13 days after the Agreement was executed), the above-referenced lawsuit relating to the same 8862 and 9181 calls was filed against MRS by David and Christopher Mack, who now claim to own the claims and causes of action relating to the calls. Per the Agreement and as a matter of law, Ms. Schultz must indemnify MRS for the claims asserted by David and Christopher Mack. MRS expects Ms. Schultz to fully indemnify the company for all attorneys' fees and costs incurred to date and for any future damages, liability, and attorneys' fees incurred relating to David and Christopher Mack's claims.

Thanking you for your expected cooperation,

Very truly yours,

Bryan C. Shartle

BCS
Enclosures
\\sfnfs02\prolawdocs\9441\9441-27232\mack, david & christopher\375363.doc

# Exhibit A

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("Agreement") is made between Julie Schultz a/k/a Julie Mack ("Schultz") and MRS Associates, Inc. ("MRS").

WHEREAS, Schultz sued MRS individually and on behalf of a putative class of persons in the United States District Court for the Northern District of Illinois, Case No. 1:10-cv-01621 ("the "Lawsuit"), alleging that MRS violated the Fair Debt Collection Practices Act in the course of its attempts to collect a debt owed by Schultz (the "Account"), and;

WHEREAS, Schultz and MRS desire to settle, resolve and dispose of any and all of the claims asserted by Schultz in the Lawsuit in order to avoid expensive, time-consuming and uncertain litigation and;

WHEREAS, nothing contained herein is to be construed as an admission of liability on the part of any settling party. To the contrary, all settling parties specifically deny any liability for any of the claims alleged in the Lawsuit or related to the Account; and

WHEREAS, the terms of this Agreement represent the compromise of disputed claims in the Lawsuit and related to the Account, and do not in any way signify that there was wrongdoing on any party's part.

NOW, THEREFORE, in consideration of the foregoing, and in consideration of the covenants contained therein, Schultz and MRS agree as follows:

1.  Schultz shall file with the court a Stipulation to Dismissal no later than June 30, 2010. The Stipulation to Dismissal will have the effect of dismissing the Lawsuit with prejudice as to Julie Schultz, and without prejudice as to the putative class.

2.  MRS shall pay a total settlement of $6,000.00 (six thousand dollars and no cents), inclusive of fees and costs, as follows:

1

    a. $2,800.00 (two thousand eight hundred dollars), made payable to Julie Schultz, by June 29, 2010;

    b. $200.00 (two hundred dollars), made payable to Burke Law Offices, LLC, by June 29, 2010;

    c. $3,000.00 (three thousand dollars), made payable to Burke Law Offices, LLC, by July 29, 2010.

3.     Schultz, her heirs, personal representatives, successors and assigns, hereby release and forever discharge MRS, and its parent companies, subsidiaries, officers, directors, members, employees, agents, attorneys, predecessors, successors, and assigns ("Released Parties") of and from any and all manner of action and actions, reckonings, variances, trespasses, damages, judgments, decrees, executions, claims and demands whatsoever, in law, equity, or otherwise, Schultz ever had, or now has, against MRS by reason of any matter, cause or thing whatsoever occurring from the beginning of the world to the date of this Release, regarding any of the allegations made or that could have been made in the Lawsuit, including, but not limited to, the debt collection activities of MRS ("Released Claims").

4.     Schultz hereby agrees to indemnify and hold MRS harmless if Schultz is found to have pursued any Released Claim against any Released Party.

5.     The provisions of any state, federal, local or territorial law or statute providing expressly or in substance that releases shall not extend to claims, injuries or damages which are unknown or unsuspected to exist at the time are expressly waived by Schultz.

6.     Schultz represents and warrants that she has not transferred, assigned or otherwise sold any portion of the claims or causes of action that she is alleging in this Lawsuit, or

2

which are related in any way to the Account or the collection attempts related to the Account, and that she is the sole holder of such claims and causes of actions.

7.    Schultz represents and warrants that there have been no representations or promises made by MRS to her on which she relied in connection with this Agreement other than what is set forth herein in writing. Schultz further represents and warrants that she is not being induced to enter into this Agreement by anything other than the written words contained in this Agreement.

8.    Schultz represents and warrants that she had an adequate opportunity to review all aspects of this Agreement with an attorney of her choosing, that she understands all the provisions of the Agreement, and that she is voluntarily accepting its terms.

9.    Should any clause, sentence, paragraph or other part of this Agreement be finally adjudged by any court of competent jurisdiction to be unconstitutional, invalid or in any way unenforceable, such adjudication shall not affect, impair, invalidate or nullify the Agreement, but shall affect only the clause, sentence, paragraph or other parts so adjudged.

10.    This Agreement shall be governed by, and construed in accordance with the substantive law of the State of Illinois.

11.    This Agreement constitutes the entire agreement and understanding between the parties thereto and shall not be modified or altered except by written instrument duly executed by the parties thereto.

12.    Schultz agrees to keep strictly confidential and not to disclose the names or any identifying information of MRS concerning this settlement to any person or on any medium other than to the undersigned's lawyer, immediate family members, accountant,

3

income tax preparer or similar professional as well as taxing authorities if required. To the extent the undersigned is required to disclose this information to such professionals, the undersigned shall instruct such professionals that this information is to be kept strictly confidential.

13.     If an action to enforce the provisions of this settlement agreement is required the prevailing party shall be entitled to attorney's fees and costs, except for the confidentiality provisions herein.

14.     This Agreement may be signed in counterparts and facsimile signatures will be deemed originals.


**(SIGNATURE PAGE TO FOLLOW)**


Dated: ___June 25ᵗʰ___, 2010

MRS Associates, Inc.

4

By: _____

Its: _____

Sworn to before me this

25th day of June, 2010

_Maria C. Hiester_

MARIA CHRISTINA HIESTER
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES SEPT 4, 2013

Dated: _____, 2010

_____

Julie Schultz

Sworn to before me this

_____ day of June, 2010

_____

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("Agreement") is made between Julie Schultz a/k/a Julie Mack ("Schultz") and MRS Associates, Inc. ("MRS").

WHEREAS, Schultz sued MRS individually and on behalf of a putative class of persons in the United States District Court for the Northern District of Illinois, Case No. 1:10-cv-01621 ("the "Lawsuit"), alleging that MRS violated the Fair Debt Collection Practices Act in the course of its attempts to collect a debt owed by Schultz (the "Account"), and;

WHEREAS, Schultz and MRS desire to settle, resolve and dispose of any and all of the claims asserted by Schultz in the Lawsuit in order to avoid expensive, time-consuming and uncertain litigation and;

WHEREAS, nothing contained herein is to be construed as an admission of liability on the part of any settling party.  To the contrary, all settling parties specifically deny any liability for any of the claims alleged in the Lawsuit or related to the Account; and

WHEREAS, the terms of this Agreement represent the compromise of disputed claims in the Lawsuit and related to the Account, and do not in any way signify that there was wrongdoing on any party's part.

NOW, THEREFORE, in consideration of the foregoing, and in consideration of the covenants contained therein, Schultz and MRS agree as follows:

1.      Schultz shall file with the court a Stipulation to Dismissal no later than June 30, 2010.  The Stipulation to Dismissal will have the effect of dismissing the Lawsuit with prejudice as to Julie Schultz, and without prejudice as to the putative class.

2.  .   MRS shall pay a total settlement of $6,000.00 (six thousand dollars and no cents), inclusive of fees and costs, as follows:

1

06/25/2010  10:19    3127295289              BURKE LAW OFFICES              PAGE  03/06

   a. $2,800.00 (two thousand eight hundred dollars), made payable to Julie
      Schultz, by June 29, 2010;

   b. $200.00 (two hundred dollars), made payable to Burke Law Offices, LLC, by
      June 29, 2010;

   c. $3,000.00 (three thousand dollars), made payable to Burke Law Offices, LLC,
      by July 29, 2010.

3.      Schultz, her heirs, personal representatives, successors and assigns, hereby release
and forever discharge MRS, and its parent companies, subsidiaries, officers, directors,
members, employees, agents, attorneys, predecessors, successors, and assigns ("Released
Parties") of and from any and all manner of action and actions, reckonings, variances,
trespasses, damages, judgments, decrees, executions, claims and demands whatsoever, in
law, equity, or otherwise, Schultz ever had, or now has, against MRS by reason of any
matter, cause or thing whatsoever occurring from the beginning of the world to the date
of this Release, regarding any of the allegations made or that could have been made in the
Lawsuit, including, but not limited to, the debt collection activities of MRS ("Released
Claims").

4.      Schultz hereby agrees to indemnify and hold MRS harmless if Schultz is found
to have pursued any Released Claim against any Released Party.

5.      The provisions of any state, federal, local or territorial law or statute providing
expressly or in substance that releases shall not extend to claims, injuries or damages
which are unknown or unsuspected to exist at the time are expressly waived by Schultz.

6.      Schultz represents and warrants that she has not transferred, assigned or otherwise
sold any portion of the claims or causes of action that she is alleging in this Lawsuit, or

2

Jun 25 2010 4:53PM    MOTOR WORLD, INC.        6305452255                                          p.3

which are related in any way to the Account or the collection attempts related to the Account, and that she is the sole holder of such claims and causes of actions.

7.  Schultz represents and warrants that there have been no representations or promises made by MRS to her on which she relied in connection with this Agreement other than what is set forth herein in writing.  Schultz further represents and warrants that she is not being induced to enter into this Agreement by anything other than the written words contained in this Agreement.

8.  Schultz represents and warrants that she had an adequate opportunity to review all aspects of this Agreement with an attorney of her choosing, that she understands all the provisions of the Agreement, and that she is voluntarily accepting its terms.

9.  Should any clause, sentence, paragraph or other part of this Agreement be finally adjudged by any court of competent jurisdiction to be unconstitutional, invalid or in any way unenforceable, such adjudication shall not affect, impair, invalidate or nullify the Agreement, but shall affect only the clause, sentence, paragraph or other parts so adjudged.

10.  This Agreement shall be governed by, and construed in accordance with the substantive law of the State of Illinois.

11.  This Agreement constitutes the entire agreement and understanding between the parties thereto and shall not be modified or altered except by written instrument duly executed by the parties thereto.

12.  Schultz agrees to keep strictly confidential and not to disclose the names or any identifying information of MRS concerning this settlement to any person or on any medium other than to the undersigned's lawyer, immediate family members, accountant,

3

income tax preparer or similar professional as well as taxing authorities if required.  To the extent the undersigned is required to disclose this information to such professionals, the undersigned shall instruct such professionals that this information is to be kept strictly confidential.

13.    If an action to enforce the provisions of this settlement agreement is required the prevailing party shall be entitled to attorney's fees and costs, except for the confidentiality provisions herein.

14.    This Agreement may be signed in counterparts and facsimile signatures will be deemed originals.

### (SIGNATURE PAGE TO FOLLOW)

Dated: _____, 2010

MRS Associates, Inc.

4

By: _____

Its: _____

Sworn to before me this

_____ day of June, 2010

_____

Dated: _June 25_, 2010

_____
Julie Schultz

Sworn to before me this

_25_ day of June, 2010

OFFICIAL SEAL
JAMES G PICHA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/19/13

5

# Appendix 3

 1  **TRANSCRIBED FROM DIGITAL RECORDING**

 2              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 3                     EASTERN DIVISION

 4  DAVID MACK and CHRISTOPHER MACK, on  )
    behalf of themselves and other       )
 5  similarly situated, and KIMBERLY     )
    HOVANEC,                             )
 6                                       )
                  Plaintiffs,            )
 7                                       )
                  vs.                    )  No. 10 C 4244
 8                                       )
    MRS ASSOCIATES, INC.,                )  Chicago, Illinois
 9                                       )  February 25, 2011
                  Defendant.             )  9:49 A.M.
10
                  TRANSCRIPT OF PROCEEDINGS - Ruling
11        BEFORE THE HONORABLE ARLANDER KEYS, Magistrate Judge

12  APPEARANCES:

13  For the Plaintiffs:      BURKE LAW OFFICES, LLC
                             155 North Michigan Avenue
14                           Suite 9020
                             Chicago, Illinois  60601
15                           BY:  MR. ALEXANDER HOLMES BURKE

16  For the Defendant:       HINSHAW & CULBERTSON
                             222 North LaSalle Street
17                           Suite 300
                             Chicago, Illinois  60601-1081
18                           BY:  MR. JAMES CONSTANTINE VLAHAKIS

19
                    PAMELA S. WARREN, CSR, RPR
20                     Official Court Reporter
                     219 South Dearborn Street
21                          Room 1928
                     Chicago, Illinois   60604
22                        (312) 294-8907

23  **NOTE:  Please notify of correct speaker identification.
    FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS
24  UNINTELLIGIBLE.**

25

1      (Proceedings held in open court:)

2          THE CLERK:  10 C 4244, Mack versus MRS Associates,

3    ruling.

4          THE COURT:  Good morning, counsel.

5          MR. VLAHAKIS:  Good morning, your Honor.  James

6    Vlahakis, V as in Victor, l-a-h-a-k-i-s, on behalf of

7    defendant.

8          THE COURT:  Good morning, Mr. Vlahakis.

9          MR. BURKE:  Good morning, Judge.  Alexander Burke for

10   the plaintiff.

11         THE COURT:  Good morning.

12         Okay.  I received your response to the plaintiff's

13   motion to compel, Mr. Vlahakis, and -- well, I'm -- I have gone

14   through it, and -- how should I say it? -- not that impressed

15   with your argument here.  I have seen this argument many times

16   before in other cases of this court.  And while it is

17   understandable -- the real issue here is whether these people

18   gave consent to your client to contact them by cell phone.

19   Right?

20         MR. VLAHAKIS:  Yes and no.  I think the issue is

21   whether they provided consent to the underlying creditor,

22   including Capital One, which would be transferrable to my

23   client, or whether during the collection process, after MRS

24   initiated the collection calls and collection letters, whether

25   that debtor then contacted MRS and consented to being called

1  via cell phone.

2      I do appreciate you giving me the opportunity to

3  respond in writing.  I do think a distinction with at least the

4  Pipe decision that you ruled on before, was the Seventh Circuit

5  case in -- and I'm probably going to mangle the pronunciation

6  of it, Cheverit or we can call it the Williams Pipe case.

7      THE COURT:  Right.

8      MR. VLAHAKIS:  That would relate to the first

9  component that I discuss where the consent to call on the cell

10 phone may have been provided to, in this instance, Capital

11 One.  And if the (unintelligible) reached out to Capital One --

12 I have told under -- in no uncertain terms, you need to issue a

13 subpoena because we're not going to voluntarily provide those

14 records to you.

15     As it relates to what records MRS may have, Mr. Burke

16 has been very cooperative with me.  We have tried to work

17 things out.  I had proposed a rolling production of placement

18 notes which would assist us -- when I say us, both parties --

19 in showing what numbers were received initially from Cap One

20 and then other creditors to show that we did at least get

21 numbers coming in, and that we didn't necessarily skip trace

22 them.

23     The more difficult issue with just the MRS consent

24 issues, then Mr. Burke has asked for collection notes, which

25 may or -- excuse me -- may or may not demonstrate consent.  So

1    for each individual count, we would have to go and say, okay,

2    did this person call in just some kind of coded message that

3    the collector has for that.

4          I have tried to discuss that with my client, that

5    maybe we should sort of produce these records.  I'm in a very

6    difficult situation right now because there is another case

7    pending in this district that is -- there is a pending motion

8    for reassignment that's being litigated by a different law firm

9    who is operating under a different insurance policy.  I was

10   just told -- Thursday?  Wednesday?

11         MR. BURKE:  This week.

12         THE COURT:  Is this your case, Mr. Burke?

13         MR. BURKE:  No, it is -- believe or not it is my old

14   boss Keith Kehoe's case.

15         THE COURT:  All right.

16         MR. VLAHAKIS:  Well, anyway, I get a phone call, and

17   it is from the Sessions law firm, and they said that --

18   although I hadn't heard this from CNA Insurance, which employed

19   me -- that that Sessions law firm is going to be taking over

20   both of these cases.

21         Now what's difficult about that is Alex and I were

22   trying to work out, well, what can we do about the production

23   in a timely manner on a rolling basis of (unintelligible) the

24   collection.

25         I do understand his point, at least with regard to the

1    internal documents.  We may have to do some gymnastics to be

2    able to cull through those and demonstrate consent, but I

3    believe that we are willing to do that.  I just don't have

4    authority to do that right now.

5           If this Court is ruling on this issue -- two issues,

6    as I see it, what can MRS produce that it has control over,

7    that's something that, you know, we're willing to look into.

8           The other issue I believe that this Court cannot do,

9    respectfully, is order us, MRS, to produce records that it has

10   been told by Cap One we can't have access to, meaning Cap One's

11   internal collection notes.

12          I have been --

13          THE COURT:  Why don't you subpoena Cap One?

14          MR. VLAHAKIS:  Yes.

15          THE COURT:  And if they don't produce them why -- file

16   a motion to show cause why they should not be held in contempt.

17          MR. VLAHAKIS:  And that's what I --

18          THE COURT:  I bet that will get their attention.  But

19   it is not going to help your client because your client

20   is -- they are your client's customer.

21          MR. VLAHAKIS:  Yes.  I understand.

22          THE COURT:  I know you don't want to do that.

23          MR. VLAHAKIS:  But we are going to do that.

24          THE COURT:  Okay.

25          MR. VLAHAKIS:  And if -- with the caveat that I am

1  representing MRS at this day, without being told by CNA you're

2  done with the case, I'll be issuing a subpoena in --

3  probably on Monday.

4           THE COURT:  Okay.

5           MR. VLAHAKIS:  I assume that that's probably the same

6  approach that the new attorneys are going to take, if they jump

7  into the case at this juncture.

8           But the issue is then, okay, we'll be doing that.  I

9  think that might moot out that issue of the motion to compel.

10          I guess what's left right now is what time frame

11  Mr. Burke would agree to for the placement notes, which I would

12  propose on a 30-day rolling basis.

13          I can probably get that stuff sooner.  What I have

14  talked to Mr. Burke about is, first, from an ESI standpoint,

15  what format does he need to see those records in so at least he

16  will have something that's readable.

17          I have been told that the placement records that he

18  may receive are going to be in the number probably -- over the

19  class period 10 million placement records.

20          THE COURT:  Uh-huh.

21          MR. VLAHAKIS:  And we're going to have to be able to

22  figure out something on that.

23          I need to reconfirm to make sure that's the number.

24  But that's what I am being told.  But my question probably got

25  sent down the line to three or four people, so making sure it

1    didn't get mangled in translation, that that is the number.

2             If it is a smaller number, great.  But we will be

3    producing that.

4             But the other issue then I think really remains is

5    what does this Court want to do with regard to the production

6    of the internal collection notes.  I have had difficulties in

7    cases with Mr. Burke where he's tried to work these things out

8    with me, where we tried to find a search protocol that helps us

9    find something better.  And we were outside in the hall still

10   trying to work on that.

11            So I don't know if it is an issue of, you know,

12   entering and continuing this to allow us to see -- I see him

13   shaking his head, and I understand his point -- what we can do

14   to be able to whittle this down.  Because, obviously, from a

15   numerosity standpoint, he wants to know does he have enough

16   people to be able to certify a class.

17            And I think that there is a -- there are more than 40

18   people clearly who did not provide their consent to Cap One or

19   to MRS.  The issue then gets into the entanglement of Rule 23

20   when we have to do sort of the mini trial within the mini trial

21   of who provided consent for all of these millions of records.

22   That may suggest a class certification isn't proper because all

23   the work would have to have been done after the class is

24   certified, and --

25            THE COURT:  Mr. Burke will probably argue that he

```
 1   believes that none of them provided consent.  The burden is on
 2   you to prove that they did.
 3        MR. VLAHAKIS:  I agree that the -- yeah, he's argued
 4   that the burden is on us.
 5        THE COURT:  And I'll agree with you again that you are
 6   probably going to find some that consented.  But the burden has
 7   been on you, you're the one that raised the affirmative defense
 8   of consent.  And since you raised that issue, then the
 9   plaintiff has the right to get the records or the documents to
10   show that who did consent and who didn't.
11        I know it is probably millions of people, at least
12   hundreds of thousands of people more than likely, right?  Or
13   thousands.
14        MR. VLAHAKIS:  Yes.  Well, here's one way of looking
15   at it then.  I think maybe the client doesn't need to go
16   through its own internal records to determine this issue, it
17   may be an issue of what records Cap One can provide to us.
18   Because if Cap One is providing, for instance, applications
19   that show the numbers, in this case what with Mr. Mack,
20   Christopher Mack, and Julie Mack, they did fill out
21   applications, but it turns out that those numbers were either
22   landlines or lines they no longer used.
23        So to the extent we called because those numbers were
24   provided to Cap One, those weren't the cell phones at issue.
25        So we got numbers from other sources, as I understand
```

1    things, that demonstrate there was not a consent for Chris and

2    Julie at this point.  I'm still trying to find out if there was

3    complete compliance from Cap One.

4         But there has got to be a way, I think, from what Cap

5    One can produce to us to say, Cap One, here's the placement

6    notes.  We have those.  Here's something that Cap One has on

7    their files and maybe cull through a small subset of that to

8    start finding out why -- whether through sampling or something,

9    that there is going to be definable class.

10        And at a certain point potentially saying stop, if he

11   has enough numbers.

12        MR. BURKE:  On page 4 of our motion, Judge --

13        THE COURT:  Uh-huh.

14        MR. BURKE:  -- we quote three of the interrogatories

15   that we're moving to compel.

16        THE COURT:  Okay.  Go ahead.

17        MR. BURKE:  The first interrogatory, Number 5, asked

18   them to give us a list of everybody that they didn't get the

19   phone number from the owner of the cell phone.

20        Number 6 asks for what source --

21        THE COURT:  Did you obtain --

22        MR. BURKE:  -- did they get the number.

23        7 says, all right, well, if you claim that any of

24   those people in the previous two interrogatories provided

25   consent, tell us how -- why you think that.

1          I think that this -- you know, we're not just asking

2    for all the records.  We have sort of refined this even since

3    (unintelligible), and it should be -- you know, it is -- I

4    think it is more -- it is more focused.  It is going to give me

5    a better result.  It is going to tell me precisely who is in my

6    class, and --

7          THE COURT:  And that is certainly narrower --

8          MR. BURKE:  Yes.

9          THE COURT:  -- than your request in (unintelligible).

10         MR. BURKE:  Yes.

11         THE COURT:  All right.

12         MR. BURKE:  And this has been -- we had a

13   corresponding document requests that ask for the documents, you

14   know, relating to these groups of people.

15         For example, with respect to 7, all right, well, you

16   contend that there are documents that show that these people

17   consented, produce them.

18         So I think that defense counsel is proposing that they

19   just produce a bunch of stuff.  You know, the placement

20   records.  And we would be happy to receive the placement

21   records, but we want to know -- I mean, these are contention

22   interrogatories.

23         THE COURT:  Uh-huh.

24         MR. BURKE:  Discovery ends in May.  And it has been

25   open since the summer.  We issued these requests in the summer,

1    first day possible, and we have been discussing these issues

2    since then.

3         I would request that the defendant be compelled to

4    produce responses to these interrogatories and document

5    requests --

6         THE COURT:  To the best of their ability.

7         MR. BURKE:  -- to the best of their ability within 30

8    days --

9         THE COURT:  And if their answer is, we don't have the

10   information, we tried to get it from Capital One.

11        MR. BURKE:  Well, I would -- I mean, I think we're

12   entitled to try to get it, but I don't think they are going to

13   get it.  But if they get it --

14        THE COURT:  Through a subpoena they would probably get

15   it.

16        MR. BURKE:  That would be fine with me.

17        You know --

18        THE COURT:  But at the same time you don't want

19   to -- they don't want, as Capital One is their client, their

20   customer they don't want to upset Capital One with a subpoena.

21   But sometimes you have to do that.

22        MR. VLAHAKIS:  I understand that.

23        THE COURT:  All right.

24        MR. VLAHAKIS:  I think -- the point of this being a

25   contention interrogatory and discovery closing in May, I think

1    we should be entitled to more time.  I understand he issued it

2    issue, but we -- we fought over it.  We had, you know, spirited

3    but professional discussions over what we can produce.  And in

4    light of the looming class cert deadline, which he pushed on

5    himself, he had to move to compel.

6         I understand that in these kinds of cases that a class

7    cert motion is filed, and that the day the complaint is filed

8    something doesn't happen to (unintelligible).

9         I understand though that in doing so, we put ourselves

10   under time constraints.  For instance, Judge Hibbler then

11   struck the motion for class certification a few weeks ago

12   saying it is been on my docket too long.

13        I have seen cases out there saying that once that

14   class cert is filed, then that could preclude the Rule 68 pick-

15   off attempt.

16        I think though by putting that class cert, it

17   artificially requires too much work to be done early on in the

18   case when we still haven't determined yet who has got

19   standing.  Is it Chris?  Is it David?

20        Thirty days is probably too short.  I think that Alex

21   has tried to narrow down these requests from (unintelligible).

22   And I have seen in every case he has somehow -- there is new

23   discovery requests because he's honing it better and better

24   trying to get (unintelligible) maybe not necessarily for my

25   client, but these are for him to find a class.

1        But I think though that he knows by the nature of the

2    business that it is not that simple to say, wait, how do

3    records not show something?  Because it is sort of like, not to

4    sound too casual, but the when did you stop beating your wife

5    argument?

6        It is not that simple to hit a button and print out

7    these records and show here's numbers you didn't get.  We have

8    to sort of compare what we got from Cap One to what Cap One

9    gave to us and then do that for all of our creditors.  Then go

10   through what we got showing somebody else consenting.

11       But just because we may have called -- we may have

12   received numbers, and they may have been bad numbers that were

13   disconnected, we then performed -- we then got a call back on

14   the letter we sent and said, please call me back on my cell

15   phone.

16       So I think a more robust, larger time period would

17   allow us to work something out.  And it may, I think, in all

18   reasonableness allow Mr. Burke and I to work through something,

19   to the extent I'm still on the case for a while, he's working

20   with the other law firm that might be coming in, but I just

21   think 30 days is -- probably isn't going to be enough time to

22   get this done.

23       And, again, it is contention interrogatories.  The

24   case is -- you know, discovery closes in May.  Chris Mack might

25   be brought in from his bankruptcy, might not.  His client has

1    already rejected a very, very, very robust pick-up attempt.  So

2    I don't think there is going to be this issue of there has to

3    be a class cert motion out there to keep this case going.

4           I understand that he wants to get this discovery, but

5    it is just not that simple.  And I appreciate this Court

6    allowing me to try to explain it this way.  But Cap One I don't

7    think is going to be upset about this, but they want the legal

8    process to take place.

9           I will issue that subpoena.  I will be in contact with

10   their legal counsel.  I tried, you know, to (unintelligible)

11   them over to get these records, and I couldn't get them.  And I

12   think the next --

13          THE COURT:  Is Capital One the -- is that the only

14   client here?

15          MR. VLAHAKIS:  No.  There is -- that's the nature of

16   this kind of request that it could relate to -- the class isn't

17   just anybody that had an account with Cap One that MRS may have

18   called up without consent.  We have to go through with their

19   other creditors and do the same thing.

20          Mr. Burke, though, might find that there might be

21   enough people that would call Cap One that the class might

22   relate to Cap One.  I don't know.

23          THE COURT:  Well, before you -- you arguably you have

24   got (unintelligible).

25          MR. VLAHAKIS:  Granted, that then it doesn't buy my

1    client (unintelligible) in the case there is a settlement, but

2    we have to work through all that.

3         The issue also that we're finding out is that by going

4    through all the various creditors that we may have worked with,

5    there is various credit agreements with all of those companies

6    that may have had, for instance, in our case an arbitration

7    clause.

8         So to the extent Chris Mack comes back in this case,

9    he may be subject to arbitration clause.

10        David Mack is a better plaintiff for Mr. Burke because

11   David Mack never had an account with Cap One, and so he

12   wouldn't be bound by an arbitration clause.

13        THE COURT:  (Unintelligible).

14        MR. VLAHAKIS:  But I mean --

15        THE COURT:  Okay.  Mr. Burke, let me hear from you.

16   All right?

17        MR. BURKE:  We have got about two months left in

18   discovery of like a nine-month discovery period.

19        I filed this motion three weeks ago.  I figured we'd

20   have enough time for the defendant to have about 30 days to

21   give me the stuff and then for me to do follow-up discovery if

22   necessary.

23        I mean, this is -- it is an affirmative defense that

24   was raised in July and subject to Rule 11.  We have already

25   established, I think, and I'm sure that they would disagree,

1   that there is no consent for the plaintiff.  There are a lot

2   more people like the plaintiff, and I want to know who they

3   are.

4           I would request that your Honor compel the request

5   that I am asking for and set a cutoff date for all materials

6   having to do with the affirmative defense 30 days out.

7           THE COURT:  Okay.  Well, the motion to compel, I'm

8   granting -- I'm granting the motion to compel.  The question is

9   how much time are you going to need to -- reasonably to get

10  this done, including subpoenaing of Capital One.

11          MR. VLAHAKIS:  Uh-huh.

12          THE COURT:  And that might -- if we have to go into

13  enforcement of that subpoena, then that could affect the dates

14  that you have to produce.

15          But I expect you to, Mr. Vlahakis, to -- and I do

16  commend both of you guys, you know, (unintelligible), your

17  clients, that you guys are getting along.  That makes it

18  better.  Okay?

19          But I have --

20          MR. BURKE:  For us too.

21          THE COURT:  Right.  You are going to have to exert

22  some pressure, I guess, on -- you know, I have seen these

23  affirmative defenses in so many cases, but you have got to

24  prove it.  You have got to prove that you have that defense.

25          And so I'm going to conduct -- let's give them six

1  weeks, Alicia, rather than 30 days.  45 days.

2         THE CLERK:  April 8th.

3         THE COURT:  April 8th to get that information to

4  Mr. Burke.

5         And if you are having difficulties in doing that --

6  well, certainly I expect you to issue your subpoena immediately

7  to Capital One.  And if they don't comply or they give you some

8  push back, file your motion to compel or order to show cause

9  why they shouldn't be held in contempt for not complying with

10  that subpoena.  So we're going to do it in six weeks.

11         What was it again, April?

12         THE CLERK:  8th.

13         THE COURT:  April 8th.  By that time you will have

14  certainly given Mr. Burke something to -- as for lack of a

15  word -- something to chew on.

16         But, you know, if we have to go into the enforcement,

17  we'll do it.

18         MR. VLAHAKIS:  One point of clarification though.  I'm

19  always uncomfortable with a -- sort of an omnibus order saying

20  motion to compel granted.  And to the extent that the motion

21  is --

22         THE COURT:  I rejected your argument all throughout.

23  Okay?

24         MR. VLAHAKIS:  Uh-huh.

25         THE COURT:  Okay?  So I guess I looked at the

1   reasonableness of the motion to compel -- I mean, the discovery

2   requests.  I looked at them, and I found they were

3   unreasonable.

4           MR. VLAHAKIS:  Well, my point, and I'm just drawing to

5   one particular one, I understand he's asking the identity of

6   the sources for the numbers and the consent of the numbers.

7   But he's also asking for, which I believe we have objected to

8   and discussed at the last hearing, the list of all the numbers

9   and people called, time called, and whatnot.  And I think that

10  is something he doesn't need at this juncture.  It is premature

11  to have a class list.

12          His primary motivation of that what -- with that was

13  he was worried that we were going to pick up David and Chris

14  Mack.  It serves no utility now to have that.  It is a

15  tremendous amount of data.  Privacy concerns and whatnot.

16          I'm not even sure I could provide that to him subject

17  to the contract we have with Cap One and other creditors.

18          So that's why, at least on the motion to compel, yes,

19  we have worked with issuing the subpoena, worked with providing

20  our internal records to him, but not giving him this entire

21  list of all the types and times that people were called.  It is

22  just -- that's something that if we need to --

23          THE COURT:  Do you need that now, Mr. Burke?

24          MR. BURKE:  I do, Judge.

25          THE COURT:  If we are working on the consent issue?

1          MR. BURKE:  I do, Judge.

2          First of all, these people -- I don't think we'll need

3    them, but these people are all potential witnesses, fact

4    witnesses.

5          They are.

6          THE COURT:  Okay.

7          MR. VLAHAKIS:  It is preserved.

8          MR. BURKE:  They --

9          MR. VLAHAKIS:  It has been preserved

10          MR. BURKE:  They -- these records are going to show

11    the number of calls for each person.  Each call is a violation.

12          THE COURT:  Right.

13          MR. VLAHAKIS:  We're preserving it.

14          MR. BURKE:  Each -- the records are also going to

15    show -- for example, the recordings of phone calls, they are

16    going to show who was in our subclass, which is -- consists of

17    people for whom messages were left for someone other than the

18    person who was identified in the voicemail greeting.

19          MR. VLAHAKIS:  Well --

20          MR. BURKE:  At the time --

21          MR. VLAHAKIS:  Go ahead.  Sorry.

22          MR. BURKE:  These records are relevant, they are

23    discoverable, and we would like them now.

24          THE COURT:  They certainly -- they are discoverable.

25    But Mr. Vlahakis is arguing that you are not entitled to them

1    now.  You shouldn't have to get them now.

2         MR. VLAHAKIS:  We already spent, at the time of filing

3    my answers to discovery, 200 hours in compiling, saving, moving

4    data to servers, buying new servers, holding everything.

5    (Unintelligible) 100 hours doing -- just working on other stuff

6    on this case since then.  All that stuff is being preserved

7    under -- absolutely certain of that.

8         So to the extent we're preserving -- we're providing

9    it to him, that would be just a Herculean task at this point.

10         If he wants (unintelligible) some issues, we can do

11    that.  If we identify people who have consent -- we believe

12    consented, then I understand the relevancy of producing that

13    and litigating that issue, whether Joe Blow or John Doe

14    consented, fine, we can go to that person as a witness.

15         But right now to say, give us these, you know,

16    millions of records is just sort of ridiculous.

17         MR. BURKE:  This is exactly what -- this is what all

18    the requests are asking for, identify the people.  Show us the

19    documents.

20         They can't give us that information without providing

21    names and addresses and all the other information.

22         MR. VLAHAKIS:  But what he's asking for in just

23    the -- is every record, recording, outbound data call you

24    have.  He's asking -- he is -- to give it all at once.  I

25    understand his point, give us stuff that shows consent.  We'll

1    do that.  But just to give him every single thing of every

2    single call and every single recording of every single call

3    makes absolutely no sense.  We're talking probably terabytes of

4    data.

5         MR. BURKE:  As I explained earlier, our requests are

6    narrowed.  Interrogatories 5, 6, and 7 ask for -- that's a

7    series of specific requests asking, first, for the -- a list of

8    people that didn't give the original creditor or MRS their

9    phone number.

10        The second, identify where those phone numbers came

11   from if they didn't come from the recipient.

12        And, third, if you think that the subset of people

13   that you -- that in the previous interrogatory provided prior

14   expressed consent, tell us why.

15        We're not asking for -- we don't want to know about

16   people who gave their cell phone number to Capital One or MRS.

17        We're putting them to their test.  This is their

18   affirmative defense.  We want to know the evidence that

19   supports it, if there is any.

20        I don't think they can get it.  I don't think they

21   have it.  I don't think they ever had it.  And I think that

22   this whole thing is a red herring.

23        But I guess they are going to keep trying.  But we

24   can't do any of this without receiving information about these

25   people.

1          THE COURT:  Yeah, I have got to agree with that,

2     counsel.  I know that in prior cases these same issues have

3     been coming up.  I mean, I certainly don't blame you for

4     imposing your affirmative defense and hoping that you can -- or

5     believing that you can come up with the evidence to show that

6     there was consent.

7          But, on the other hand, we do have this -- you know,

8     there is a Rule 11 issue here also that we have to be cognizant

9     of.  It is one of those things that you either put up or you

10    shut up.  If you can't prove it, you know, that is problematic

11    for you.

12          MR. VLAHAKIS:  Uh-huh.

13          THE COURT:  Okay?  And I would guess that somewhere

14    along the line eventually you are going to find that some of

15    these people consented.  But that's on you.  That's your

16    burden.

17          So I'm granting the motion to compel in its entirety.

18    And if you have some problems in completely complying with

19    that, you can come back to the Court and explain that.

20          MR. VLAHAKIS:  Your Honor --

21          THE COURT:  But I expect you to comply by -- April

22    8th, Alicia?

23          THE CLERK:  8th.

24          THE COURT:  -- April 8th.

25          Let's have another status about two weeks after that.

1        THE CLERK:  April 22nd at 9:00 A.M.

2        THE COURT:  And April 22nd.

3        See you then.

4        MR. BURKE:  Thank you.

5        MR. VLAHAKIS:  Thank you very much.

6    (Which concluded the proceedings in the above-entitled

7    matter.)

8                        CERTIFICATE

9        I HEREBY CERTIFY that the foregoing is a true, correct

10   and complete transcript of the proceedings had at the hearing

11   of the aforementioned cause on the day and date hereof.

12

13   /s/Pamela S. Warren               March 8, 2011
     Official Court Reporter                Date
14   United States District Court
     Northern District of Illinois
15   Eastern Division

16

17

18

19

20

21

22

23

24

25

# Appendix 4

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DAVID MACK, and )
CHRISTOPHER MACK, on behalf of ) 1:10-cv-4244
themselves and others similarly situated, )
        Plaintiffs, ) Judge Hibbler
v. ) Magistrate Judge Keys
     )
MRS ASSOCIATES, INC., )
        Defendant. )

## DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES

NOW COMES the Defendant, MRS ASSOCIATES, INC. ("Defendant"), by and through its undersigned counsel, and for its Answers and Objection to Plaintiff's Interrogatories, states as follows:

### General Objections

1. Objection, Plaintiff has not adequately defined the phrase "predictive dialer." Subject to and without waiving this objection, Defendant lacks knowledge or information sufficient to answer whether a "predictive dialer" was used as this term is contemplated by Plaintiff. Defendant, however, states that it operates a telephone dialing system which had the capability of leaving a prerecorded voice message under certain circumstances and that its dialing software can dial telephone numbers from a list or "dialing campaign" that consists of telephone numbers that members of the dialer team in conjunction with Operations Department within Defendant's company has selected from its database based on criteria set by these individuals.

2. Plaintiff's Interrogatories exceed the permissible amount because Plaintiff has included numerous discrete subparts.

130025998v2 00038

## Answers and Objections

1.    Identify all attempted and successful communications (including telephone calls) to and from 773-███9181 and 773-███8862.   Include the date and time of each call or attempted call, who or what dialed the number, all messages (prerecorded or live),  all equipment and systems used, the telephone company(ies) that serviced line for each call, the Predictive Dialer that was used, the Prerecorded Message used.

**Answer:**    Defendant incorporates General Objection No. 1.   Further objecting, this interrogatory contains eight (8) discrete and distinctly different subparts.  Subject and without waiving these objections, and pursuant to FRCP 33(d), see attached records which identify the date and time of each call or attempted call related to the subject account.


2.    Identify all sources from which you obtained the phone numbers 773-███-9181 and 773███8862, along with all other numbers called in association with the alleged debt of Julie Schultz.

**Answer:**    Objection, this Interrogatory contains two discreet subparts (sources and numbers called).   Subject to and without waiving these objections, Defendant received the subject numbers from Capital One.  Pursuant to FRCP 33(d), see attached screen shots and spreadsheet of calls made by Defendant to the above numbers.

2

3.      Identify and explain all written and unwritten policies, practices and procedures concerning use of Predictive Dialers and Prerecorded Messages, going back to when you first considered using such, and ending on July 8, 2010.

**Answer:**      Defendant incorporates General Objection No. 1. Further, this Interrogatory is overly broad and overly burdensome and better suited for a FRCP 30(b)(6) deposition or a more detailed interrogatory which asks about a specific aspect of Defendant's telephony system, the particular implementation of a disclosed policy or practice, or the explanation of a particular document. Additionally, this Interrogatory seeks irrelevant information that is not related to the purported class. The use or misuse of so-called "prerecorded messages" relative to FOTI, or any other substantive issue related to messages in general, are not an issue of this case. For these reasons, providing "all written and unwritten policies, practices and procedures concerning use of . . . Prerecorded Messages" will not lead to the discovery of admissible evidence. Subject to and without waiving these objections, pursuant to FRCP 33(d) see attached documents entitled "FDCPA - 1st PARTY/MRS POLICY & PROCEDURE", "Dialer Process Documentation", "Artiva Workstation System Training for Collectors" and "FDCPA Review Packet."

4.      Identify and state the location and the person who has possession, custody or control of any document, data or information responsive to any discovery request in this case, that is not being produced because of any objection, privilege, or because you contend that such is not within your possession, custody or control.

**Answer:**      Objection, this request is vague, confusing and overly burdensome. Defendant should not be required to analyze each and every discovery request to identify every person who

3

may have possession of any document that is not being produced subject to an objection or any contention that any such documents are not within Defendant's possession, custody or control. Subject to and without waiving these objections, it is possible that the underlying creditor Capital One may have documents that Plaintiff's counsel believes are responsive to this case that Defendant does not have within its possession, custody or control. For example, Defendant does not possess internal collection notes that may have been created by employees of Capital One nor does Defendant posses any documentation Capital One may have regarding the manner in which it obtained the subject numbers identified in Interrogatory No. 2. Additionally, because Plaintiff seeks certification of a class beyond those persons called in relation to the subject creditor, it would be overly burdensome for Defendant to hypothesize about documents that other creditors may possess that Plaintiff's counsel believes are responsive to this case (that Defendant does not have within its possession, custody or control).

5.    Identify, state the number and state the time and date of all calls and date and time of notification for: All persons located in Illinois who defendant or some person on its behalf called on their cell phone using a Predictive Dialer and/or Prerecorded Message, where MRS' records do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing, or "trapped" captured by telephone equipment) where any call was made at any time between and including July 8, 2006, and July 8, 2010.

**Answer:** Defendant also incorporates General Objection No. 1 and states that this Interrogatory is premature prior to an order certifying the class. Second, this Interrogatory is also overly burdensome and not limited to the creditor associated with Ms. Mack's account. Third,

4

Defendant objects to this request given the fact intensive nature of this request. As phrased Plaintiff's request will encompass a review of tens of millions of accounts. Fourth, Defendant currently lacks knowledge or information sufficient to readily identify or differentiate, in every instance, whether a cell phone number that it called during the class period was given to it by the debtor, obtained directly from a client-creditor (with or without the express or implied consent of the debtor), through skip tracing, so-called telephone capture, or otherwise provided to a collector by the debtor or a third party. For example, Defendant obtained the subject numbers at various times during the collection of the subject accounts, including, but not limited to: during in-bound calls to Defendant's call centers where debtors may provide their telephone number(s) or otherwise update their contact information; written communications from debtors, including, the submission of "web-forms" to update contact information; credit bureau updates; and skip-tracing. Further, after an account is placed with Defendant, and a debtor calls the creditor, certain creditors (including Capital One) may transfer the caller to Defendant which may result in the debtor providing his or her number to Defendant. . Fourth, Defendants' outgoing phone log records do not independently identify whether the subject phone numbers are cell phones or land lands, nor do the records identify the source or manner in which the phone numbers were obtained. For example, the outgoing phone logs do not readily demonstrate whether the number was obtained through skip tracing, obtained by so-called telephone "capture" equipment or otherwise provided to a collector by the debtor or a third party. For these reasons, Defendant currently lacks knowledge or information sufficient to answer this Interrogatory. Having said that, Defendant has pulled and preserved records for all outgoing calls to cell phones during the purported class period within the United States with the exception that it cannot readily obtain phone records prior to January 1, 2007.

5

6.    Identify the source(s) from which you obtained each of the telephone numbers you called that are responsive to the previous interrogatory, along with the date the numbers were obtained.

**Answer:** Objection, the requested material is premature prior to an order certifying the class. Defendant also incorporates General Objection No. 1. This Interrogatory is also overly burdensome and not limited to the creditor associated with Ms. Mack's account. Defendant incorporates its third and fourth objections to Interrogatory No. 5. Subject to and without waiving these objections, as a general matter, Defendant obtained the subject numbers directly from its clients at the time the accounts were placed with Defendant. Additionally, Defendant obtained the subject numbers at various times during the collection of the subject accounts, including, but not limited to: during in-bound calls to Defendant's call centers where debtors may provide their telephone number(s) or otherwise update their contact information; written communications from debtors, including, the submission of "web-forms" to update contact information; credit bureau updates; and skip-tracing. Further, when an account is placed with Defendant, and a debtor calls the creditor, certain creditors (including Capital One) may transfer the caller to .    dant which may result in the debtor providing his or her number to Defendant.

6

7. If you contend that any person within the following parameters provided prior express consent to receive telephone calls from you using an automatic telephone dialing system, prerecorded voice message, artificial voice message, Predictive Dialer or Prerecorded message, please specifically identify all documents, data information or things that supports this contention.

> All persons located in Illinois who defendant or some person on its behalf called on their cell phone using a Predictive Dialer and/or Prerecorded Message, where MRS' records do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing, or "trapped" captured by telephone equipment) where any call was made at any time between and including July 8, 2006, and July 8, 2010.

**Answer:** Objection, this is a premature contention interrogatory. This Interrogatory is also overly burdensome. Further, the requested material is premature prior to an order certifying the class. Defendant also incorporates General Objection No. 1. Furthermore, Defendant objects to this request given the fact intensive nature of this request. As phrased Plaintiff's request may encompass a review of tens of millions of accounts and hundreds of clients. Additionally, Defendant incorporates its third and fourth objections to Interrogatory No. 5. Subject to and without waiving these objections, Defendant identifies datasets received from its client which contain numbers that each creditor has represented relate to the formation of the subject debt or where the client received the number from the debtor for the purposes of collecting the debt and/or the debtor indicated to Defendant that it was permissible to be called at the subject number or otherwise consented to being called at that number. For example, Defendant may have obtained consent to call debtors cell phones at various times during the collection of the subject accounts, including, but not limited to: during in-bound calls to Defendant's call centers where debtors provided their cell number(s) or otherwise updated their contact information; and

7

from written communications from debtors, including, the submission of "web-forms" to update contact information, including cell phone numbers. Defendant's computer and telephony systems does not and has not independently tracked consent to call cell phones in a manner that is readily retrievable. Accordingly, an account-by-account review of individual collection notes is necessary to ascertain whether consent was provided. Defendant, cannot gather or produce this data without incurring great expense and time. To date, Defendant has incurred in excess of 200 hours of time in collecting the numbers that it called over the relevant time period. Further, maintaining this data for this time period will likely result in Defendant purchasing additional equipment and consulting services within the next week or two. Until it is demonstrated that Plaintiffs have standing and/or a class is certified, it would be unreasonable for Defendant to incur the time and expense of identifying the requested data. Having said that, Defendant will maintain records of all outbound calls and calls logs as it attempts to identify a potential class. Defendant's records are kept on-site and are not stored by a third-party.

8. Identify and explain all written and unwritten policies, practices and procedures concerning the use of your Predictive Dialer or Prerecorded messages.

**Answer:** Objection, Defendant incorporates General Objection No. 1. Further, this Interrogatory is overly broad and overly burdensome and better suited for a FRCP 30(b)(6) deposition or a more detailed interrogatory which asks about a specific aspect of Defendant's telephony system, the particular implementation of a disclosed policy or practice, or the explanation of a particular document. Additionally, this Interrogatory seeks irrelevant information that is not related to the purported class. The use or misuse of so-called "prerecorded messages" relative to FOTI, or any other substantive issue related to messages in

8

general, are not an issue of this case. For these reasons, providing "all written and unwritten policies, practices and procedures concerning use of . . . Prerecorded Messages" will not lead to the discovery of admissible evidence. Subject to and without waiving these objections, pursuant to FRCP 33(d), see documents which are also being identified and produced in response to Interrogatory No. 3.

9.      Identify and explain all written and unwritten policies, practices and procedures concerning the calling of multiple telephone numbers to collect a single debt from a debtor.

**Answer:**      Objection, the phrase "concerning the calling of multiple telephone numbers to collect a single debt from a debtor," is vague and undefined. Further, this Interrogatory is not limited in time or scope. Subject to and without waiving these objections, it is Defendant's policy to comply with the FDCPA and the TCPA. Further, it is Defendant's policy to avoid causing a telephone number or set of numbers to be called in violation of the FDCPA and/or the TCPA. Pursuant to FRCP 33(d), see documents which are also being identified and produced in response to Interrogatory No. 3, and in particular, see pages 3-44 of document entitled "FDCPA - 1st PARTY/MRS POLICY & PROCEDURE", page 5 of document entitled "FDCPA Review Packet", document entitled "Dialer Process Documentation."

9

10. State the name, employer, most current home address, title and job description of each person (including present or former third parties, companies, officers and/or employees) who is responsible for your Predictive Dialer(s), Prerecorded Messages, telephony systems and operations, and state specifically what that person's duties with respect to telephony are.

**Answer:** Defendant incorporates General Objection No. 1. Further, this Interrogatory contains seven (7) discrete and distinctly different subparts. Additionally, this Interrogatory is overly broad, overly burdensome and seeks irrelevant information that is not related to the purported class, such as the broad and undefined terms "telephony systems and operations" and "responsible for" Subject to and without waiving these objections, as detailed below, the identified individuals have managerial, supervisory, or operational duties relative to the planning and operation of Defendant's dialing and telephony system. As general matter irectors of operations are responsible for determining the parameters of calling campaigns, and in particular, the sorting, timing and frequency of calls, the types of messages, if any, that were used. The Dialer Team is responsible for daily operations of the dialer. I has a responsibility of high level operations of the dialer related to technical process or issues. For more detailed job descriptions, pursuant to FRCP 33(d), see attached job descriptions. The identified individuals identified with "A" can be contacted through the undersigned attorney. Upon request, contact information will be provided for former remaining employees.

| Position Job Title | Name | Status of Employment |
|---|---|---|
| Dialer Team | Abanil, Gil J | Active ("A") |
| Director of Operations | Adams III, William H | No Longer Employed ("T") |
| Chief Operating Officer | Barnshaw, William III | A |
| Director of Operations | Bernard, Claude | T |
| Director of Operations | Blau, Sanford F | T |
| Director of Operations | Bunton Sr, Wilson A | T |
| Assistant Director of Operations | Chambers, Tamra L | T |

10

| | | |
|---|---|---|
| Director of Operations | Collette, Danielle | A |
| Director of Operations | Dossett, Ryan | A |
| Chief Executive Officer | Freedman, Jeffrey M | A |
| Chief Executive Officer | Freedman, Saul A | A |
| Assistant Director of Operations | Gothard, Roland | T |
| Assistant Director of Operations | Greenberg, Joseph | A |
| Vice President of Operations | Grovola, Peter | A |
| Director of Operations | Hendricks, Kevin | T |
| Dialer Team | Hoepfner, Heather | A |
| Director of Operations | Hundley, James G. | T |
| Regional Vice President | Hundley, James G. | T |
| Chief Operating Officer | Hunn, Eric | T |
| Director of Operations | Lewis, Darren | A |
| Regional Vice President | Lorenzo, Anthony | A |
| Director of Training and Development | Marrero-Greene, Evy | A |
| Director of Operations | Mattera, Peter J. | A |
| Regional Vice President | Mattera, Peter J. | T |
| Director of Dialer Team | McCormick, Chad | A |
| Director of IT | Mei, Jinglei | A |
| Director of Operations | Mendoza, Marissa J | T |
| Director of Operations | Mobley Sr., Maurice D. | T |
| Director of Operations | Mohr, Jason | A |
| Assistant Director of Operations | Moore, Derrick D | T |
| Director of Operations | Nicholson, Christie | A |
| Director of Operations | Parks, Steven | T |
| Dialer Team | Peter, Ryan | A |
| Director of Software Development | _ ili, Eric | A |
| Assistant Director of Operations | Richman, Scott | T |
| Director of Operations | Ryan, John | A |
| Dialer Team | Ryan, Sean | T |
| Director IT | Scheurer, Joseph | A |
| Vice President of Operations | Sittineri, Robert | A |
| Director of Operations | Stang, Jason | T |
| Vice President of Operations | Topolewski, Robert R | T |
| Regional Vice President | Villanella, Michael J | T |
| Regional Vice President | Yanover, Stephen | T |

130025998v2 00038

11.    Identify and explain all policies, practices and procedures regarding use of automatic dialing systems, prerecorded voice messages and artificial voice messages and the complete history of each. Please include a detailed description of policy, practices or procedure the date it was first considered, the date it was implemented, all persons involved in its consideration, implementation and, if applicable, termination.    Please respond to this interrogatory without regard to time; in other words, disregard the timeframe set forth in the instructions for these requests.

**Answer:**  Objection, this Interrogatory contains six (6) discrete and distinctly different subparts. Further, this Interrogatory is overly broad and overly burdensome and better suited for a FRCP 30(b)(6) deposition or a more detailed interrogatory which asks about a specific aspect of Defendant's telephony system, the particular implementation of a disclosed policy or practice, or the explanation of a particular document. Additionally, it seeks irrelevant information that is not related to the purported class. ~~The purported class relates to persons who allegedly called Defendant to state that they were not the debtor in question.~~ Accordingly, "policies, practices and procedures regarding use of . . . prerecorded voice messages and artificial voice messages and the complete history of each" is not related to the purported class.  For these reasons, this Interrogatory will not lead to the discovery of admissible evidence.  Subject to and without waiving these objections, pursuant to FRCP 33(d) see attached documents which are also being produced in response to Interrogatory No. 3.


12.    Describe all document destruction and retention policies of the defendant.

**Answer:**    Pursuant to FRCP 33(d), see attached documents.


12

13. Identify and explain the basis for any claim that any violation alleged in the complaint was unintentional and/or resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Identify what procedures exist, how they are maintained, how they are adapted to avoid the matters complained of what evidence or expected testimony or knowledge supports or refutes the claim and why the alleged violations happened despite the procedures. Please answer this interrogatory specifically for each putative class member, if you can.

**Answer:** Objection, this Interrogatory is overly burdensome given its request to "answer this interrogatory specifically for each putative class member . . . ." Further, this Interrogatory contains six (6) discrete and distinctly different subparts. Furthermore, Defendant objects to this request given the fact intensive nature of this request. As phrased Plaintiff's request may encompass a review of millions of accounts and hundreds of clients. Defendant has received millions of telephone numbers from its clients. Defendant, however, cannot gather or produce this data without incurring great expense and time. To date, Defendant has incurred approximately 200hours of time in collecting the numbers that it called over the relevant time period. Until it is demonstrated that Plaintiffs have standing and/or a class is certified, it would be unreasonable for Defendant to incur the time and expense of identifying the requested data. Accordingly, subject to and without waiving these objections, Defendant incorporates its above interrogatory answers and identified documents and further states that it was and is its policy and practice to comply with the FDCPA with regard to call volume and incorporates its answer to Interrogatory No. 9. Further, Defendant, with regard to the TCPA, Defendant believes that it had consent to call debtors based on the representations of its clients that the numbers provided by

13

each creditor relate to the formation of the subject debt or where the client received the number from the debtor for the purposes of collecting the debt and/or the debtor indicated it was permissible to be called at the subject number or otherwise consented to being called at that number. Defendant has attempted to comply with the TCPA based upon its review of litigation, regulations, and industry practice, and Defendant is now scrubbing for cell phones to remove them from future calling campaigns.

14.     With respect to each expert, retained or nonretained, whom you will or may call upon to give evidence or testimony in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

**Answer:**     Objection, this Interrogatory contains five (5) discrete and distinctly different subparts. Further objecting, this Interrogatory is premature. Subject to and without waiving these objections, Defendant will produce a Rule 26 expert report by the time set by the court.

Defendant, MRS Associates, Inc.

*/s/ James C. Vlahakis*
James C. Vlahakis
ARDC No. 6230459
Hinshaw & Culbertson LLP
222 North LaSalle, Suite 300
Chicago, IL 60601
tel: 312-704-3000
fax: 312-704-3001
jvlahakis@hinshawlaw.com

130025998v2 00038

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2010, I emailed a copy of the above document to counsel of record for Plaintiff:

Alexander Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

s/James C. Vlahakis
James C. Vlahakis
ARDC No. 6230459
Hinshaw & Culbertson LLP
222 North LaSalle, Suite 300
Chicago, IL 60601
tel: 312-704-3000
fax: 312-704-3001
jvlahakis@hinshawlaw.com

15